ORAL ARGUMENT NOT YET SCHEDULED

No. 13-1026

---

# United States Court of Appeals
# For the District of Columbia Circuit

---

GAUGHF PROPERTIES, L.P.,
BALAZS VENTURES, LLC, A PARTNER
OTHER THAN THE TAX MATTERS PARTNER,

*Appellant*,

v.

COMMISSIONER OF THE INTERNAL
REVENUE SERVICE,

*Appellee.*

---

On Appeal from the Order and Decision of
the United States Tax Court

---

**BRIEF FOR THE APPELLANT**

---

David D. Aughtry
William E. Buchanan
CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY
191 Peachtree Street, N.E.
Thirty-Fourth Floor
Atlanta, Georgia 30303-1747
Telephone (404) 659-1410
e-mail: david.aughtry@chamberlainlaw.com
william.buchanan@chamberlainlaw.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties.**

The parties who appeared before the Tax Court and who appear before this Court are the same parties. No *amici* filed in the Tax Court. This Court granted an *amicus*, **West Ventures, L.P.,** leave to submit a brief. The parties include:

**Petitioner, Gaughf Properties, L.P.,** was formed as a limited partnership under the laws of the State of South Carolina on September 29, 1999. At the time of its formation, Gaughf Properties, L.P. consisted of two partners: Gaughf Enterprises, LLC and Balazs Ventures LLC. On or about December 27, 1999, Gaughf Enterprises and Balazs Ventures contributed 100 percent of the partnership interests in Gaughf Properties to Bodacious, Inc., thereby terminating Gaughf Properties as of that date. **Balazs Ventures, LLC,** is a single member limited liability company owned entirely by Nan Gaughf. **Gaughf Enterprises, LLC** was formed as a single-member limited liability company owned entirely by Andrew Jackson Gaughf, Jr.

**Respondent, Commissioner of the Internal Revenue Service ("IRS"),** is the Respondent in the Tax Court proceeding *Gaughf Properties, L.P., Balazs Ventures, LLC, A Partner Other Than the Tax Matters Partner v. Commissioner of Internal Revenue,* Docket No. 18298-07.

i

## STATEMENT RELATING TO ORAL ARGUMENT

Because no Court of Appeals has addressed the statutory construction of Section[1] 6229(e) and because the Tax Court's construction would retroactively open the limitations period back as far as 1982 for all partnerships with indirect partners, Appellant submits that this important case warrants oral argument.

/s/ David D. Aughtry
David D. Aughtry
Counsel for the Appellant

Dated: April 17, 2013

---

[1] Unless indicated otherwise, all section references are to the Internal Revenue Code of 1986 (as amended through December 27, 1999) (26 U.S.C. § ____).

# TABLE OF CONTENTS

STATEMENT RELATING TO ORAL ARGUMENT ..............................................ii

TABLE OF CONTENTS .............................................................................iii

TABLE OF AUTHORITIES.........................................................................vi

GLOSSARY OF SERIAL CASES ...............................................................xii

GLOSSARY OF ABBREVIATIONS .............................................................xiii

PRELIMINARY STATEMENT .....................................................................1

JURISDICTIONAL STATEMENT ..................................................................2

STATEMENT OF ISSUES .........................................................................3

STATUTES AND REGULATIONS ................................................................4

STATEMENT OF THE CASE .....................................................................4

STATEMENT OF FACTS .........................................................................5

SUMMARY OF ARGUMENT....................................................................19

ARGUMENT .....................................................................................22

       Tax Procedure Introduction .................................................................22

A.     SECTION 6229(e) TURNS ON AN UNAMBIGUOUS REMEDY RENDERED IRRELEVANT BY TIME ........................26

       Standard of Review............................................................................26

       Discussion......................................................................................27

1.     The "Plain Meaning" Doctrine and the *Chevron* Two-Step Test for Regulations Converge to Resolve This Case ................................................................29

2.      Read as a Whole, the Regulations Prove that "Furnished" Means More than Just the Filing of a Still Unnamed Form with a Mandatory Talismanic Phrase ........................................................................... 34

3.      The Gaughfs and Their Entities Furnished Their Correct Names, Addresses, and Taxpayer Identification Numbers When They Filed Their Forms SS-4 By October 1, 1999 ............................................... 36

4.      Especially When Coupled With Their Forms SS-4, the Gaughfs and Their Entities Furnished Their Taxpayer Information When They Timely Filed Their Returns By April 17, 2000 ................................... 38

5.      Counsel for the Gaughfs and Their Entities Furnished the IRS a Treasure Trove of Their Identifying Information in the 480 Pages Delivered to the IRS on July 7, 2004 .......................................... 39

B.      THE PREDICATE BARS REOPENING THE LIMITATIONS PERIOD FOR INDIRECT-PARTNER PARTNERSHIPS RETROACTIVELY AND PERPETUALLY. .................................................................... 44

        Standard of Review ............................................................ 44

        Discussion ........................................................................... 44

1.      The IRS Partnership Return Regulations, Instructions, and Form Exclude Indirect Partners from the Return ................................................................... 45

2.      Under Section 6229(e)(2)(A), the IRS Failed to Issue the Notice "Before Expiration of the Period Otherwise Provided Under This Section" ................................. 47

3.      The Differences Between Capital Account Financial Accounting Principles And Tax Accounting Principles Do *Not* Create "Inconsistent Treatment of *a Partnership Item*" ............................................. 47

iv

a.    Under *Petaluma II*, *III*, and *IV*, the "Outside Basis" That Drives the Partners' Returns Constitutes a Partner-Level "Affected Item" Beyond Partnership-Level Jurisdiction ........................... 48

b.    No "Inconsistent Treatment of Any Partnership Item" Arises From the Difference Between the Capital Contribution Value on the Partnership Return and the Outside Basis on the Partner's Return ............................ 49

C.    THE TAX COURT ALSO ERRED IN TWO OTHER WAYS ........................................................................................ 52

Standard of Review ........................................................................ 52

Discussion ...................................................................................... 52

1.    The Tax Court Erred By Adopting an Incomplete and Untested Central California Trial Court Ruling That Never Once Cites the Critical Regulation Subsection ................................................................................... 52

2.    The Tax Court Erred By Rewarding the Party Who Bears the Burden of Proof For Withholding Potentially Dispositive Documentary Evidence and Testimony Within Its Possession ........................................... 54

CONCLUSION ....................................................................................... 56

ADDENDUM OF PERTINENT STATUTES AND REGULATIONS

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Achiro v. Commissioner*, 77 T.C. 881, 890 (1981) .................................................. 26

*AFL-CIO v. FEC*, 333 F.3d 168, 174 (D.C. Cir. 2003).......................................... 31

*Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D. D.C. 1978) ............................... 54

*Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. 287, 292 (1991) ....................................................................................... 39

*Caminetti v. United States*, 242 U.S. 470, 485 (1917)........................................ 29

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984) ............................................. 21, 29, 30, 33

*Commissioner v. Acker*, 361 U.S. 87, 92 (1959)...................................... 30

*Commissioner v. Duberstein*, 363 U.S. 278, 291 (1960) ...................................... 26

*Costello v. United States Gov't*, 765 F. Supp. 1003 (C.D. Cal. 1991).............................................................................................................. 52

*Deputy v. DuPont*, 308 U.S. 488, 494-95 (1940) .................................................. 51

*EME Homes City Gen., L.P. v. EPA*, 696 F.3d 7, 23 (D.C. Cir. 2012)............................................................................................................... 31

*Gaughf Properties, L.P. v. Commissioner*, 139 T.C. __, No. 7 (2012) ...............................6, 7, 9, 12, 25, 33, 39, 40, 42, 43, 47, 48, 49, 51, 55

*Helmer v. Commissioner*, T.C. Memo 1975-160 ............................................. 6, 51

*Helvering v. Taylor*, 293 U.S. 507, 513 (1935)......................................... 26

*Highwood Partners v. Commissioner*, 133 T.C. 1 (2009) ...................................... 16

*Hoffman v. Commissioner*, 119 T.C. 140, 146 (2002) .......................................... 26

\* Cases or authorities chiefly relied upon are marked with asterisks.

*Horton Homes v. United States*, 357 F.3d 1209, 1211-12 (11th Cir. 2004) .................................................................... 30

*In re Polar Bear Endangered Species Act Listing*, 709 F.3d 1, 15 (D.C. Cir. 2013) ................................................... 30

\*International Union, et al. v. N.L.R.B.*, 459 F.2d 1329, 1336 (D.C. Cir. 1972) .................................................... 54

*LaRue v. Commissioner*, 90 T.C. 465, 480-82 (1988) ............................ 51

*Levine v. Apker*, 455 F.3d 71, 85 (2d Cir. 2006) .................................. 30

*Mitchell v. Commissioner*, T.C. Memo 1997-382, 1997 WL 473178 at \*5, n.5 ................................................... 50

*Murphy v. Commissioner*, 129 T.C. 82 (2007).............................. 52

*National Westminster Bank, PLC v. United States*, 512 F.3d 1347, 1354 (Fed. Cir. 2008)............................... 30

*Ohio v. Roberts*, 448 U.S. 56, 74 (1980) ..................................... 43

*\*Petaluma FX Partners, LLC v. Commissioner*, 131 T.C. 84 (2008) *aff'd in part, rev'd in part, and remanded* 591 F.3d 649 (D.C. Cir. 2010) *supplemented* 135 T.C. 581 (2010) *remanded* 2012 WL 2335993 (D.C. Cir. Feb. 27, 2012) *adhered to* T.C. Memo 2012-142 *appealed* D.C. Circuit Docket No. 12-1364 ......................................xii, 2, 20, 26, 44, 48

*United States v. Holmes*, 505 F.3d 1288, 1293 (D.C. Cir. 2007)...................... 52, 54

\*United States v. Home Concrete & Supply, LLC,* 132 S. Ct. 1836, 1837-45 (2012)........................................ 1, 19, 23, 31

\*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989) .................................................... 29

*Wenig v. Commissioner*, 177 F.2d 62,63 (D.C. Cir. 1949) .................................... 51

## TITLE 26 UNITED STATES CODE (AS AMENDED THROUGH DECEMBER 27, 1999)

Section 722 ................................................................. 48, 50, 57

Section 732(b) ........................................................ 47, 48, 50, 57

Section 752 ........................................................................ 51

Section 752(b) .................................................................... 51

Section 1012 ...................................................................... 50

Section 6109 ..................................................... 22, 36, 37, 38, 57

Section 6222(b) ................................................... 48, 49, 51, 59

Section 6223(a) .................................................................. 34

Section 6223(c)(2) .............................................................. 34

Section 6226(f) ............................................................... 2, 23

Section 6229(a) ........................................................ 19, 23, 47

Section 6229(c)(2) .............................................................. 23

Section 6229(e)
...... 2, 3, 4, 5, 17, 19, 20, 21, 26, 27, 28, 29, 34, 37, 39, 43, 44, 49, 54, 56, 59

Section 6229(e)(2) .............................................................. 51

Section 6229(e)(2)(A) ...................................................... 47, 59

Section 6229(e)(2)(B) ................................................. 3, 47, 48, 60

Section 6501(a) ........................................................ 19, 23, 56, 60

Section 6664(c) ................................................................... 24

Section 7482 ...................................................................... 26

Section 7482(a)............................................................................................ 2

Section 7482(b) .......................................................................................... 2

Section 7602 .............................................................................................. 23

Section 7609(e)..................................................................................... 25, 39

Section 7609(e)(2) ..................................................................................... 14

Section 7609(f) ..................................................................................... 24, 40

Section 7701(a)(2) ................................................................................ 46, 51

## TREASURY REGULATIONS

Treas. Reg. § 1.704-1(b)(2)(iv)(b)................................................................. 50

Treas. Reg. § 1.705-1(a) ...................................................................... 49, 50

Temp. Reg. § 301.6221-1T(d)................................................................ 24

Treas. Reg. § 301.6223(c)-1T ................................................................ 29

Temp. Reg. § 301.6223(c)-1T(d) ........................................................... 34

*Temp. Reg. § 301.6223(c)-1T(f)............................... 4, 21, 35, 43, 52, 61

Temp. Reg. § 301.6229(e)-1T ................................................................ 34

## TAX COURT RULES

Tax Court Rule 90(f) ............................................................................ 35

Tax Court Rule 142(a)(1) ...................................................................... 26

## OTHER AUTHORITIES

FUNK & WAGNALLS NEW COMPREHENSIVE INTERNATIONAL
    DICTIONARY OF THE ENGLISH LANGUAGE (Encyclopedic
    ed., 1982)........................................................................................ 32

Internal Revenue Manual, 3.13.5.14..................................................... 36

IRS FSA (Feb. 1, 1996), 1996 WL 33107118 ..................................... 53

J. CUNNINGHAM AND V. PROCTOR, DRAFTING DELAWARE LLC
    AGREEMENTS (Aspen Publ.) ¶ 1.01.............................................. 45

LARRY E. RIBSTEIN AND ROBERT R. KEATINGE, LIMITED
    LIABILITY COMPANIES (West, 2012-2 ed.)................................... 50

LAURA E. CUNNINGHAM AND NOEL B. CUNNINGHAM, THE
    LOGIC OF SUBCHAPTER K 32 (2d ed., West Group 2000) ............................. 50

MERTENS, LAW OF FEDERAL INCOME TAXATION § 3.06 .......................... 30

S. Rep. No. 1102, 87th Cong., 1st Sess. 1, 1961-2 C.B. 475, 476 ......................... 37

Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. No.
    97-248, 96 Stat. 324) ............................................................................. xiv, 27

# GLOSSARY OF SERIAL CASES

| **Petaluma FX Partners, LLC** | **Reference** |
|---|---|
| *Petaluma FX Partners, LLC v. Commissioner*, 131 T.C. 84 (2008) | *Petaluma I* |
| *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010) | *Petaluma II* |
| *Petaluma FX Partners, LLC v. Commissioner*, 135 T.C. 581 (2010) | *Petaluma III* |
| *Petaluma FX Partners, LLC v. Commissioner*, Order, 2012 WL 2335993 (D.C. Cir. Feb. 27, 2012) | *Petaluma IV* |
| *Petaluma FX Partners, LLC v. Commissioner*, T.C. Memo 2012-142 | *Petaluma V* |
| *Petaluma FX Partners, LLC v. Commissioner*, United States Court of Appeals, District of Columbia Circuit, No. 12-1364 | *Petaluma VI* |
| **Jade Trading, LLC** | **Reference** |
| *Jade Trading, LLC v. United States*, 80 Fed. Cl. 11 (2007) | *Jade I* |
| *Jade Trading, LLC v. United States*, 598 F.3d 1372 (Fed. Cir. 2010) | *Jade II* |
| *Jade Trading, LLC v. United States*, 98 Fed. Cl. 453 (2011) | *Jade III* |
| *Jade Trading, LLC v. United States*, 451 Fed. Appx. 954, No. 2011-5103, 2012 WL 178382 (Fed. Cir. Jan. 12, 2012) | *Jade IV* |

# GLOSSARY OF ABBREVIATIONS

Appellant offers this Glossary in hopes of aiding the Court in following the recurring references in the various opinions and in this brief:

| | |
|---|---|
| FPAA | Final Partnership Administrative Adjustment |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| J&G | Jenkens & Gilchrist |
| TEFRA | Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. No. 97-248, 96 Stat. 324) (as amended: through December 27, 1999) (26 U.S.C. §§ 6221-6232) |
| TMP | Tax Matters Partner |

ORAL ARGUMENT NOT YET SCHEDULED

No. 13-1026

---

# United States Court of Appeals
# For the District of Columbia Circuit

---

GAUGHF PROPERTIES, L.P.,
BALAZS VENTURES, LLC, A PARTNER
OTHER THAN THE TAX MATTERS PARTNER,

*Appellant,*

v.

COMMISSIONER OF THE INTERNAL REVENUE SERVICE,

*Appellee.*

---

On Appeal from the Order and Decision of
the United States Tax Court

---

**BRIEF FOR THE APPELLANT**

---

## PRELIMINARY STATEMENT

As in *United States v. Home Concrete & Supply, LLC,* 132 S. Ct. 1836, 1837-45 (2012), this partnership tax case deals with the failure of the Internal Revenue Service ("IRS") to issue a Final Partnership Administrative Adjustment ("FPAA") to another Jenkens & Gilchrist ("J&G") client within the three-year limitations period. Here, the IRS issued its 1999 FPAA four years late.

# JURISDICTIONAL STATEMENT

On March 30, 2007, the IRS mailed an FPAA to Gaughf Properties, L.P., for the year ended December 27, 1999, in which the IRS proposed adjustments to (purported) partnership items.[2]   On August 15, 2007, Gaughf Properties, L.P. timely filed a Petition for Readjustment of Partnership Items in the United States Tax Court.[3]   The Tax Court thereby obtained partnership jurisdiction over this action pursuant to Section 6226(f).

By Order and Opinion dated September 10, 2012, the Tax Court adopted the IRS' Section 6229(e) argument that the period for assessing tax attributable to 1999 partnership items remained open under Section 6229(e) for Jack and Nan Gaughf at the time the FPAA was issued.  On October 9, 2012, Petitioner filed a motion to permit an interlocutory appeal with the Tax Court, which the Tax Court granted on November 8, 2012.  On November 19, 2012, Gaughf Properties timely filed its Petition for Permission to Appeal with this Court.  On February 1, 2013, this Court ordered that the "Petition for Permission to Appeal be Granted.  *See* 26 U.S.C. § 7482(a)," thereby establishing appellate jurisdiction.

Finally, the Tax Court analysis contradicts this Court's partner-level "outside basis" jurisdictional ruling in *Petaluma II* (591 F.3d at 654-55).

---

[2] (JA0010-19).
[3] Due to dissolution of Gaughf Properties prior to petitioning the Tax Court, this Court obtained appellate jurisdiction under both Sections 7482(a) and (b).

## STATEMENT OF ISSUES

1.     Under the Section 6229(e) one-year remedy, what is the start "date on which the name, address, and taxpayer identification number of [the indirect] partner[s] are furnished to the Secretary":

    (i)     The date the indirect partners and their entities filed with the Internal Revenue Service Center in Atlanta, their IRS Forms SS-4 containing all of the specified information;

    (ii)    The date the indirect partners and their entities filed returns with the same Service Center containing that information;

    (iii)   The date the IRS received 480 pages of comprehensive documents  from the Gaughfs' counsel repeatedly furnishing "the name, address, and taxpayer identification number" in response to the IRS John Doe summons; or

    (iv)    Never?

2.     For purposes of Section 6229(e)(2)(B), does applying two different sets of  required rules create an "inconsistent treatment of partnership items" – the capital account rule for the partnership reporting contributions (at net fair market value) under financial accounting principles and the tax basis rule for the partners reporting outside basis (at cost basis, excluding contingent obligations) on their partnership interests?

3.     Did the Tax Court also err in at least two other respects: (i) bottoming its opinion on an incomplete and untested central California trial opinion, and (ii) rewarding the party bearing the burden of proof for withholding potentially dispositive documentary evidence and testimony within its possession?

## STATUTES AND REGULATIONS

The three partnership limitations questions turn most directly on construction of one statutory subsection (Section 6229(e)) and one subsection in a regulation (Temp. Reg. § 301.6223(c)-1T(f)). The full text of that statute and regulation, along with related provisions, are attached by way of Addendum.

## STATEMENT OF THE CASE

While D.C. Circuit Rule 28 requires no Statement of the Case, the Court may wish to note that Petitioner filed a Motion for Summary Judgment on June 9, 2008 on the grounds that the IRS failed to issue the 1999 FPAA within the controlling three-year period. The Tax Court denied that Motion on grounds the IRS later conceded. Over the objection of Petitioner, the Tax Court allowed the IRS to raise three new issues shortly before trial, two of which the IRS has since conceded and the third of which (relating to Section 6229(e)) the Tax Court sustained. We ask this Court to reverse and render judgment as to the late FPAA.

4

## STATEMENT OF FACTS

By way of overview, this 11-year chronology may be helpful to the Court:

October 1, 1999 .............. Gaughfs and their entities file IRS Forms SS-4 with IRS

December 27, 1999......... Close of Gaughf Properties taxable year

April 17, 2000................. Gaughfs and their entities timely file returns with IRS

April 17, 2003................. Expiration of three-year period

June 18, 2003.................. IRS John Doe summons served

May 17, 2004.................. Gaughfs' counsel (J&G) furnishes identities to IRS

June 16, 2004.................. IRS letter using Mr. Gaughf's identify from J&G

July 7, 2004 ................... Gaughfs' counsel (J&G) produces 480 pages to IRS

December 6, 2004........... Expiration of John Doe 151-day extension

July 7, 2005 ................... Expiration of Section 6229(e) one-year period from John Doe production

December 6, 2005........... Expiration of one year plus 151 days from John Doe production

April 17, 2006................. Expiration of six-year period (later conceded)

May 10, 2006.................. IRS signs one-year extension

March 30, 2007............... IRS issues FPAA to Gaughf Properties for 1999

March 3, 2010................. IRS raises Section 6229(e) as "new issue"

May 17, 2010.................. Trial of limitations issues

We turn now to the annotated summary of these facts.

5

**The Gaughfs, Their Entities, and 136 Pinnacle Falls Drive**

Andrew Jackson Gaughf and Nan B. Gaughf married on March 22, 1980. (JA1599; JA0451; JA1834-36). They have consistently filed their returns with the IRS using their same taxpayer identification numbers. (JA0451; JA1835). Since May of 1995, they have lived at 136 Pinnacle Falls Drive, Pickens, South Carolina 29671 and have consistently used that address on all IRS filings. (*Id.*)

In the Fall of 1999, KPMG persuaded the Gaughfs to participate in the *Helmer v. Commissioner* partnership/option planning through the Chicago office of J&G. (JA1599; JA1813-4; JA1882). On the advice of J&G and KPMG, the Gaughfs asked their law firm in Greenville, South Carolina (the closest city to rural Pickens) to form the entities the Gaughfs were told they needed – Gaughf Properties, L.P., Gaughf Enterprises, LLC, Balazs Ventures, LLC, and Bodacious, Inc. (JA1599).

From its formation as a limited partnership on September 29, 1999, Gaughf Properties had two partners: Gaughf Enterprises, LLC and Balazs Ventures LLC. (JA1600-1; JA0452; JA0301, JA0304; JA0301; JA0401; JA1808-10). Gaughf Enterprises was formed as a single-member limited liability company owned entirely by Mr. Gaughf, while Balazs Ventures was formed as a single-member limited liability company owned entirely by Mrs. Gaughf. Bodacious was formed as an S corporation. (*Id.*)

All four entities used the Gaughfs' residence as their common address, 136 Pinnacle Falls Drive, Pickens, South Carolina  29671.  (JA1601; JA0451-0453; JA1836-42; JA1881-82; JA0516-0531).  In selecting the entity names, neither the Gaughfs nor their advisors tried to conceal the Gaughfs' relationships with the entities.  (JA1783-5; JA1836-8; JA1841-3).  In addition to the Gaughf-named entities, Mrs. Gaughf selected her maiden name, Balazs, and no one viewed Bodacious as inconspicuous.  (JA1784:10-23).

## Identification Information Furnished by IRS Forms SS-4

Mr. and Mrs. Gaughf furnished the IRS their names, address, taxpayer identification numbers, and relationships to these entities in 1999.  (JA1599-1601; JA1611-4; JA1632; JA1857).   Specifically, the Gaughfs, through their local lawyer, supplied the IRS their indirect partner identification information upon filing IRS Forms SS-4 for Gaughf Properties and its direct partners by October 1, 1999.  (JA1599-1601; JA1633; JA0454-5; JA0520-0531).

IRS Forms SS-4 are used to obtain taxpayer identification numbers.  (*Id.*) The Gaughfs' counsel first prepared the Forms SS-4 for the two single member limited liability companies that were becoming partners in Gaughf Properties and shareholders in Bodacious.  (JA0454-5; JA0520-7).

On September 25, 1999, Mrs. Gaughf signed the Form SS-4 for Balazs Ventures.  (*Id.*)  On September 27, 1999, her counsel then filed the Form SS-4 for

7

Balazs by facsimile sent to the "Entity Control" unit at the Internal Revenue Service Center in Atlanta, Georgia. That Form SS-4 confirmed that Balazs was a "Disregarded Entity," specified the 1999 date of formation and year end ("December"), identified "Nan Gaughf/Member," included the common address (136 Pinnacle Falls Drive, Pickens, South Carolina 29671), and provided Mrs. Gaughfs' identification number. (JA0455; JA0524-7; JA1836; JA1838). The cover letter requested "[p]lease assign a [taxpayer identification] number at your earliest convenience and return by facsimile to Nan Gaughf, Member at (864) 232-2925." (*Id.*)

The Form SS-4 for Gaughf Enterprises followed the same course with Mr. Gaughf signing it on September 25, 1999 and his counsel filing it by facsimile sent on September 27, 1999 to the "Entity Control" unit at the same Service Center. That Form SS-4 confirmed that it was a "Disregarded Entity," specified the same formation date and year end as Balazs, identified "Andrew J. Gaughf, Jr./Member," included the common address (136 Pinnacle Falls Drive, Pickens, South Carolina 29671), and provided Mr. Gaughfs' identification number. (JA0454; JA0520-7). The cover letter requested "[p]lease assign a [taxpayer identification] number at your earliest convenience and return by facsimile to Andrew Jackson Gaughf, Jr., Member at (864) 232-2925." (*Id.*)

Through the Gaughfs' counsel, Gaughf Properties and Bodacious then filed their Forms SS-4 by facsimile sent to the "Entity Control" unit at the same Service Center on October 1, 1999.  (JA0455; JA0528-0531).  The Gaughf Properties IRS Form SS-4 identified "Andrew Jackson Gaughf, Jr., Member of Gaughf Enterprises, LLC, General Partner of Gaughf Properties, L.P.", specified the date of formation ("9/29/99") and year end ("December"), included the common address (136 Pinnacle Falls Drive, Pickens, South Carolina 29671) for the Gaughfs and the companies, and provided Mr. Gaughfs' taxpayer identification number. Within days, the IRS assigned taxpayer identification to all four entities.  (JA1787-99).

Toward the end of the year (December 27, 1999), Gaughf Enterprises and Balazs Ventures contributed all of their partnership interests in Gaughf Properties to Bodacious, thereby terminating Gaughf Properties as of that date.  (JA1604; JA0345; JA0458, JA0467; JA0877).  Bodacious thus succeeded to the interest in Gaughf Properties upon its termination and was not a partner.  (JA0173-4; JA0379; JA1604-5; JA0301; JA0304; JA0462; JA1300-4).

By Monday, April 17, 2000, Gaughf Properties filed its Partnership Return for 1999 with the Atlanta Service Center.  It included Schedules K-1 for Gaughf Enterprises and Balazs Ventures that reported the same identification numbers that the IRS assigned to the direct partners (based on the Forms SS-4) and that tie those partners to the Gaughfs' indirect partner information.  (JA0455-6; JA0610-28).

9

By Monday, April 17, 2000, the Gaughfs filed with the same Service Center their 1999 individual return that KPMG prepared. (JA0455-6; JA0532-0609; JA1834; JA2085). That return furnishes the IRS with the names, common address, and taxpayer identification numbers for the Gaughfs *and* their entities. (*Id.*)

At ten different places, the Gaughfs' 1999 return disclosed their interests in Gaughf Properties and/or Bodacious. (JA0532-0609). For example, their return includes a statement captioned "Transferor's Information Statement Filed in Accordance with Regulation 1.351-3(a)" relating to the transfer of their partnership interests (and the amount of their "outside basis" in those interests) in Gaughf Properties to Bodacious:

| | |
|---|---|
| Transferor Name | Andrew Gaughf |
| Transferor Address | 136 Pinnacle Falls Drive |
| | Pickens, SC  29671 |
| | |
| Transferee Name | Bodacious, Inc. |
| Transferee Address | 136 Pinnacle Falls Drive |
| | Pickens, SC  29671 |

1.    Property transferred to the controlled corporation:
      Interest in Gaughf Properties
      Tax Basis: $4,513,528  (JA0582)

At five separate places, the Gaughfs link their return to the name *and* identification number of Gaughf Properties. (JA0582-3; JA0588; JA0596; JA0599).

The information the Gaughfs furnished on their 1999 individual return was sufficient to provoke an audit within three years of its filing. (*Id.*; JA2044-5).

**Failure to Issue FPAA Within Three Years of Returns**

The three-year period from the Gaughfs and Gaughf Properties filing their returns expired no later than April 17, 2003. (JA0344-6). The IRS failed to issue the FPAA, obtain an extension, or contact the Gaughfs before that three years expired. (*Id.*; JA0461; JA1849).

**Identification Information Furnished by the Gaughfs' Accountant**

KPMG prepared the 1999 returns for the Gaughfs, Bodacious, and Gaughf Properties. (JA2083-6). At some point unknown to the Gaughfs, the IRS issued a "John Doe" summons to KPMG for the taxpayer identification information of clients like the Gaughfs. (JA0451; JA1937-8). The IRS chose not to subpoena KPMG to testify at trial or produce documents. (JA2094). Despite discovery requests, the IRS never produced the KPMG documents in the IRS' possession nor called the IRS employees with personal knowledge of its receipt and contents. (JA1937) The IRS withheld all such information in its possession. (*Id.*)

**Identification Information Furnished By Gaughfs' Law Firm (480 Pages)**

The Chicago office of J&G, then a national law firm, represented the Gaughfs in structuring these transactions and providing a legal opinion as to the tax consequences. (JA1887). The IRS waited until June 19, 2003 (after the Gaughfs' normal three-year period expired) before issuing a "John Doe" summons to J&G seeking the taxpayer identification information of its clients. (JA0456; JA0679-84). In that summons, the IRS sought, *inter alia,* the following information:

11

> Please produce *the name, address and taxpayer identification number* (and any additional information as specified in the numbered paragraphs below) for each United States taxpayer who, during any part of the period January 1, 1998 through June 15, 2003, participated in a transaction that was or later became a "listed transaction"[4] .... (JA0355; JA0456; JA0679-84).

When J&G objected on behalf of its clients, the IRS petitioned the District Court to enforce its "John Doe" summons for, *inter alia*, the client's taxpayer identification information. (JA0685-98). In that Petition, the IRS described why the IRS wanted the information sought by the John Doe summons (JA0686):

> The IRS is also conducting an investigation to determine the correctness of returns filed by, and the correct federal tax liabilities of, certain United States taxpayers who, during any part of the period January 1, 1998 through June 15, 2003, participated in a transaction which was or later became a "listed transaction" or other "potentially abusive tax shelter" organized or sold by the Chicago office of the law firm of J&G, *i.e.,* the John Doe class.

The District Court ordered J&G to provide the taxpayer identification information and associated materials by July 8, 2004. (JA0456-7; JA0699-0706; JA0685-98). The John Doe summons specified the place for production. (JA0679-84).

On or about July 7, 2004, J&G furnished the IRS with a specific compact disc for the Gaughfs. (JA1612). It contained the Gaughfs' identification information and their participation as indirect partners in Gaughf Properties, including their names, addresses, and taxpayer identification numbers; their

---

[4]The IRS "listed" the J&G partnership/options planning in Notice 2000-44 (August 11, 2000), after the Gaughfs completed their transactions and filed their returns.

participation in Gaughf Properties, Balazs Ventures, Gaughf Enterprises, and, Bodacious; the names, addresses, and taxpayer identification numbers of those entities; and the year of their participation (1999). (JA0356-8; JA0458). The documents produced by J&G totaled 480 pages. (JA0718-1201).

The 480 pages that J&G furnished the IRS on July 7, 2004 included the Forms SS-4 the Gaughfs filed for Gaughf Properties, Gaughf Enterprises, and Balazs Ventures with the Atlanta Service Center by October 1, 1999. (JA0353-4).

The 480 pages also included two other documents: a company profile and the Articles of Organization of Balazs Ventures. (JA0358-9; JA0458-9). Both documents separately list Mrs. Gaughf's name, address, social security number, and identifies her as owning 100% of Balazs Ventures. In addition, the company profile provides the employer identification number for Balazs Ventures. (*Id.*)

Similarly, the 480 pages included a copy of the company profile and Articles of Organization for Gaughf Enterprises. (JA0361-3; JA0457). Both documents separately list Mr. Gaughf's name, address, and social security number; Mr. Gaughf as owning the 100% interest in Gaughf Enterprises; and provides the identification number for Gaughf Enterprises. (*Id.*)

In dealing with the Gaughfs, Gaughf Properties, and their related entities, the IRS used the 480 pages of documents it obtained from J&G on or about July 7, 2004. (JA0367; JA0458; JA0176).

## Failure to Issue FPAA Within One Year (or One Year Plus 155 Days) of Counsel Furnishing Taxpayer Identification Information

The one-year anniversary of the Gaughfs' law firm producing 480 pages of Gaughf documents expired on July 7, 2005.  (JA0367; JA0457).  The IRS failed to issue the FPAA to Gaughf Properties (or seek an extension agreement) on or before July 7, 2005.  (JA0367; JA0458).  The Summons issued to J&G constituted a John Doe summons under Section 7609(e)(2) that tolled the limitations period for 151 days.  (JA0289-90).  The IRS again failed to issue the FPAA (or obtain an extension) within that 151 days (or one year plus 151 days) of J&G furnishing the 480 pages of the Gaughfs' files containing their taxpayer identification information.  (JA0458, JA0462; JA1289-1304).

## Delayed Audit:   No Complaint Regarding Lack of Taxpayer Identification Information

In January 2006 (one and one-half years after J&G furnished the 480 pages of information), the IRS first contacted the Gaughfs about their 1999 return.  (JA0458; JA1848).  On January 10, 2006, the IRS first assigned an agent to audit the 1999 returns for the Gaughfs and their entities.  (JA1969-70).  The agent never asked anyone in the IRS to delay assignment of the Gaughf audit to him for over 18 months (after receipt of the Gaughfs' information from J&G on July 7, 2004).  (JA1996-7).  The agent never complained that the Gaughfs failed to timely furnish their taxpayer identification information to the IRS.  (JA1990).

14

Within six days of the audit being assigned to him, he reviewed the 480 pages of documents that the Gaughfs' law firm, J&G, produced in 2004. (JA1974). Within six days of the audit being assigned to him, he *used* the taxpayer information that the Gaughfs and their representatives previously furnished. (JA1975-6)

When they were contacted by the IRS about the audit of their 1999 return, the Gaughfs asked KPMG to handle the audit. KPMG refused to help them. (JA1851). In conducting the 1999 partnership audit of Gaughf Properties, the agent *used* the documents J&G produced on or before July 7, 2004, relating to the Gaughfs and information derived from those documents. (JA0373-4).

The IRS requested an extension of the limitations period for 1999. (JA1848; JA0461; JA1257-8). The Gaughfs were told that their 1999 limitations period remained open because their return preparer had omitted a wire transfer from an option. (JA1848). That proved to be untrue. (*Id.*). The Gaughfs signed the extension because their CPA told them the IRS would freeze their assets, and they could not defend themselves. (*Id.*). Over six years after the Gaughfs and their entities filed their 1999 returns, the IRS countersigned the extension of the 1999 limitations period on May 10, 2006. (JA1259-62; JA0175-6).

## March 30, 2007 FPAA Regarding December 27, 1999 Tax Year

The IRS issued the FPAA on March 30, 2007 – not quite seven years after the Gaughfs and their entities filed their 1999 returns on April 17, 2000. (JA0462).

## Inconsistent Treatment of Companion Case, *Highwood Partners*

The sole justification stated in the FPAA for its issuance after expiration of the normal three-year period was the alleged omitted income upon expiration of a short option – the same justification the IRS asserted in the companion case, *Highwood Partners*. (JA1289-99). Petitioners' counsel filed identical motions for summary judgment in *Highwood* and *Gaughf Properties* as to the IRS short option theory. (JA0462; JA1305-11; JA0054-72). On April 18, 2008, the IRS admitted in *Highwood* that its short-option-omission theory was "incorrect." (JA0462; JA1395). On August 13, 2009, the Tax Court still denied Petitioner's Motion for Summary Judgment in *Highwood Partners v. Commissioner*, 133 T.C. 1 (2009).

The Tax Court then applied its *Highwood* opinion to Gaughf Properties by order dated August 15, 2009. (JA0462; JA1305; JA0073-4). On October 5, 2009, the Court scheduled the trial for February 4, 2010. On January 19, 2010, the Court continued the trial to February 25, 2010 at the IRS's request. (*Id.*; JA0126-7). On January 20, 2010, the IRS conceded that limitations barred its claims in *Highwood*, and conceded that case in its entirety. (JA0211-2).

## Belated Raising of Section 6229(e) Ten Years After the Fact, on Eve of Trial

On January 21, 2010, the Court set a hearing to address Petitioner's discovery motions for February 3, 2010. (JA0462; JA1305; JA0205). At that hearing, the IRS represented to the Court for the first time that it intended to raise three new limitations arguments: (i) that Gaughf Properties sold 7,500 shares of Quanta stock and failed to report a gain in the amount of $208,125; (ii) that the Gaughfs never identified themselves as indirect partners; and (iii) that the Gaughfs allegedly "omitted" income by overstating basis. (JA0213-6). At the time the IRS made those representations, it withheld the 480 pages in its files which contradicted the first two contentions. (JA0458; JA0717.1; JA2049-53). Tax Court precedent contradicted the third. On February 3, 2010, the Tax Court continued the trial to May 17, 2010. (JA0462; JA1305-11; JA0206-7).

On March 3, 2010, the Tax Court granted the IRS's motion seeking leave to file a Second Amended Answer (over the Gaughfs' objection). On April 25, 2010, the IRS moved to withdraw its Requests that Petitioner admit the Forms SS-4, Application for Employer Identification Number for Balazs Ventures, LLC, Gaughf Enterprises, LLC, and Gaughf Properties, L.P. were filed with the IRS in 1999. (JA1305; JA0405-13). On May 17, 2010, the parties stipulated that the Gaughfs' and their entities filed those Forms SS-4 by facsimile. (JA0454-5). The IRS has never identified the indirect partner form the Gaughfs were "supposed to file."

17

**Lost Evidence**

Between the expiration of the normal three-year limitations period and the IRS raising the new arguments on February 19, 2010, critical evidence was lost. (JA1849-51). All of the central witnesses are now either unavailable or lack any significant recollection of these (now 13-year-old) events. (JA1849-51; JA1885-6).

The Gaughfs' stock broker who handled the Quanta stock sales suffered a breakdown, has been disabled, and remains unavailable to the Gaughfs. (JA1851-2; JA1312). All of the individuals at KPMG involved in the preparation of the 1999 returns for the Gaughfs and their entities left KPMG long ago. (JA1850-1; JA2092). Ms. Nall, who worked at KPMG, left the firm in 2001, retained no files, and retains almost no recollection of these 1999 returns out of the over one hundred 1999 returns she prepared. (JA2088-92).

The Gaughfs no longer have access to J&G, the law firm which represented them and their entities in these matters, because it has since dissolved. (JA0462; JA1288; JA1850). The Gaughfs retain little recollection of the 1999 events. (JA1856, JA1886; JA1888).

Since April 17, 2003, the IRS has destroyed the original IRS Forms SS-4 and various 1999 returns relating to the Gaughfs. (JA0463-4). No one can say what else has been lost.

18

## SUMMARY OF ARGUMENT

Like *Home Concrete* and *Highwood Partners* (the companion case the IRS conceded here), the IRS again failed to issue the 1999 FPAA in this J&G partnership option case within the parallel three-year periods provided by Congress in Sections 6501(a) and 6229(a). Over the course of the last 13 years, the IRS has asserted and later conceded four attempts to justify issuing the FPAA to Gaughf Properties almost exactly *seven years* after the Gaughfs and their entities timely filed their returns. Unlike the indirect partners in *Home Concrete* and *Highwood Partners*, the Gaughfs alone face the contention that Section 6229(e) somehow keeps their limitations period – and as a practical matter, the limitations period for almost every partnership with indirect partners – open forever.

Ten years after the fact, the IRS claimed for the first time that the indirect partners in Gaughf Properties, Mr. and Mrs. Gaughf, never "furnished the Secretary" their "name[s], address[es], and taxpayer identification number[s]" under Section 6229(e). The IRS promptly sought to withdraw its admissions as to the copies of the IRS Forms SS-4 that the Gaughfs and their entities filed with the Atlanta Internal Revenue Service Center containing their "name[s], address[es], and taxpayer identification number[s]." The IRS did so on the grounds the Forms SS-4 were copies and not the originals (which the IRS had destroyed). (JA0408) The zeal of the IRS to win this one case raises broader concerns.

19

This case transcends this case.  Not only does the IRS turn a blind eye to the three separate instances when the Gaughfs and their entities "furnished" their identifying information, the IRS lays the predicate by resort to traits common to almost every business that uses an indirect partner structure to provide double protection against unlimited liability.  The IRS return preparation regulations and Instructions preclude listing indirect partners, but the direct partner identification numbers tie directly into the IRS Master File containing all the previously "furnished" indirect partner information.  Contrary to the IRS contention, the partnership and partner returns contain no "inconsistent treatment of *partnership items.*"  By regulation, the partnership capital account reports contributions *under GAAP* and the partner's return uses *tax basis rules* to report the "outside basis" (attributed to distributed assets) – which *Petaluma II* recognizes as a jurisdictionally barred partner-level "affected item".  Thus, the position pressed by the IRS threatens to retroactively reopen the limitations period for all those partnerships back as far as 30 years and perpetually into the future.

The most direct means of resolving Section 6229(e) for those businesses is to strike straight to the remedy.  It starts a one-year clock from "the date on which the name, address, and taxpayer identification number of such [here indirect] partner *are furnished to the Secretary.*"  The plain meaning of the passive phrase "are furnished to the Secretary" encompasses more than its subset of mere "filing."

20

Even if someone thought "furnish" could be viewed as susceptible to more than one reasonable interpretation and therefore was ambiguous, the law limits the construction to one of those reasonable interpretations.  Neither of those reasonable (*i.e.*, plain and ordinary) interpretations could possibly convey (i) one exclusive means of "furnishing," (ii) solely through filing, (iii) at one particular place, (iv) after a particular point in time, (v) a peculiar form, (vi) that no one can identify, and (vii)  which must contain the mandatory talismanic phrase "correct or supplement," (viii) even where the partner has previously filed his or her "correct" information at the specified IRS Service Center.  The plain meaning of the words enacted by Congress and *Chevron* Step One do not permit cutting the statutory phrase down to a small subset nor then engrafting a stack of non-statutory requirements.   Indeed, abandonment of the reasonable interpretation(s) would violate *Chevron* Step Two.

Read as a whole, Temp. Reg. § 301.6223(c)-1T, the IRS lynchpin, itself confirms that "furnish" means more than a peculiar filing:  the information may be obtained from different persons, and section (f) embodies the broader meaning:

> **(f) Service may use other information.**
> In addition to the information on the partnership return and that supplied on statements filed under this section, *the Service may use other information in its possession* … (Emphasis added.)

By admission, the IRS "used" the identifying information the Gaughfs furnished. Thus, Section 6229(e) does not apply here or to the otherwise exposed businesses.

21

# ARGUMENT

## Tax Procedure Introduction

A moment's reflection reveals that Congress bestowed extraordinary powers upon the IRS – but did so with the expectation that the IRS would exercise those powers responsibly and within the limits imposed by Congress.  Like most statutes of limitations, these statutes reflect a balancing between the pursuit of taxes and the right of all citizens to a timely determination of their taxes.  The policy of closure and the "fair trial" policy against faded evidence require timely action.

The powers granted the IRS exceed the powers of any other agency (with the possible exception of Homeland Security) and constitute the most common contact between the American people and their government.  Bordering on the Orwellian at the time, the IRS persuaded Congress to enact Section 6109, dictating that every individual and entity in the country obtain a "taxpayer identification number" so that the IRS may maintain what is called a single "Master File" tying each individual and entity into their related activities upon the IRS simply punching that number.  The IRS carries the power to impose civil and even criminal sanctions upon anyone who fails to file a timely, accurate, and complete tax return or, in the instance of pass-through entities (like S Corporations, partnerships, limited liability companies, and certain trusts), a timely, accurate, and complete information return. Tax returns demand disclosure of a broad range of sensitive financial data.

22

To ensure the accuracy of those returns, the IRS also possesses exceptionally broad powers under Section 7602 to conduct examinations, issue summonses, and take testimony.  Unlike the FBI, the IRS can – without prior judicial approval or authority – issue a summons under Section 7602 demanding that any person appear, at a time and place designated by the IRS, produce the documents demanded by the IRS, and provide whatever testimony the IRS agent wishes.

Section 6501(a) grants the IRS three years from the filing of a tax return to exercise these powers and assert any tax deficiency the IRS contends may be due. In the instance of a partner in a partnership, Section 6229(a) grants the IRS three years from the filing of the partnership return to audit the partnership return and propose partnership item adjustments, which the partnership may then contest. 26 U.S.C. § 6226(f).  Here, the IRS failed to initiate or complete an audit of the Gaughfs or their partnership within either three-year period provided by Congress.

Section 6229(c)(2) provides the IRS six years, rather than three, where the partnership omits 25 percent or more of its income from its return.  Congress and the Supreme Court concluded that the IRS needs this additional time to find "omitted" income but needs no additional time to pursue a dispute over reported basis. *Home Concrete*, 132 S. Ct. at 1844.  Even if it were applicable, the IRS failed to issue its FPAA or execute an extension within that six-year period.

The partnership-level proceeding precedes the partner-level proceedings – a jurisdictional distinction that places added pressure on timing.  The timing problem arises from an IRS regulation which permits the imposition of penalties (that apply solely to the partners) at the partnership-level AND simultaneously bars those partners from asserting their Section 6664(c) partner-level defenses against these penalties.  Temp. Reg. § 301.6221-1T(d).  Under this "flog-'em-now/try-'em-later" approach, the IRS assesses the penalties against the partners at the partnership level (where those partners cannot defend themselves), the partners must pay those penalties, and the partners must then sue for a refund before asserting their reasonable cause defenses.  As illustrated by this case, a cavalier approach to partnership-level timing stiffarms the Section 6664(c) reasonable cause defenses long after the evidence has grown cold – here, for 13 years thus far.

Also of significance here, the IRS persuaded Congress to grant the IRS the power to issue what is called a "John Doe summons" under Section 7609(f) – this time requiring prior judicial approval.  Under that power, the IRS demands that a business disclose the taxpayer identification information of customers unknown to the IRS (here, the clients of a law firm), where the IRS reasonably believes those persons may have failed to comply with the tax laws.  Contrary to the false impression the IRS pressed upon the Tax Court, the IRS issues a John Doe summons to obtain the taxpayer identification information of the unknown (John

24

Doe) clients for the explicit purpose of pursuing their tax liabilities, not the liability of the firm holding their identities. The IRS told the Tax Court that the IRS issued the John Doe summons to J&G simply to pursue penalties against J&G (JA1611), which led to the Tax Court dismissing the significance of the 480 pages of identifying information the Gaughfs' counsel furnished the IRS.

Congress granted the IRS a specific John Doe limitations extension under Section 7609(e) to pursue the unknown clients. The IRS invoked that extension in its Amended Answer but failed to handle its John Doe summons on a timely basis here in two different ways. One, consistent with most areas of the law and well established in the tax law, a limitations period can only be extended if it is alive (sometimes referred to as the impossibility of resurrecting a cadaver). For reasons that still baffle the tax world, the IRS waited to issue its John Doe summons to J&G until June 18, 2003 – after the three-year period expired on 1999 returns (particularly those timely filed without extension). The IRS waited even though the IRS issued Notice 2000-44 opposing the J&G planning almost three years earlier on August 11, 2000. The IRS asked a District Court to enforce the John Doe summons directing a law firm to disclose the name, address, and taxpayer identification numbers of its clients, as well as their files. Once the IRS obtained the Order, the IRS still failed to initiate the audit, solicit an extension, or issue an FPAA within the added period (here, 151 days) provided by Congress.

## A.    SECTION 6229(e) TURNS ON AN UNAMBIGUOUS REMEDY RENDERED IRRELEVANT BY TIME.

### Standard of Review

This Court reviews decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649, 652 (D.C. Cir. 2010), *quoting* 26 U.S.C. § 7482.    This Court reviews the Tax Court's legal conclusions *de novo*, and determinations of fact (as well as mixed questions of fact and law) for clear error.    *Id.*, *citing Commissioner v. Duberstein*, 363 U.S. 278, 291 (1960).  The statutory construction of Section 6229(e) constitutes a question of law subject to *de novo* review, while the Tax Court's mistaken finding that the IRS issued the John Doe summons to pursue penalties against the law firm and not for the purpose of "using" that information to pursue the firm's clients constitutes a mixed question of (uncontroverted) fact and law, subject to review for clear error.[5]

---

[5] The IRS bears the burden of proof.  While Gaughf Properties independently proved its case, the IRS bears the burden of proof for two independent reasons. One, it bears the burden of proving the factual foundation for the "new issues" the IRS raised by affirmative allegations in its Second Amended Answer filed over ten years after the fact.  Tax Court Rule 142(a)(1); *Helvering v. Taylor*, 293 U.S. 507, 513 (1935); *Achiro v. Commissioner*, 77 T.C. 881, 890 (1981) (IRS' amended answer presented new matters under Rule 142(a) and the Court shifted the burden of proof to the IRS).  And two, the IRS bears the burden of proving the foundation for any exception to the normal three-year limitations period, once the petitioner demonstrates that the IRS issued the notice beyond that period.  *See, e.g.*, *Hoffman v. Commissioner*, 119 T.C. 140, 146 (2002).  Here, the parties stipulated that the IRS issued the 1999 FPAA almost four years beyond the normal deadline.

**Discussion**

By Motion for Leave dated February 19, 2010, the IRS contended that Jack and Nan Gaughf never told the IRS that they were indirect partners who held interests in the direct partners of Gaughf Properties and never furnished their taxpayer identification information.  At that very moment, the IRS withheld the 480 pages which contradicted the foundation for its belated resort to the Section 6229(e) extension rendered irrelevant by the calendar.

Since its enactment 30 years ago as part of the Tax Equity and Fiscal Responsibility Act of 1982 (Pub. L. No. 97-248, 96 Stat. 324) ("TEFRA"), the remedy prescribed by Section 6229(e) has remained unambiguous, unchanged, and plain.  While we address the failure of the jurisdictionally complicated predicate in Argument B, *infra*, the cleanest resolution remains striking straight to the remedy:

> (e)  Unidentified partner.— If —
>
> (1)  the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and
>
> (2)(A) the Secretary, before the expiration of the period otherwise provided under this Section with respect to such partner, mails to the tax matters partner the notice specified in paragraph (2) of section 6223(a) with respect to such taxable year, or
>
> (B)  the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,

27

the period for assessing any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for such taxable year *shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary*. (Emphasis added).

This remedy focuses upon the distinction between indirect partners and those who may be "off-the-grid." While the IRS partnership return preparation regulations, Instructions, and Form thwart the listing of indirect partners on the partnership return itself, that return keys the listed members into the IRS Master File reflecting the indirect partner's name, address, and taxpayer identification. The Gaughfs, their entities, and their counsel furnished their taxpayer identification through the normal procedures and at least one known huge step further:

- Through the IRS Forms SS-4 filed by Gaughf Properties and its two direct partners, "the name, address, and taxpayer identification number of [all] partners [were] furnished to the Secretary" by October 1, 1999;

- Through the returns timely filed by the Gaughfs and Gaughf Properties, "the name, address, and taxpayer identification number of [all] partners [were] furnished to the Secretary" by April 17, 2000; and

- On or before July 7, 2004, counsel for the Gaughfs and their entities "furnished the Secretary" with 480 pages of documents on a disk that included page after page of taxpayer identifying information ("name, address, and taxpayer identification numbers"), company profiles, tax opinions, completed IRS Forms SS-4, *etc.*, relating to the Gaughfs, their entities, and every aspect of the subject 1999 J&G transactions.

These actions start the Section 6229(e) one-year period the IRS allowed to expire.

Yet, the IRS faults the Gaughfs for failing to file a form the IRS cannot name.

1.      **The "Plain Meaning" Doctrine and the *Chevron* Two-Step Test for Regulations Converge to Resolve This Case.**

Every jurist and most advocates know the liturgy of the "plain meaning" doctrine and the *Chevron* two-step test[6] for regulations.  They converge here to resolve this case in a manner that protects the interests of the Commissioner against unreasonable search obligations and protects the interests of all indirect-partner partnerships against a retroactive reopening of the limitations period (as much as 30 years) and against that period remaining perpetually open.  To the extent one reaches Treas. Reg. § 301.6223(c)-1T, its full text corroborates the plain meaning of the Section 6229(e) one-year remedy: "are furnished" includes information furnished by filing a form *and by other means*.  "Furnish" thus comports with the manifest object of the statute – actual notice of the partner's identity.

Where the words of the statute enacted by Congress remain plain, clear, and unambiguous, they should be accorded their plain meaning rather than resorting to intrinsic or extrinsic sources and rules of construction.  *See, e.g.*, *Caminetti v. United States*, 242 U.S. 470, 485 (1917); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242 (1989).  The law presumes that Congress attaches the plain, ordinary meaning to its words, unless the context indicates otherwise.  *In re Polar*

---

[6] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984).

29

*Bear Endangered Species Act Listing*, 709 F.3d 1, 15 (D.C. Cir. 2013) ("commonplace definition"). Under the first prong of the *Chevron* analysis, "If the intent of Congress is clear, that is the end of the matter." *Chevron*, 467 U.S. at 842-843. The words enacted by Congress stand as the best evidence of that intent. *Ron Pair Enters.*, 489 U.S. at 242; MERTENS, LAW OF FEDERAL INCOME TAXATION § 3.06 ("Courts assume that legislative intent is expressed by the ordinary meaning of the words in a statute").

No regulation may contract, expand, or modify the words enacted by Congress. *See, e.g., Commissioner v. Acker*, 361 U.S. 87, 92 (1959); *Levine v. Apker*, 455 F.3d 71, 85 (2d Cir. 2006). No regulation may engraft requirements onto a statute. *Id.* Nor should regulations be applied in a way that does so. *National Westminster Bank, PLC v. United States*, 512 F.3d 1347, 1354 (Fed. Cir. 2008); *Horton Homes v. United States*, 357 F.3d 1209, 1211-12 (11th Cir. 2004).

In sum, no regulation – or, as here, no selective application of part of a regulation – may cut a phrase enacted by Congress down to a small subset of itself, and then engraft a number of peculiar additional requirements (such as permitting only one still unnamed form, requiring non-statutory information, filed at a specific place, after a specific time, and containing the mandatory talismanic phrase "correct or supplement" – a nonsensical phrase where the indirect partner previously filed all the "correct" information with the IRS Service Center).

30

The Tax Court labeled the word "furnish" ambiguous, as its justification for applying (part) of the regulation.[7]  Two prongs of the ambiguity concept aid this Court in disposing of this case.  First, ambiguity means susceptible to more than one reasonable interpretation.  *AFL-CIO v. FEC*, 333 F.3d 168, 174 (D.C. Cir. 2003).  Second, the definition must be limited to one of those reasonable interpretations.  *EME Homes City Gen., L.P. v. EPA*, 696 F.3d 7, 23 (D.C. Cir. 2012).  That is, the presence of an ambiguity between two competing interpretations does not create a license to adopt whatever other interpretation one can conceive – such as overriding the statutory phrase "are furnished to the Secretary" by demanding strict compliance with the first part of a regulation (with hypertechnicalities engrafted), and simultaneously dismissing the second part.

Both the ordinary and tax-context reading of the controlling phrase "are furnished to the Secretary" lead to the exact same meaning.  Rather than elevating hypertechnical form over the substance of actual notice of the partner's identity, Congress chose the passive verb "are furnished" and imposed no limitation as to who furnishes the taxpayer information to the Secretary, where the information is furnished to the Secretary, or when the information is furnished to the Secretary.

---

[7] Until the Supreme Court's recent opinion in *Home Concrete*, the litmus test for clarity seemed to be ambiguity.  The swing vote by Justice Scalia in *Home Concrete* questions the viability of that litmus test and notes that, as here, not every ambiguity invites an agency to fill the gap.  *Home Concrete*, 132 S. Ct. at 1846-49.

Consistent with the manifest object of actual notice, Congress chose the word "furnished" in this tax statute, not "filed." Before racing to dictionaries and computer word counts to demonstrate the obvious – that "file" is a subset of "furnish" – consider this practical test of the commonplace and the tax context.

> Imagine Angus and a fellow trial lawyer go to a local bistro, order, and dine. In the midst of the meal, they overhear a secretary at the next table say, "Well, I furnished my return today!"

> The friend comments to Angus, "Did you hear that? What a peculiar phrase. When was the last time you heard someone say 'I furnished my return'?"

> "Must have been a document production – or too much wine."

Commonplace usage? No. Normal within special tax context? No. "Furnish" and "file" no more mean the same, than does "a secretary" and "the Secretary." "Furnish" is a bigger word than its subset "file" as virtually every dictionary confirms. Consider Funk & Wagnalls' definition of this common term at the time of enactment:

> **fur·nish** (fûr'nish) *v.t.* … **2** To supply; provide. **See** synonyms under ACCOMMODATE, GIVE, PRODUCE, PROVIDE. FUNK & WAGNALLS NEW COMPREHENSIVE INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, 513 (Encyclopedic ed., 1982) (emphasis in the original).[8]

Congress certainly knows the difference in a tax context between its choice of "furnish" here and "file" elsewhere.

---

[8] By contrast, Funk & Wagnalls defines file as "to place among official records as prescribed by law." FUNK & WAGNALLS, *supra* AT 472.

Congress knows how to use the word "file" when it means the word "file," for Congress uses it in 617 separate sections just in Title 26. The total number of times Congress uses "file" within those 617 tax sections exceeds the capacity of our computer. Congress undoubtedly understands that the common usage of the word "furnish" certainly includes filings but it also includes much more.

More to the point, no reasonable interpretation of the passive phrase "are furnished to the Secretary" cuts "furnish" down to "file" and then engrafts, as the *exclusive* means of "furnishing," the Tax Court's strict compliance with the added requirements of filing a form no one has yet named, at a particular place, after (not before) the filing of the partnership return, and that the (nonexistent) form must contain the mandatory talismanic phrase "correct or supplement." (Opin. 38) That interpretation demands "correct or supplement" even though the taxpayers and their entities previously filed all *correct* identification information at the specified place on the Form SS-4 required by the IRS AND even though the Gaughfs' counsel furnished the IRS their 480 page file (which repeatedly states their identifying information) precisely where and when the IRS dictated.

If the regulation embraced that bizarre interpretation excluding all actual notice from "furnish" other than the unnamed form that apparently no one knows exists, then it would run afoul of *Chevron* Step-Two reasonableness. Fortunately, the full text of the regulation rescues it from invalidity.

## 2. Read as a Whole, the Regulations Prove that "Furnished" Means More than Just the Filing of a Still Unnamed Form with a Mandatory Talismanic Phrase.

While one may not, and perhaps should not, reach beyond the plain and unambiguous language of the statute, the regulations themselves demonstrate that "furnish" means more than the peculiar form which neither the Tax Court, the IRS, nor we can name. (JA2114-5) For the taxable year 1999, a temporary regulation under Section 6229(e) incorporated a temporary regulation under Section 6223.[9] Section 6223 deals with notification to the partners of various aspects of the partnership proceedings. Before delving into those regulations, note that Section 6223(a) turns on actual knowledge tied to "sufficient information":

> A partner shall not be entitled to any notice under this subsection *unless the Secretary has received* (at least 30 days before it is mailed to the tax matters partner) *sufficient information to enable the Secretary to determine that such partner is entitled to such notice* and to provide such notice to such partner. (Emphasis added).

Moreover, Section 6223(c)(2) requires in mandatory terms that "the Secretary shall use additional information *furnished to him by* the tax matter partners or *any other person* in accordance with regulations." The underlying regulations reiterate that no one person must furnish the information. Temp. Reg. § 301.6223(c)-1T(d). Contrary to the pivotal Tax Court holding, it also imposes no time limitation.

---

[9] For taxable years beginning prior to October 4, 2001, Temp. Reg. § 301.6229(e)-1T incorporated Temp. Reg. § 301.6223(c)-1T by reference.

34

The most critical provision here, Temp. Reg. § 301.6223(c)-1T*(f)*, specifically provides that the IRS may use information *other than* the partnership return and any formal "statements filed under this section":

> (f)  **Service may use other information.** – In addition to the information on the partnership return and that supplied on statements filed under this section, **the Service may use other information in its possession** in administering subchapter C of chapter 63 of the Internal Revenue Code.  However, the Internal Revenue Service is not obligated to search its records for information not expressly furnished under this section.  (Emphasis added).

While not obligated to search, no doubt exists here – the IRS did search, did obtain, and did USE that taxpayer identification information.  Consider the IRS admissions "conclusively established" under the Tax Court Rule 90(f):

> …  *respondent* **[IRS]** *admits that it USED the documents* (contained on a disk obtained on or about July 7, 2004 from Jenkens & Gilchrist) in subsequently dealing with the Gaughfs, Gaughf Properties and their related entities.  (JA0367).

> **Admits that respondent USED the name, address and social security number** of Andrew Gaughf supplied by J&G within thirty days of receiving it.  (JA0369).

> [In conducting the 1999 partnership audit of Gaughf Properties, the IRS's **designated agent USED both the documents J&G produced** on or before July 7, 2004, relating to the Gaughfs AND information derived from those documents.]  *Admits*.  (JA0370-4) (emphasis added).

Among the 480 pages that the IRS "used" were copies of the two previous instances that the Gaughfs furnished their taxpayer identification information.

35

3.   **The Gaughfs and Their Entities Furnished Their Correct Names, Addresses, and Taxpayer Identification Numbers When They Filed Their Forms SS-4 By October 1, 1999.**

The Gaughfs furnished the IRS with their "correct" individual names, addresses, and taxpayer identification numbers when they filed the IRS Forms SS-4 at the Atlanta Service Center upon formation of the two direct partners and partnership. (JA1599-0)  By October 1, 1999, nothing remained to be "corrected or supplemented."  The Tax Court erred when it rejected these forms as filed too soon based on a statute and even a regulation that imposes no time limit on "furnishing." What better time to furnish the information than *formation* of the direct partners?

From an IRS information perspective, the indirect partners tied their identities to the IRS "Master File" under the taxpayer identification number that the IRS assigned to the two direct partners at inception. *See, e.g.,* the Internal Revenue Manual, 3.13.5.14.  The taxpayer identification number constitutes the key for the IRS.  The Treasury Department first persuaded Congress to authorize and require the use of taxpayer identification numbers in 1961 when Congress adopted Section 6109 "IDENTIFYING NUMBERS."   The legislative history confirms that Treasury would use that number as the key to a universal file maintained on each taxpayer.  Section 6109 was designed "to improve enforcement and collection of internal revenue taxes by facilitating the expanded use of automatic data processing equipment by the Internal Revenue Service and by enabling the Service

36

to match information returns ... filed with tax returns." S. Rep. No. 1102, 87th Cong., 1st Sess. 1, 1961-2 C.B. 475, 476. By design, taxpayer numbers enable the IRS to use a single file for all of a taxpayer's tax transactions:

> Through the use of taxpayer account numbers and automatic data processing equipment the Internal Revenue Service hopes to *develop a single file* which would contain, in one place, information relative to all of the tax transactions involving a taxpayer. *Such a file would contain first, the taxpayer's name, address, and account number. Second, it would contain references to other taxpayers with whom he was involved from a tax standpoint (for example,* a cross-reference to an account number of the taxpayer's wife if she filed a separate return or *a reference to a partnership account number for each member of the partnership).* ... Fourth, the file would contain *information reported by others with respect to the taxpayer*...
>
> The recording of this information *in a single file* for each taxpayer would make it possible for the Internal Revenue Service to reach objectives which can be only partially achieved today. ... Third, *the section of returns for audit examination could be made not only on the basis of the returns themselves, but also on the basis of returns for prior years and for other taxes.* ... *Id.* (Emphasis added.)

That "Master File" immediately flashes any taxpayer's full tax picture upon anyone at the IRS punching in the taxpayer's identification number. Beyond the Form SS-4 filed at formation, the IRS has named no other form that fulfills that function.

Furnishing the indirect partner identifying information *at formation* best comports with the Section 6109 taxpayer identification number key, the IRS Master File, the IRS exclusion of indirect partners from partnership returns, and the Section 6229(e) actual notice by all businesses with indirect partners.

**4.    Especially When Coupled With Their Forms SS-4, the Gaughfs and Their Entities Furnished Their Taxpayer Information When They Timely Filed Their Returns By April 17, 2000.**

For the same reason the normal limitations period applies to other partnerships and LLCs with indirect partners, the returns which the Gaughfs timely filed again furnished the required information.  The Gaughf Properties partnership return furnished the identification numbers of the two direct partners that linked directly into the name, address, and identification number of the two indirect partners through the Section 6109 Master File.  Further, the returns timely filed by the indirect partners (again furnishing their taxpayer identification information) tied back into the partnership and its successor in at least ten ways.

Beyond the Gaughf Properties return listing the direct partners with their identifying information tying into the Gaughfs as indirect partners, the Gaughfs' 1999 personal return – with their name, address, and identification numbers – cross-references Gaughf Properties or Bodacious at ten different places. Interestingly, the Tax Court cites the Section 351 Statement in their return which specifically states their outside basis in the Gaughf Properties interest transferred to Bodacious.  (JA1611.)   In five separate places, the Gaughfs' return identifies Gaughf Properties by name *and* its identification number which invokes the global Master File the IRS maintains on the partners.  (JA0582-3; JA0588; JA0596; JA0599).

38

**5.     Counsel for the Gaughfs and Their Entities Furnished the IRS a Treasure Trove of Their Identifying Information in the 480 Pages Delivered to the IRS on July 7, 2004.**

The IRS waited until after the parallel Sections 6501(a) and 6229(a) three-year periods expired for the Gaughfs before issuing its John Doe summons to their law firm on June 19, 2003.  Section 7609(e) grants the IRS a limitations extension when the John Doe summons is contested.  (JA0290)  Such extensions cannot revive previously expired limitations periods.  *See, e.g., Cambridge Research & Dev. Group v. Commissioner*, 97 T.C. 287, 292 (1991).  The IRS failed to issue the summons on a timely basis and, upon receipt of the 480-page Gaughf file furnished in response to that summons, again failed to act within the periods provided by Congress – within the Section 7609(e) 151 days, the Section 6229(e) one year, or even the sum of one year plus 151 days.

The Tax Court erred by dismissing the 480-page comprehensive file on the (hypertechnical) ground that the 480 pages lack the talismanic phrase "correct or supplement" and that these documents were not filed in the Atlanta Service Center. (JA1633; JA1636).  The Gaughfs' counsel furnished the 480 pages exactly where and when the designated IRS agents and the District Court commanded – the 480 pages which included the Forms SS-4 and returns filed with the Atlanta Service Center.  Still, the Tax Court elevates futile form over substance in demanding strict compliance with the first part of the regulation while disregarding the second part.

Based on an inaccurate IRS characterization, the Tax Court dismissed the significance of the 480 pages as being requested for a different purpose: "On June 19, 2003, respondent issued a John Doe summons to J&G in connection with an audit *to determine whether the firm was liable for penalties as a promoter of a tax shelter*." (JA1611) (emphasis added). The statute, the IRS summons, and the IRS Petition to the District Court prove otherwise.

By statute, a John Doe summons "does not identify the person [the John Doe] with respect to *whose liability the summons issued ...* (1) [t]he summons relates to … [an] ascertainable group…" when "there is a reasonable basis for believing that such group … may have failed to comply with any provision of the internal revenue laws." 26 U.S.C. § 7609(f). The specific John Doe summons itself belies the suggestion that the IRS was not focused on the liabilities of the clients. (JA0679-84). In 13 separate demands, the summons sought:

> Please produce the ***name, address and taxpayer identification number*** (and any additional information as specified in the numbered paragraphs below) for each [United States taxpayer, J&G client, person whom J&G provided assistance, entity, corporation, etc.] . . ." (JA0681-4) (emphasis added).

On August 14, 2003, the IRS filed a Petition in the United States District Court for the Northern District of Illinois to enforce, among other summonses, "a John Doe summons issued to and served upon Jenkens & Gilchrist" on June 18, 2003. (JA0685) (emphasis added).

40

While the Petition filed by the IRS also seeks to enforce certain summonses relating to J&G penalties, the IRS Petition explicitly states (JA0686-7):

> IRS is also conducting an investigation to determine the correctness of returns filed by, and the correct federal tax liabilities of, certain United States taxpayers. ***Identification of the participants is the first necessary step*** to enable the IRS to determine the correctness of federal tax returns ***filed by the participants*** and to determine the correct federal tax liabilities of the participants. (emphasis added).

On May 14, 2004, the District Court relied upon the IRS in ordering that J&G produce by May 17, 2004: "a. all **identities** responsive to the John Doe summons (the "Clients")." (JA0701) (emphasis added). On May 17, 2004, J&G complied. (JA0705-6). Within one month, the IRS used that information in a letter to Mr. Gaughf at 136 Pinnacle Falls Drive, Pickens, South Carolina, stating "Your name was one of a number released to the IRS by court order May 14, 2004 in the case United States v. Jenkens & Gilchrist." (JA0707-10).

Also pursuant to the District Court Order, J&G furnished its 480-page file on the Gaughfs to the IRS by July 7, 2004. As the Tax Court accurately found:

> The CDs included approximately 480 pages of documents pertaining to the transactions involving the Gaughfs, Gaughf Properties, Bodacious, Balaz Ventures, and Gaughf Enterprises. ***The names, addresses, and TINs of the Gaughfs, Gaughf Properties, Bodacious, Balaz Ventures, and Gaughf Enterprises were also provided on some of the documents on the CDs***. The CDs contained copies of the Forms SS-4 filed with respondent for Gaughf Properties, Gaughf Enterprises, and Balaz Ventures. The CDs contained ***a company profile of Gaughf Enterprises which included Mr. Gaughf's name, address, and Social Security number and identified him as owning 100% of Gaughf***

41

*Enterprises*.   The company profile also contained the employee identification number for Gaughf Enterprises.  *A similar company profile for Balazs Ventures with the same information pertaining to that LLC and Mrs. Gaughf was also provided on the CDs*.  In addition, the CDs contained the articles of organization for both Gaughf Enterprises and Balazs Ventures, both of which provided information about the Gaughfs similar to the information found in the company profiles. (Emphasis added.) (JA1612-1613)

Not only did J&G provide copies of the IRS Forms SS-4 to the IRS in their production, the Gaughfs and their local counsel filed the original forms with the IRS back in the fall of 1999.  The Tax Court accurately found:

> On *September 27, 1999*, Mr. Holloway filed a *Form SS-4*, Application for Employer Identification Number, *on behalf of Gaughf Enterprises* with the Entity Control unit at respondent's Service Center in Atlanta, Georgia. This Form SS-4 identified Gaughf Enterprises as a disregarded entity.
>
> \*        \*        \*
>
> As with Gaughf Enterprises, on *September 27, 1999*, Mr. Holloway filed a Form SS-4 on behalf of *Balazs Ventures* with the Entity Control unit at respondent's Service Center in Atlanta, Georgia. This Form SS-4 identified Balazs Ventures as a disregarded entity.
>
> \*        \*        \*
>
> On September 29, 1999, Mr. Gaughf, acting on behalf of Gaughf Enterprises, and Mrs. Gaughf, acting on behalf of Balazs Ventures, executed a limited partnership agreement for Gaughf Properties. The limited partnership agreement listed Gaughf Enterprises and Balazs Ventures as the only partners in Gaughf Properties. … On *October 1, 1999*, Mr. Holloway filed a *Form SS-4 on behalf of Gaughf Properties* with the Entity Control unit at respondent's Service Center in Atlanta, Georgia." (JA1600).
>
> \*        \*        \*

42

Each Form SS-4 filed by Mr. Holloway stated that it was filed on account of the start of a new business. ***Each entity listed the Gaughfs' personal address in South Carolina as the entity's mailing address on its Form SS-4. The Forms SS-4 for Gaughf Properties, Gaughf Enterprises, and Bodacious also: (1) listed Mr. Gaughf as the "principal officer, general partner, grantor, owner, or trustor"; (2) provided Mr. Gaughf's Social Security number; and (3) were signed by Mr. Gaughf. The Form SS-4 for Balazs Ventures listed the same information for Mrs. Gaughf.*** (JA1600-1). (Emphasis added).

For good reason, the IRS never complained about the adequacy of the 480-page gold mine of Gaughf information (JA1989-90) – until 2010 when the IRS concluded on the eve of trial that feigned ignorance of the Gaughfs' "name, address, and taxpayer information" could be used as a Section 6229(e) bootstrap.

The Tax Court dismissal of those 480 pages does not withstand analysis. One, the specific instructions override the general. The IRS cannot insist upon the futile filing of the 480 pages again with the Atlanta Service Center when the IRS itself solicited the District Court Order demanding that the 480 pages be delivered to the IRS designated agents in Chicago where the IRS chose to work the case. "The law does not require the doing of a futile act." *Ohio v. Roberts,* 448 U.S. 56, 74 (1980). Two, this massive production included the Forms SS-4 and returns which the Gaughfs filed with that Service Center. Three and most important – having conducted the search, obtained the 480 pages, and used them *for the purpose represented to the District Court* – subsection (f) of the IRS' regulations fits like tongue-in-groove paneling when it says "IRS May Use Other Information."

43

## B.   THE PREDICATE BARS REOPENING THE LIMITATIONS PERIOD FOR INDIRECT-PARTNER PARTNERSHIPS RETROACTIVELY AND PERPETUALLY.

### Standard of Review

This Court reviews *de novo* both the statutory construction and the "partnership item" jurisdictional dispute. *Petaluma II*, 591 F.3d at 652.

### Discussion

Prior to February, 2010, the IRS also never asserted that somehow the Gaughfs and their entities violated the Section 6229(e) conjunctive predicate. For every business with two lines of limited liability protection, the combined impact of the IRS testimony (only one indirect partner letter ever seen) (JA2114-5) and the Tax Court's bottoming "inconsistency" on two sets of required rules –sharpens the threat to open the limitations period back as far as 30 years to enactment and forward forevermore.  We start with the predicate:

(e) UNIDENTIFIED PARTNER. – IF –

(1) the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and

(2) (A) the Secretary, before expiration of the period otherwise provided under this section with respect to such partner, mails to the tax matters partner the notice specified in paragraph (2) of section 6223(a) with respect to such taxable year, or

(B) the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year . . .

1.  **The IRS Partnership Return Regulations, Instructions, and Form Exclude Indirect Partners from the Return.**

The single most important point about this case remains that it impacts the limitations period for almost every business over the past 30 years which was wisely structured with a double layer of limited-liability protection. As the Court undoubtedly knows, limited liability companies overtook the limited partnership and corporate structures as the most common choice of entity. *See, e.g.,* J. CUNNINGHAM AND V. PROCTOR, DRAFTING DELAWARE LLC AGREEMENTS (Aspen Publ.) ¶ 1.01. In many of those pass-through entities (especially architectural, law, and medical firms), the partners take their interests through a limited liability entity (typically a single-member LLC) to provide a second level of limited liability to protect their homes. Still, the partnership returns only list the "members," not the indirect partners/owners of the direct partners.

To avoid the utter chaos that would arise from reporting duplicative partners for the same partnership interest and reporting more than 100 percent ownership of the partnership, the IRS partnership return preparation regulations, Instructions, and Form 1065 limit the partners listed in the partnership return to "members." They, however, insist upon the taxpayer identification numbers for those "members" – the numbers that immediately tie the direct partners to the names, addresses, and taxpayer identification numbers of the indirect partners.

45

The 1999 version of Temp. Reg. § 1.6031(b)-1T(a)(1) (which still governs 2012 partnership returns) required that partnerships "shall furnish to every person who was a partner (*within the meaning of Section 7701(a)(2)*) at any time during the year a written statement [Schedule K-1] containing the information described in paragraph (a)(3) of this Section." (Emphasis added.) In 1999 (and still), Section 7701(a)(2) provided that "the term 'partner' includes a *member* in such a syndicate, group, pool, joint venture, or organization [*i.e.*, partnership]." The IRS "1999 Instructions for Form 1065" follow the same course. (JA2125-56)

At page 18, those partnership return Instructions reinforce the practical reality that the sum of the reported partnership interests cannot exceed 100 percent:

> **Schedule K** (page 3 of Form 1065) is a *summary schedule* of *all the partners' shares* … Schedule K is used to report *the totals of these and other amounts.* (JA2127) (emphasis added).

Again, neither the "summary schedule of all the partners' shares" nor "the totals" can exceed 100 percent. In 1999 and now, the U.S. Partnership Return (Form 1065), its Schedule K, and its Schedule K-1 provide no space for reporting indirect partners or more than 100 percent. (JA0466; JA0469-510; JA2125-56).

While the IRS contention threatens to destroy any rational limitations period for businesses that operate with indirect partners, the IRS Forms SS-4 filed by the direct partners should eliminate that exposure because no other form furnishes the "name, address, and taxpayer identification number" of the indirect partner.

### 2. Under Section 6229(e)(2)(A), the IRS Failed to Issue the Notice "Before Expiration of the Period Otherwise Provided Under This Section".

No dispute should exist as to the second element in the predicate. The three-year period under Section 6229(a) controls the "period otherwise provided under this section" and expired on April 17, 2003 (JA0344-6) – exactly ten years ago today.

### 3. The Differences Between Capital Account Financial Accounting Principles And Tax Accounting Principles Do *Not* Create "Inconsistent Treatment of *a Partnership Item*".

The IRS convinced the Tax Court that a Section 6229(e)(2)(B) "inconsistency" exists here. As the point of comparison for the partnership return, the Court stated: "Gaughf Properties netted the amounts of the stated premiums of the two currency options in reporting *the value of the capital contributions on its* [partnership] *return*." (JA1625). For the partner return comparison, the Court considered both the individual return filed by the Gaughfs and the return filed by the successor to Gaughf Properties (Bodacious). In both instances, the Court relied upon the partner's tax basis in his partnership interest (known as "outside basis"). Upon the distribution of partnership assets in liquidation, Section 732(b) substitutes the "outside basis" for the partners' tax basis in the distributed assets.

47

a.   **Under *Petaluma II, III,* and *IV,* the "Outside Basis" That Drives the Partners' Returns Constitutes a Partner-Level "Affected Item" Beyond Partnership-Level Jurisdiction.**

The Tax Court erred in treating the "outside basis" on the returns filed by the partners and the successor as a "partnership item." (JA1623-6). Section 6229(e)(2)(B) only covers inconsistencies where "the partner has failed to comply with subsection (b) of Section 6222 (relating to notification of inconsistent treatment *with respect to any partnership item* for such taxable year)." Section 6222(b) begins with the phrase "In the case of *any partnership item* …" and then reiterates that limitation.

This Circuit knows better than any in the country from its two partnership jurisdiction opinions in *Petaluma II* and *IV* that (i) the tax basis of the contributions translate into the partner's "outside basis" in his or her partnership interest under Section 722; (ii) that Section 732(b) substitutes the "outside basis" for the tax basis of the distributed assets in the hands of the distributee; (iii) that the partner uses that "outside basis" to calculate his gain or loss upon the sale of the distributed assets; and (iv) most importantly, that "outside basis" is a partner-level "affected item" – NOT a "partnership item." *See, e.g., Petaluma II*, 591 F.3d at 654; *Jade Trading II*, 598 F.3d at 1380 (Fed. Cir. 2010). As a jurisdictional matter, no "inconsistent treatment of a *partnership item*" arises from the Tax Court's focus on the partner-level "outside basis."

48

**b.**   **No "Inconsistent Treatment of Any Partnership Item" Arises From the Difference Between the Capital Contribution Value on the Partnership Return and the Outside Basis on the Partner's Return.**

The Tax Court mistakenly compares apples and oranges:  it compares the "capital contributions" reported on the partnership return at their net fair market value, (i) with the outside basis the Gaughfs reported on their individual returns and (ii) with the partners' outside basis in the partnership interests they contributed to the non-partner successor entity, Bodacious.  (JA1624-6).   Unlike net fair market value, outside basis excludes contingent obligations.

The comparison to the Gaughfs' outside basis fails because no inconsistency arises from following two sets of required rules that must always be applied to partnership capital accounts and partner outside basis.  If the different rules created an inconsistency, every set of partnership and partner returns would contain Section 6229(e)/6222(b) inconsistencies.   That would contradict the IRS' own regulation, Treas. Reg. § 1.705-1(a), which confirms the accepted difference:

> The adjusted basis of a partner's interest in a partnership [*i.e.*, outside basis] is determined without regard to any amount shown in the partnership books as the partner's "capital", "equity", or similar [capital] account.   For example, A contributes property with an adjusted [tax/cost] basis to him of $400 (and a value of $1,000) to a partnership.  B contributes $1,000 cash.  While under their agreement each may have a "capital account" [*i.e.,* value] in the partnership of $1,000, the adjusted [tax/cost] basis of A's interest is only $400 and B's interest $1,000.

The IRS standard partnership return requires that the partnership report the "capital contributions" in the "Schedule M-2 Capital Account" section. That section uses financial accounting principles that govern capital accounts to report capital contributions based on net fair market value (net of obligations like the contingent short option obligation) – not tax basis. *See, e.g.*, LARRY E. RIBSTEIN AND ROBERT R. KEATINGE, LIMITED LIABILITY COMPANIES § 17:10 fn. 29 (West, 2012-2 ed.) ("The contributing partner only receives an increase in the capital account for the net fair market value of the property contributed"); LAURA E. CUNNINGHAM AND NOEL B. CUNNINGHAM, THE LOGIC OF SUBCHAPTER K 32 (2d ed., West Group 2000); *Mitchell v. Commissioner*, T.C. Memo 1997-382, 1997 WL 473178 at *5, n.5, *citing* Treas. Reg. §§ 1.705-1(a)(1) , 1.704-1(b)(2)(iv)(b). That method fairly determines the relative interests held by the different partners.

By comparison, Section 722 uses the entirely different tax basis rules to compute the Gaughfs' tax basis in their partnership interests (outside basis) based on the cost of the contributed assets, not their value. 26 U.S.C. §§ 722, 1012. Section 722 attributes that cost basis to the partner's outside basis in his partnership interest. When a partnership distributes assets, the partnership return reports "the adjusted basis of the property to the partnership immediately before the distribution." (JA2151:23) For the partner, Section 732(b) attributes his outside basis to the assets distributed to him in liquidation of his partnership interest.

Here, the principal difference between the capital account and the outside basis rules arises from the short option contingent obligation. Section 752(b) generally treats any assumption of a partner's "liabilities" as a distribution and thereby reduces his basis. Under the long line of cases that prevailed in 1999, contingent obligations (such as short options) fall short of a Section 752 fixed liability and are therefore disregarded in computing basis.[10] The capital account rules simply follow a different regime in determining *net* fair market value.

The comparison to the successor entity fails for an additional reason. Section 6229(e)(2) only applies where "the *partner* has failed to comply with" Section 6222(b), which only applies to "the *partner's* treatment on *his* return." As a matter of law,[11] the conclusively established admissions (JA0173-4; JA0379), the partnership agreement (JA1600), and the consistent returns (JA0532-609; JA0610-28), the successor (Bodacious) acquired 100 percent of Gaughf Properties on December 27, 1999 and could not be a partner. Hence, the second comparison also falls outside the statutes.

---

[10] *See, e.g.*, *Deputy v. DuPont*, 308 U.S. 488, 494-95 (1940) (short option is not an indebtedness); *LaRue v. Commissioner*, 90 T.C. 465, 480-82 (1988); *Helmer v. Commissioner*, T.C. Memo 1975-160 (IRS established that short option excluded from Section 752 liability). While not pertinent to the 1999 consistency question, note that, since 2007, courts have generally disregarded option pairs under various judicial doctrines – without altering these rules.

[11] The contribution of 100 percent of the partnership interests to one party terminates the partnership because a partnership must have at least two or more partners. 26 U.S.C. §7701(a)(2); *Wenig v. Commissioner*, 177 F.2d 62, 63 (D.C. Cir. 1949).

## C.    THE TAX COURT ALSO ERRED IN TWO OTHER WAYS.

### Standard of Review

This Court reviews *de novo* conflicting precedent and assignment of burden

of proof. *United States v. Holmes*, 505 F.3d 1288, 1293 (D.C. Cir. 2007).

### Discussion

### 1.    The Tax Court Erred By Adopting an Incomplete and Untested Central California Trial Court Ruling That Never Once Cites the Critical Regulation Subsection.

As its principal authority, the Tax Court relies upon an untested and

incomplete central California opinion.[12]  Nowhere does *Costello* cite, much less

discuss and analyze, the critical regulation subsection that reconciles the regulation

with the plain meaning of "furnish," the Temp. Reg. § 301.6223(c)-1T*(f)* ("Service

May Use Other Information").  Nowhere does *Costello* mention actual knowledge

or IRS Forms SS-4, and it certainly never dealt with the taxpayer's counsel

furnishing 480 pages full of taxpayer information in response to an IRS John Doe

summons or the admissions that the IRS actually "USED" that information.  No,

the Court in *Costello* limited itself to the first part of the regulation requiring the

filing of a statement without mentioning the latter part.

---

[12] *Costello v. United States Gov't*, 765 F. Supp. 1003 (C.D. Cal. 1991).  Notably, the Tax Court also cites *Murphy v. Commissioner*, 129 T.C. 82 (2007) as supporting the IRS position here.  There, the Tax Court ruled for the IRS even when the shoe was on the other foot – that is, the IRS argued that it properly issued the FPAA *to the indirect partner* under Temp. Reg. § 301.6223(c)-1T*(f)* because "the Commissioner may use other readily available information possessed by him." 129 T.C. at 87.  Heads, the IRS wins; tails, the citizen loses.

The IRS itself distinguished *Costello* in an IRS Field Service Advice that, while not precedential, provides compelling reasoning in a calm, contemplative context outside the exigencies of litigation.  In concluding that a spouse is not "an unidentified partner" due to the IRS Master File, consider how the IRS reads *Costello*:

> In this case, *from a practical standpoint, \*\*\*'s name, address, and taxpayer identification number were provided to the Service when the TIN of the person holding the partnership interest is provided.*  When spouses file joint returns, *their account is held on the Master File* under the primary TIN for that year.

> \*          \*          \*

> The U.S. District Court provides us with some guidance, however sparse, on the interpretation of this statute and accompanying regulation.  In *Costello v. U.S.*, 91-2 USTC ¶ 50,412, the court found *the purpose of this statute to be 'to hold a statute of limitations open indefinitely under circumstances where the identity of the liable party is unknown or difficult to discern.'*

IRS FSA (Feb. 1, 1996), 1996 WL 33107118. (Emphasis added).

The IRS then concluded that "the identity of the liable party [was NOT] unknown or difficult to discern" because the IRS Master File ties one spouse into the furnished taxpayer identification number of the other spouse.  So too, the identification number of the direct partner ties directly into the Form SS-4 and Master File indirect partner information, just as it does with the partner's spouse.

2.     **The Tax Court Erred By Rewarding the Party Who Bears the Burden of Proof For Withholding Potentially Dispositive Documentary Evidence and Testimony Within Its Possession.**

The Tax Court erred as a matter of law[13] in refusing to determine burden of proof and refusing to draw an adverse inference from the IRS – the party bearing the burden of proof on the belatedly raised Section 6229(e) new issue – (i) withholding the documents the IRS received directly from KPMG and (ii) withholding the testimony of the IRS employees possessing personal knowledge as to the IRS receipt and possession of those documents.  If the KPMG documents in the possession of the IRS reflect that KPMG furnished the identifying information, that disposes of this case.  A party bearing the burden of proof cannot simultaneously maintain a claim (as the IRS asserts through its FPAA) and withhold evidence material to the defense against that claim.  *See, e.g., Anderson v. Nixon*, 444 F. Supp. 1195, 1200 (D. D.C. 1978) (journalist's claim dismissed on refusal to disclose information from alleged confidential source).  Where, as here, a party fails to produce relevant evidence within his possession, the law draws the inference that the withheld evidence is adverse to him.  *See, e.g., International Union, et al. v. N.L.R.B.*, 459 F.2d 1329, 1336 (D.C. Cir. 1972) (tracing rule back to English common law).  The Gaughfs seek that inference.

---

[13] *Holmes*, 505 F.3d at 1293 (placement of burden of proof is question of law subject to *de novo* review).

54

The Tax Court refused to draw that adverse inference, faulted the Gaughfs (who do not bear the burden of proof) for not calling a KPMG witness, and chose not to reach the burden of proof. (JA1607; 1631). Consider the sequence. KPMG refused to assist the Gaughfs. (JA1851; JA1914). Over the Gaughfs' objection, the Tax Court permitted the IRS to raise the Section 6229(e) argument as a "new issue" only two months before trial. (JA0284-7) Raising that "new issue" imposes the burden on the IRS (*see* note 5, *supra*). Given the surprise on the eve of trial, the Gaughfs, of course, relied upon the IRS having to bear its burden. Despite discovery requests, the IRS failed to produce any of the summonsed KPMG documents *in the possession of the IRS*, and also failed to call *any of its own employees with personal knowledge* of the IRS receipt and possession of these documents. Still, the Tax Court held for the IRS on the Gaughfs' failure to recall what they had and had not signed (that is, the Gaughfs who testified that they remembered very little about these complex partnership matters (JA1844; JA1865; JA1880; JA1899-90) and the CPA who recalled little before and nothing after she left KPMG in 2001 (JA1607; JA2083-4).

The IRS not only offered no evidence as to standard procedures for maintaining the "missing" form, a reliable search, or the fruits of that search: it could not name the form. In sum, the party withholding a massive volume of evidence cannot carry his burden as to the failure to file an unnamed form.

## CONCLUSION

The Gaughfs ask this Court to reverse and render judgment as to the time-barred 1999 FPAA on the grounds that the parallel three-year periods in Sections 6501(a) and 6229(e) control and expired long before March 30, 2007. At an absolute minimum, where the IRS represents to a District Court that it needs the John Doe's identifying information *for a stated purpose* AND the District Court orders production of that identifying information *for that stated purpose* exactly when and where the IRS demands AND the law firm delivers 480 pages of the client's information to the IRS at the designated place and time on July 7, 2004 – the IRS cannot pretend no one "furnished" that information.

DATED:  April 17, 2013                    Respectfully submitted,

/s/ David D. Aughtry
DAVID D. AUGHTRY

/s/ William E. Buchanan
WILLIAM E. BUCHANAN

CHAMBERLAIN, HRDLICKA,
WHITE, WILLIAMS & AUGHTRY
191 Peachtree Street, N.E.
Thirty-Fourth Floor
Atlanta, Georgia 30303-1747
Telephone (404) 659-1410
Facsimile (404) 659-1852

Counsel for Appellant Gaughf
Properties, L.P.

1716684_76

56

# ADDENDUM OF PERTINENT STATUTORY AND REGULATORY AUTHORITY

### Internal Revenue Code of 1986 (as amended through December 27, 1999)
### (26 U.S.C. §      )

**Section 722**    **BASIS OF CONTRIBUTING PARTNER'S INTEREST**

The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

**Section 732(b)**    **BASIS OF DISTRIBUTED PROPERTY OTHER THAN MONEY**

* * *

**(b) Distributions in liquidation.**--The basis of property (other than money) distributed by a partnership to a partner in liquidation of the partner's interest shall be an amount equal to the adjusted basis of such partner's interest in the partnership reduced by any money distributed in the same transaction.

**Section 6109(a)**    **IDENTIFYING NUMBERS**

**(a) Supplying of identifying numbers.**--When required by regulations prescribed by the Secretary:

**(1) Inclusion in returns.**--Any person required under the authority of this title to make a return, statement, or other document shall include in such return, statement, or other document such identifying number as may be prescribed for securing proper identification of such person.

57

**(2) Furnishing number to other persons.**--Any person with respect to whom a return, statement, or other document is required under the authority of this title to be made by another person or whose identifying number is required to be shown on a return of another person shall furnish to such other person such identifying number as may be prescribed for securing his proper identification.

**(3) Furnishing number of another person.**--Any person required under the authority of this title to make a return, statement, or other document with respect to another person shall request from such other person, and shall include in any such return, statement, or other document, such identifying number as may be prescribed for securing proper identification of such other person.

**(4) Furnishing identifying number of tax return preparer.**--Any return or claim for refund prepared by a tax return preparer shall bear such identifying number for securing proper identification of such preparer, his employer, or both, as may be prescribed. For purposes of this paragraph, the terms "return" and "claim for refund" have the respective meanings given to such terms by section 6696(e).

For purposes of paragraphs (1), (2), and (3), the identifying number of an individual (or his estate) shall be such individual's social security account number.

**Section 6222**   **PARTNER'S RETURN MUST BE CONSISTENT WITH PARTNERSHIP RETURN OR SECRETARY NOTIFIED OF INCONSISTENCY**

**(a) In general.**—A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.

**(b) Notification of inconsistent treatment.—**

**(B) In general.**—In the case of any partnership item, if—

**(A)(i)** the partnership has filed a return but the partner's treatment on his return is (or may be) inconsistent with the treatment of the item on the partnership return, or

**(ii)** the partnership has not filed a return, and

**(B)** the partner files with the Secretary a statement identifying the inconsistency,

subsection (a) shall not apply to such item.

**(2) Partner receiving incorrect information.**—A partner shall be treated as having complied with subparagraph (B) of paragraph (1) with respect to a partnership item if the partner—

**(A)** demonstrates to the satisfaction of the Secretary that the treatment of the partnership item on the partner's return is consistent with the treatment of the item on the schedule furnished to the partner by the partnership, and

**(B)** elects to have this paragraph apply with respect to that item.

**Section 6229     PERIOD     OF     LIMITATIONS     FOR     MAKING ASSESSMENTS**

* * *

**(e) Unidentified partner.**--If--

**(1)** the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and

**(2)(A)** the Secretary, before the expiration of the period otherwise provided under this section with respect to such

59

partner, mails to the tax matters partner the notice specified in paragraph (2) of section 6223(a) with respect to such taxable year, or

**(B)** the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,

the period for assessing any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for such taxable year shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary.

**Section 6501(a)**    **LIMITATIONS ON ASSESSMENT AND COLLECTION**

**(a)    General rule.**--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

**Temp. Reg.**
**§ 301.6223(c)-1T** ADDITIONAL          INFORMATION          REGARDING PARTNERS     FURNISHED     TO     THE     INTERNAL REVENUE SERVICE.

\* \* \*

**(b) Procedure for furnishing additional information--(1) In general.** Any person may furnish additional information at any time by filing a written statement with the Service. However, the information contained in the statement will be considered for purposes of determining whether a partner is entitled to a notice described in section 6223(a) only if the Internal Revenue Service receives the statement at least 30 days before the date on which the Internal Revenue Service mails the notice to the tax matters partner. Similarly, information contained in the statement generally will not be taken into account for other purposes by the Internal Revenue Service until 30 days after the statement is received.    [MISSING ELEMENTS SUCH AS CORRECT & SUPPLEMENT]

\* \* \*

**(f) Service may use other information.**
In addition to the information on the partnership return and that supplied on statements filed under this section, the Service may use other information in its possession (for example, a change in address reflected on a partner's return) in administering subchapter C of chapter 63 of the Code. However, the Internal Revenue Service is not obligated to search its records for information not expressly furnished under this section.

61

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> [X] this brief contains 13,190 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),

> *or*

> [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2000 in 14 point Times New Roman,

> *or*

> [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

/s/ David D. Aughtry_____

David D. Aughtry

Counsel for the Logan Trust

Dated:  April 17, 2013

62

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2013 the foregoing **BRIEF FOR THE APPELLANT** was served via ECF/electronic filing upon the following:

Michael J. Haungs, Esq.
Ivan C. Dale, Esq.
U.S. Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C. 20044
*michael.j.haungs@usdoj.gov/*
*ivan.c.dale@usdoj.gov*

/s/ David D. Aughtry
DAVID D. AUGHTRY

And I hereby certify that eight hard copies of the foregoing **BRIEF FOR THE APPELLANT** were mailed to the Clerk of the U.S. Court of Appeals for the District of Columbia Circuit and a hard copy of the foregoing **BRIEF FOR THE APPELLANT** was mailed via U.S. mail to:

Michael J. Haungs and Ivan C. Dale
U.S. Department of Justice
Tax Division, Appellate Section
P.O. Box 502
Washington, D.C. 20044

Gaughf Enterprises, LLC (Tax Matters Partner)
136 Pinnacle Falls Drive
Pickens, South Carolina 29671

/s/ David D. Aughtry
DAVID D. AUGHTRY