ORAL ARGUMENT NOT YET SCHEDULED

Case No. 13-1026

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

**Gaughf Properties, L.P., Balazs Ventures, LLC,
A Partner Other Than the Tax Matters Partner**

*Petitioner/Appellant*

**v.**

**Commissioner of Internal Revenue Service**

*Respondent/Appellee*

On Appeal from the Interlocutory Order and
Decision of The United States Tax Court

## BRIEF OF AMICUS CURIAE WEST VENTURES, L.P.,
in Support of Petitioner-Appellant and Reversal of the
United States Tax Court's Decision in Docket No. 18298-07

Thomas A. Cullinan
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309-3996
Telephone: (404) 853-8075
Facsimile: (404) 853-8806
tom.cullinan@sutherland.com

N. Jerold Cohen
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309-3996
Telephone: (404) 853-8038
Facsimile: (404) 853-8806
jerry.cohen@sutherland.com

*Counsel for Amicus Curiae West Ventures, L.P.*

## <u>CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES</u>

Pursuant to Circuit Rule 28, West Ventures, L.P. hereby submits its Certificate as to Parties, Rulings, and Related Cases.

**(A)     Parties and Amici**

All parties, intervenors, and amici appearing before the United States Tax Court and this Court are listed in the Brief for the Appellant.

**(B)     Rulings Under Review**

*Gaughf Properties, L.P. v. Commissioner*, 139 T.C. No 7 (2012).

**(C)     Related Cases**

In *West Ventures, L.P. v. Commissioner*, No. 24683-10 (T.C. filed Nov. 8, 2010), the Commissioner has asserted that the partners in West Ventures, L.P. were required to compute their outside bases in the partnership consistently with how the partnership computed capital.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, West Ventures, L.P. hereby submits its Corporate Disclosure Statement.

There exists no parent corporation or any publicly held corporation that owns a 10% or more ownership interest in West Ventures, L.P.

# **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT ....................................... ii

TABLE OF CONTENTS.................................................... iii

TABLE OF AUTHORITIES ................................................iv

STATEMENT OF AMICUS CURIAE ....................................1

SUMMARY OF ARGUMENT ...............................................1

ARGUMENT ...............................................................2

    THE GAUGHFS' COMPUTATION OF OUTSIDE BASIS WAS
    NOT "INCONSISTENT" WITH GAUGHF PROPERTIES'
    COMPUTATION OF CAPITAL. ...................................................2

        1.    Outside Basis and Capital Accounts Serve Different
            Purposes. ...................................................4

        2.    Outside Basis and Capital Accounts Are Computed
            Differently. ...................................................6

        3.    Contingent Obligations Are Treated Differently for
            Purposes of Outside Basis and Capital Accounts. ......................8

CONCLUSION...............................................................15

CERTIFICATE OF COMPLIANCE....................................................18

CERTIFICATE OF SERVICE ...........................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                **Page(s)**

*Gaughf Properties, L.P. v. Commissioner*, 139 T.C. No. 7 (2012) ...............i, 1, 3, 7

*Helmer v. Commissioner*, 34 T.C.M (CCH) 727 (1975) ..........................9

*Klamath Strategic Inv. Fund, LLC v. United States*, 440 F.Supp.2d 608
    (E.D. Tex. 2006), *aff'd in part, vacated in part, and remanded by*
    568 F.3d 537 (5th Cir. 2009) .....................................................................10

*La Rue v. Commissioner*, 90 T.C. 465 (1988) .........................................9

*Long v. Commissioner*, 71 T.C. 1 (1978), *mot. for recons.*, 71 T.C. 724
    (1979), *aff'd and remanded*, 660 F.2d 416 (10th Cir. 1981)................9

*Lucas v. American Code Co.*, 280 U.S. 445 (1930).................................6

*Thor Power Tool Co. v. Commissioner*, 439 U.S. 522 (1979) .................6

*West Ventures, L.P. v. Commissioner*, No. 24683-10 (T.C. filed
    Nov. 8, 2010) ..........................................................................................i

**STATUTES**

26 U.S.C.
    § 701..................................................................................................5
    § 702..................................................................................................5
    § 703..................................................................................................5
    § 704.........................................................................................5, 10, 12
    § 704(b)..............................................................................................5
    § 704(c)..............................................................................................12
    § 705..................................................................................................6
    § 705(a)(2).......................................................................................5, 9
    § 722..................................................................................................6
    § 731(a)(1)........................................................................................4
    § 733..................................................................................................6
    § 741..................................................................................................4
    § 742..................................................................................................6
    § 752.......................................................6, 8, 9, 10, 11, 12, 13, 15
    § 752(a)...........................................................................................8, 9
    § 752(b)..............................................................................................9

§ 6222 ............................................................................................................2
§ 6222(a) .....................................................................................................7
§ 6229(e) ......................................................................................................2

## REGULATIONS

Assumption of Partner Liabilities, 68 Fed. Reg. 37434 (June 24, 2003) ..........10, 12

Treas. Reg. § 1.704-1(b) ...............................................................................5

Treas. Reg. § 1.704-1(b)(2)(iv)..................................................................5, 6, 12

Treas. Reg. § 1.704-1(b)(2)(iv)(b) .........................................................11, 12, 13

Treas. Reg. § 1.704-1(b)(2)(iv)(b)(2) ...............................................................12, 13

Treas. Reg. § 1.704-1(b)(2)(iv)(b)(5) ....................................................................13

Treas. Reg. § 1.704-1(b)(2)(iv)(c) ...................................................................12, 13

Treas. Reg. § 1.704-1(b)(2)(iv)(c)(1)................................................................12, 13

Treas. Reg. § 1.704-1(d)(3) ...................................................................................11

Treas. Reg. § 1.705-1(a)(1)................................................................................2, 7

Treas. Reg. § 1.741-1(a) .........................................................................................4

Treas. Reg. § 1.752-1(a)(4) ...................................................................................10

Treas. Reg. § 1.752-1(a)(4)(ii) ...............................................................................10

Treas. Reg. § 1.752-6 ...........................................................................................10

Treas. Reg. § 1.752-7 ......................................................................................10, 12

## OTHER AUTHORITIES

1 WILLIAM S. MCKEE ET AL., FEDERAL TAXATION OF PARTNERSHIPS AND
    PARTNERS (4th ed. 2007)............................................................................11, 14

2000 I.R.S. Non Docketed Service Advice Review 10989, 2000 WL
    34440769 (Mar. 6, 2000) ...............................................................................7

T.D. 9207, 2005-1 C.B. 1344, 70 Fed. Reg. 20334 (May 26, 2005)......................13

## STATEMENT OF AMICUS CURIAE

West Ventures, L.P. ("West Ventures") has authority to file this brief pursuant to this Court's Order of April 4, 2013, granting West Ventures' Motion for Leave to Participate as Amicus Curiae.

## SUMMARY OF ARGUMENT

The Tax Court erred in holding that "the Gaughfs treated partnership items of Gaughf Properties on their personal return in a manner which was inconsistent with their treatment on the Gaughf Properties 1999 return." (JA1626.) That the Gaughfs did not reduce their "outside" tax basis[1] in Gaughf Properties by the amount paid for the short option is not, contrary to the finding of the Tax Court, "inconsistent with the netting of the currency options used by Gaughf Properties in determining and reporting the capital contributions it received from its partners." (*See id.*)

Outside basis and a partner's capital account serve different purposes and are computed according to two different sets of rules under the Internal Revenue Code and Treasury regulations.[2] Capital is not a component of outside basis, as outside basis is required to be computed "without regard" to how capital is computed. *See*

---

[1] A partner's tax basis in his or her partnership interest is often referred to as "outside basis."

[2] All references to "Section" or "Code" are to the Internal Revenue Code of 1986, as amended.

Treas. Reg. § 1.705-1(a)(1).  Moreover, the contingent obligation to settle the short

option that is at issue in this case was *required* to be treated differently under these

two different sets of rules.  The Tax Court therefore erred in relying on the

unremarkable fact that the Gaughfs and Gaughf Properties treated the short option

"differently" for purposes of the two different computations to find an

inconsistency within the meaning of Section 6222 (which would have satisfied one

of the requirements for the extended statute of limitations in Section 6229(e) to

apply).

## ARGUMENT

## THE GAUGHFS' COMPUTATION OF OUTSIDE BASIS WAS NOT "INCONSISTENT" WITH GAUGHF PROPERTIES' COMPUTATION OF CAPITAL.

The Tax Court found that the Gaughfs' treatment of the short option for

purposes of computing their outside basis was inconsistent with how Gaughf

Properties treated the short option for purposes of computing capital, explaining as

follows:

> Gaughf Properties netted the amounts of the stated premiums
> for the two currency options in reporting the value of the capital
> contributions on its return. However, Bodacious (and hence, the
> Gaughfs) treated only the long option as a capital contribution to
> Gaughf Properties for purposes of determining the basis in the 7,500
> Quanta shares distributed to Bodacious upon the liquidation of
> Gaughf Properties. This resulted in an incorrect overstatement of
> Bodacious's basis in the Quanta stock which was not accounted for on
> Gaughf Properties' 1999 return. When Bodacious subsequently sold
> the stock, the result was a claimed capital loss of $119,919 instead of

2

a capital gain of approximately $4.3 million which would have resulted had the basis not been overstated.

In addition to the inconsistent treatment by Bodacious, the Gaughfs also directly treated partnership items inconsistently from the way they were reported on the Gaughf Properties 1999 return. A section 351 statement was included with the Gaughfs' 1999 tax return which claimed that Mr. Gaughf had a tax basis in Gaughf Properties of $4,513,528. This figure included Mr. Gaughf's accounting for the contribution of the long option to Gaughf Properties (contributed by Gaughf Enterprises, a disregarded entity) without accounting for the contribution of the short option (also contributed by Gaughf Enterprises). This was inconsistent with the netting of the currency options used by Gaughf Properties in determining and reporting the capital contributions it received from its partners.

For the foregoing reasons, we find that the Gaughfs treated partnership items of Gaughf Properties on their personal return in a manner which was inconsistent with their treatment on the Gaughf Properties 1999 return.

(JA1625-26.)

The Tax Court erred because the fact that the Gaughfs did not reduce their outside basis in Gaughf Properties by the contingent obligation to settle the short option is not inconsistent with Gaughf Properties' netting the long and short option for purposes of computing its partners' capital accounts.

3

     1.    *Outside Basis and Capital Accounts Serve Different Purposes.*

A partner's outside basis is used to determine gain or loss recognized by the partner in connection with sales or exchanges of the partner's partnership interest. *See* Section 741 ("In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner."); Treas. Reg. § 1.741-1(a) ("The sale or exchange of an interest in the partnership shall. . . be treated as the sale or exchange of a capital asset, resulting in capital gain or loss measured by the difference between the amount realized and the adjusted basis of the partnership interest, as determined under section 705.")  For example, if a partner with an outside basis of $40 were to sell her partnership interest for $100, the partner would recognize a $60 gain (*i.e.*, $100 amount realized, over $40 outside basis, equals $60 gain).

A partner's outside basis is also used to determine gain or loss recognized by the partner as a result of partnership distributions.  *See*, *e.g.*, Section 731(a)(1) (providing that a partner recognizes gain upon the receipt of a partnership distribution of money to the extent the distribution exceeds the partner's outside basis).  For example, if the same partner with an outside basis of $40 were to receive from the partnership a distribution of $100, the partner would recognize a $60 gain (*i.e.*, $100 distribution, over $40 outside basis, equals $60 gain).

Another purpose of outside basis is to constrain the amount of losses that a partner may deduct from a partnership. A partner's share of losses reduces her outside basis, but once outside basis is reduced to zero, the partner may not deduct any additional losses and such losses are suspended until outside basis is increased. *See* Section 705(a)(2).

In contrast to a partner's outside basis, partnerships use capital accounts to determine the economic effect of a partner's allocable share of the partnership's profits and losses. To explain, an entity classified as a partnership for federal income tax purposes is not subject to federal income tax; rather, the partnership allocates its profits and losses to the partners who are then taxed at the partner level. *See* Sections 701, 702, 703 and 704. Allocations of profits and losses agreed to by the partners must have substantial economic effect in order to be respected for federal income tax purposes. *See* Section 704(b).

Treas. Reg. § 1.704-1(b) sets forth safe harbors under which allocations will be considered to have economic effect. Under these safe harbors, the agreement of the partners must provide, *inter alia,* for the determination and maintenance of capital accounts in accordance with Treas. Reg. § 1.704-1(b)(2)(iv). Most partnerships adhere to the capital account maintenance rule to ensure that allocations of profits and losses will be considered to have economic effect so that,

5

if they meet certain other requirements, they will be respected for federal income tax purposes.

In summary, a partner's outside basis is used in determining gain or loss recognized by the partner in connection with sales or exchanges of partnership interests and partnership distributions and the extent to which the partner may deduct partnership losses, whereas a partner's capital account is an accounting mechanism used by the partnership to determine the economic effect of a partner's allocable share of profits and losses.

     *2.*      *Outside Basis and Capital Accounts Are Computed Differently.*

As observed by the Supreme Court, tax and accounting rules often diverge. *See Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 541 (1979); *Lucas v. American Code Co.*, 280 U.S. 445, 449 (1930). This divergence is exemplified by differences in the rules that a partner must follow in computing his outside basis and the rules that a partnership must follow in computing the partner's capital account. *Compare* the rules relevant to computing tax basis under Sections 705, 722, 733, 742, and 752, *with* the capital account maintenance rules of Treas. Reg. § 1.704-1(b)(2)(iv).

While certain elements of a partner's outside basis and capital account may be the same (*e.g.*, positive adjustments are made for capital contributions and negative adjustments are made for distributions), the way these elements are

6

reflected in the partner's outside basis and capital account are often different.  In

fact, respondent's own regulations provide explicitly that the outside basis

computation is made without regard to a partner's capital account:

> The adjusted basis of a partner's interest in a partnership
> is determined without regard to any amount shown in the
> partnership books as the partner's "capital", "equity", or
> similar account. For example, A contributes property
> with an adjusted basis to him of $400 (and a value of
> $1,000) to a partnership. B contributes $1,000 cash.
> While under their agreement each may have a "capital
> account" in the partnership of $1,000, the adjusted basis
> of A's interest is only $400 and B's interest $1,000.

Treas. Reg. § 1.705-1(a)(1).  *See also* 2000 I.R.S. Non Docketed Service Advice

Review 10989, 2000 WL 34440769 (Mar. 6, 2000) (A "capital account is not a

component of outside basis.").  The Tax Court was simply wrong, then, in finding

an inconsistency in the fact that "Bodacious (and hence, the Gaughfs) treated only

the long option as a capital contribution to Gaughf Properties for purposes of

determining basis. . . ."  (JA1625.)  Contrary to the Tax Court's apparent

assumption, a partner's capital account is not a starting point or component for

computing outside basis; rather, outside basis is determined "without regard" to the

capital account.

Section 6222(a) provides that a "partner shall, on the partner's return, treat a

partnership item in a manner which is consistent with the treatment of such

partnership item on the partnership return."  There is no rationale for requiring a

7

partner to report her outside basis "consistently" with the partnership's capital

account determinations, however, when the tax law requires the partner to

determine her outside basis "without regard" to the partnership's capital positions.

To hold otherwise would require partners to determine their outside bases "with

regard" to the partnership's computation of capital in flat disregard of the

governing Treasury regulations.  The decision of the Tax Court should be reversed

for that reason.

> 3.    *Contingent Obligations Are Treated Differently for Purposes of Outside Basis and Capital Accounts.*

There is another reason that the Tax Court erred in concluding that the

Gaughfs and Gaughf Properties should have "treated" the obligation to cover the

short option the same way for purposes of computing outside basis and capital,

respectively.  That is because outside basis and capital accounts are governed by

different provisions under the Code, and those different provisions required the

Gaughfs and Gaughf Properties to treat the contingent obligation to cover the short

option differently.

The treatment of liabilities for purposes of determining outside basis is

governed by Section 752.  That section provides that any increase in a partner's

share of partnership liabilities shall be treated as though the partner contributed

money to the partnership, thus increasing outside basis.  *See* Section 752(a).

Similarly, a partner's assumption of a liability from a partnership is also treated as

8

though the partner contributed money to the partnership, increasing outside basis. *See* Section 752(a). Decreases in a partner's share of partnership liabilities, or decreases in a partner's individual liabilities that are caused by the partnership's assumption of such liabilities, have the opposite effect. *See* Section 752(b).

Prior to 2003, and during the period at issue here, it was well settled that "contingent obligations", like the potential obligation to pay out some amount on the short option at issue here, were not "liabilities" within the meaning of Section 752. *See, e.g.*, *La Rue v. Comm'r*, 90 T.C. 465 (1988); *Long v. Comm'r*, 71 T.C. 1 (1978), *mot. for recons.*, 71 T.C. 724 (1979), *aff'd and remanded*, 660 F.2d 416 (10th Cir. 1981); *Helmer v. Comm'r*, 34 T.C.M (CCH) 727 (1975).[3] Thus, under Section 752, the transfer to a partnership of such a contingent obligation did not affect the partner's outside basis.

On June 24, 2003, the Treasury promulgated new regulations under Section 752 that expanded the definition of the term "liability" to now include what was previously excluded: "any . . . *contingent obligation* to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Code. Obligations include, but are not limited to, debt obligations, environmental

_____

[3] In each of these cases, the Commissioner successfully argued that a taxpayer could not increase his outside basis by the amount of a contingent obligation. The result (among other things) was to limit the amount of partnership losses that the taxpayers could deduct. *See* Section 705(a)(2).

obligations . . . and obligations under derivative financial instruments *such as options* . . . ." *See* Assumption of Partner Liabilities, 68 Fed. Reg. 37434, 37436, (June 24, 2003) (emphasis added).[4]  The preamble to the new regulations specifically acknowledged that the "definition of a liability contained in these proposed regulations" did not follow prior law.  *Id*.  The proposed regulation was adopted on May 26, 2005.  *See* Treas. Reg. § 1.752-1(a)(4)(ii).[5]

On the other hand, the determination of the effect of liabilities on a partner's capital account is made under Section 704 and the Treasury regulations

---

[4] At the same time, the Treasury promulgated a new Treas. Reg. § 1.752-6 and sought to apply it retroactively.  Whether that regulation is valid and can be retroactively applied is open to question.  *See, e.g.*, *Klamath Strategic Inv. Fund, LLC v. United States*, 440 F.Supp.2d 608 (E.D. Tex. 2006), *aff'd in part, vacated in part, and remanded by* 568 F.3d 537 (5th Cir. 2009) (holding regulation could not be retroactively applied).  If the regulation were retroactively applicable in this case, it would require the Gaughfs to account for the contingent obligation in computing their outside basis.  We have not further addressed Treas. Reg. § 1.752-6 because the issue here is not whether the Gaughfs' computation of outside basis was correct.  Rather, the issue is whether the Gaughfs' computation of outside basis was inconsistent with Gaughf Properties' capital account determinations.

[5] Technically, the new rules treat "obligations" (now including contingent obligations) as "liabilities" for purposes of Section 752 only to the extent that the obligation creates or increases the basis of any of the obligor's assets (including cash), gives rise to an immediate deduction, or gives rise to an expense that is not deductible in computing the obligor's taxable income and is not properly chargeable to capital.  *See* Treas. Reg. § 1.752-1(a)(4).  Obligations that do not meet any of the latter criteria (which will include most contingent obligations) are addressed in new Treas. Reg. § 1.752-7, which applies to any "obligation" that is not treated as a "liability" for purposes of Section 752.  A contingent obligation to cover a short option would be a "Treas. Reg. § 1.752-7 liability" under the new rules.

10

promulgated under that Section. Those rules require that contributed property be

reflected in the partners' capital accounts at fair market value (not tax basis). *See*

Treas. Reg. §§ 1.704-1(b)(2)(iv)(b) and (d)(3). The capital account rules therefore

applied to a broader class of liabilities than Section 752 applied to (during the

period in question), so that they applied to contingent obligations that were not

subject to Section 752. The leading treatise on partnership taxation explains the

difference in how contingent obligations are treated for purposes of computing

basis and capital:

> For example, where real property is burdened by a contingent
> obligation to remediate an adverse environmental condition, the
> obligation is real and affects the value of the property. However,
> because it is contingent, incurring the obligation does not add to the
> basis of the property, result in a deduction, or result in a noncapital,
> nondeductible expenditure. Accordingly, the obligation is not a
> "liability" under Regulations § 1.752-1(a)(4)(i). Instead, the owner
> will deduct or capitalize payments to defray the obligation when such
> payments become fixed and are paid. Nevertheless, as noted above,
> the amount that a willing buyer would pay for the property will be
> decreased by the estimated present value of the remediation
> obligation.

1 WILLIAM S. McKEE ET AL., FEDERAL TAXATION OF PARTNERSHIPS AND PARTNERS

7-20 (4th ed. 2007). Thus, for purposes of maintaining capital accounts,

partnerships look to the fair market value of contributed property, which takes into

account contingent obligations that were (prior to June 23, 2003) excluded from tax basis.[6]

To explain in more detail, the Treasury regulations under Section 704 implicitly defined "liability" for capital account maintenance purposes to include all liabilities regardless of whether they would be taken into account for basis determination purposes under section 752.  Treas. Reg. § 1.704-1(b)(2)(iv)(b)(2) provided that a partner's capital account was increased by the fair market value of the property contributed by the partner to the partnership (net of liabilities secured by the contributed property that the partnership was considered to assume or take subject to under section 752).  Treas. Reg. § 1.704-1(b)(2)(iv)(c), on the other hand, applied to all liability assumptions between a partner and the partnership to which Treas. Reg. § 1.704-1(b)(2)(iv)(b) did not apply.  Specifically, Treas. Reg. §

---

[6] The Treasury explained this when it proposed and finalized changes to Treas. Reg. § 1.704-1(b)(2)(iv) at the same time it proposed and changed the regulations under Section 752.  When it proposed these changes in 2003, Treasury explained that "section 704(c) principles shall apply to a § 1.752-7 liability assumed by a partnership from a partner.  . . .  The amount of the § 1.752-7 liability is the amount that a willing assignor would pay to a willing assignee to assume the § 1.752-7 liability in an arm's-length transaction."  68 Fed. Reg. 37434, 37436. As explained in note 3, supra, the contingent obligation to pay out on an option would be a "§ 1.752-7 liability" under the new rules.  This makes clear that partnerships were required to take contingent obligations into account in computing capital by determining the fair market value of the contributed property (which would be reduced by the fair market "value" of any contingent obligation).  The new Treas. Reg. § 1.752-7 now requires taxpayers to apply "section 704(c) principles" to compute basis (for certain purposes) by calculating the amount of the contingent obligation that is the "§ 1.752-7 liability" using fair market value concepts.

12

1.704-1(b)(2)(iv)(c)(1) treated a partner's assumption of a partnership liability (other than a liability described in Treas. Reg. § 1.704-1(b)(2)(iv)(b)(5)) as a deemed contribution by the partner to the partnership resulting in an increase in the partner's capital account.  Similarly, Treas. Reg. § 1.704-1(b)(2)(iv)(c)(1) treated the partnership's assumption of a partner's liability (other than a liability described in Treas. Reg. § 1.704-1(b)(2)(iv)(b)(2)) as a distribution to the partner, resulting in a downward adjustment to the partner's capital account.  Thus, Treas. Reg. §§ 1.704-1(b)(2)(iv)(b) and (c) operated in tandem to apply to all liabilities, including contingent obligations that were not treated as liabilities for purposes of Section 752.[7]

A simple example illustrates the difference in treatment of a contingent obligation in computing capital and basis.  Continuing with the remediation theme, assume A buys real property for $1,000 on Day One.  On Day Two, the EPA notifies A that it has located hazardous materials on the property.  The amount that a willing assignor would pay to a willing assignee to assume the contingent

---

[7] When the rules were finalized in 2005, the Treasury eliminated from Treas. Reg. § 1.704-1(b)(2)(iv)(b)(2) the reference to section 752 and the requirement that the liability be "secured by" the contributed property, thus making that regulation applicable to all "liabilities".  *See* T.D. 9207, 2005-1 C.B. 1344, 70 Fed. Reg. 20334 (May 26, 2005).  The preamble to the final regulation states that it was unnecessary for any changes to be made to Treas. Reg. § 1.704-1(b)(2)(iv)(c) because that section already applied to non-section 752 liabilities.  *See id.* ("The proposed regulations did not revise § 1.704-1(b)(2)(iv)(c), because that section is not limited to assumptions of liabilities described in section 752.").

liability to pay remediation costs in an arm's length transaction is $300. On Day

Three, A contributes the property to Partnership for a 50% interest. The fair

market value of the property (which takes into account the contingent obligation to

pay remediation costs) is $700. B and C each contribute $350 for a 25% interest

each. As a result of these contributions, A will have a capital account of $700 and

a basis in his partnership interest of $1,000. B and C will each have an interest

with a basis and a capital account of $350.[8]

The contingent obligation to remediate the property, like the contingent

obligation to pay out on an option, is treated differently for purposes of basis and

capital because those rules serve different purposes. The government has an

obvious interest in precluding taxpayers from increasing basis (thus allowing for

the deduction of more losses) by contributing contingent obligations to a

partnership. Yet, as an economic matter, partnership allocations must account for

such obligations in determining the partners' share of partnership gains and losses

(e.g., B and C in the above example would suffer an economic detriment if A were

given a capital account of $1,000).

The Tax Court therefore erred in concluding that the Gaughfs and Gaughf

Properties should have treated the contingent obligation to pay out on the short

---

[8] We also adopted this example from, 1 WILLIAM S. MCKEE ET AL., FEDERAL TAXATION OF PARTNERSHIPS AND PARTNERS 11-80 (4th ed. 2007).

option the same way for purposes of computing outside basis and capital, respectively. Gaughf Properties was required to treat the short option as a liability for purposes of the capital account rules, and it appropriately decreased the Gaughf's capital account by its estimate of the contingent liability. At the same time, the Gaughfs determined that the short option was not a liability for purposes of computing their outside basis, not because they "treated" the option differently than did the partnership, but because of the different definition of liability that applied for purposes of Section 752.[9] Accordingly, the Gaughfs' did not treat a Gaughf Properties partnership item inconsistently with how Gaughf Properties treated it.

## **CONCLUSION**

The Judgment of the Tax Court with respect to this issue should be reversed for the reasons stated herein.

---

[9] Whether that interpretation was correct is not at issue here; what is at issue is whether that treatment is inconsistent with how Gaughf Properties treated the short option for purposes of an entirely different set of rules and definition of "liability".

\* \* \* \* \* \*

In compliance with Fed. R. App. P. 29(c)(5), amicus curiae states that: (1) no party's counsel authored this brief, in whole or in part; (2) no party contributed money that was intended to fund preparing or submitting this brief; and (3) no person—other than amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting this brief.

Dated:  April 24, 2013          Respectfully submitted,

/s/ Thomas A. Cullinan
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996
Telephone: (404) 853-8075
Facsimile:  (404) 853-8806
tom.cullinan@sutherland.com

N. Jerold Cohen
William E. Sheumaker
SUTHERLAND ASBILL & BRENNAN LLP
999 Peachtree Street, NE
Atlanta, GA 30309-3996
Telephone: (404) 853-8000
Facsimile:  (404) 853-8806
wes.sheumaker@sutherland.com

*Counsel for Amicus Curiae West Ventures, L.P.*

17

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(d).  This brief contains 3,748 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B).


/s/ Thomas A. Cullinan
Thomas A. Cullinan
*Counsel for Amicus Curiae West Ventures, L.P.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Thomas A. Cullinan
Thomas A. Cullinan
*Counsel for Amicus Curiae West Ventures, L.P.*