## No. 13-1026

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———————————

**GAUGHF PROPERTIES, L.P., BALAZS
VENTURES, LLC, a partner other than the
Tax Matters Partner,**

**Appellant**

**v.**

**COMMISSIONER OF INTERNAL REVENUE
SERVICE,**

**Appellee**

———————————

**ON APPEAL FROM THE ORDER
OF THE UNITED STATES TAX COURT**

———————————

**BRIEF FOR THE APPELLEE**

———————————

**KATHRYN KENEALLY**
  *Assistant Attorney General*

**TAMARA W. ASHFORD**
  *Principal Deputy Assistant Attorney General*

**GILBERT S. ROTHENBERG**     **(202) 514-3361**
**MICHAEL J. HAUNGS**     **(202) 514-4343**
**IVAN C. DALE**     **(202) 307-6615**
  *Attorneys*
  *Tax Division*
  *Department of Justice*
  *Post Office Box 502*
  *Washington, D.C. 20044*

- i -

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

(A) *Parties and Amici*

The following parties appeared before the Tax Court and in this Court:

> Gaughf Properties, L.P.
>
> Balazs Ventures, LLC, a partner other than the Tax Matters Partner
>
> Commissioner of Internal Revenue

In addition, Gaughf Enterprises, LLC was listed as a partner in Gaughf Properties, L.P.,  Balazs Ventures, LLC and Gaughf Enterprises, LLC were disregarded entities for federal tax purposes.  Balazs Ventures, LLC and Gaughf Enterprises, LLC are wholly owned by Nan Gaughf and Andrew Gaughf, Jr., respectively.

West Ventures, L.P., was granted leave to participate as *amicus curiae* in this Court.

(B) *Rulings under Review*

The ruling under review is an interlocutory order of the United States Tax Court entered on September 10, 2012 (JA1658), pursuant to an opinion by Judge Goeke (JA1596) reported at 139 T.C. No. 7.

10109128.1

- ii -

(C) *Related cases*

This case was not previously before this Court or any other

appellate court.  On page 48 of its opening brief, appellant Gaughf

Properties, L.P. argues that a case pending before this Court –

*Petaluma FX Partners, LLC. v. Commissioner*, No. 12-1364 (Tax Court

No. 24717-05) – presents an issue that bears upon the outcome of this

appeal.  Although the Government submits that the result in *Petaluma*

*FX* does not impact this appeal, we mention the case (which previously

was appealed to this Court and remanded at 591 F.3d 649 (D.C. Cir.

2010) and at 109 A.F.T.R.2d (RIA) 2238 (D.C. Cir. Feb. 27, 2012)) in the

interest of completeness.  We also note that the case of *Logan Trust v.*

*Commissioner (Tigers Eye Trading, LLC)*, No. 12-1148 (D.C. Cir.),

presents issues similar to those in *Petaluma FX*, and that each case

involves the same type of tax shelter (Son-of-BOSS) as the one utilized

in this case.  We are not aware of any other related cases currently

pending before this Court or in any other court.

- iii -

# TABLE OF CONTENTS

**Page(s)**

Certificate as to parties, rulings, and related cases . . . . . . . . . . . . . . . i

Table of contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

Jurisdictional statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statutes and regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of the case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement of the facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

> 1. Andrew Gaughf hires Jenkens & Gilchrist "to set up a tax advantage" on the sale of his stock . . . . . . . . . . . . . . . . . 9
>
> 2. The formation of Gaughf LP and three other shell entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
>
> 3. The currency option transaction and the sale of Quanta stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
>
> 4. The reporting of the currency-option and stock-sale transactions on the 1999 tax returns of the Gaughfs and their entities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
>
> 5. The IRS investigation of Jenkens & Gilchrist . . . . . . . . . 22
>
> 6. The IRS investigation of the Gaughfs and their entities, and the issuance of the FPAA for Gaughf LP . . . . 25
>
> 7. The Tax Court proceedings . . . . . . . . . . . . . . . . . . . . . . . . . 29

- iv -

**Page(s)**

Summary of argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    The Tax Court correctly held that the period for assessing a
tax attributable to partnership items or affected items of
Gaughf LP had not expired pursuant to I.R.C. § 6229(e) . . . . . . 37

    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    A.    An overview of the relevant TEFRA concepts and
procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

    B.    The Gaughfs were partners in Gaughf LP, and their
names, addresses and TINs were not furnished in
Gaughf LP's 1999 return . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    C.    The Gaughfs failed to comply with I.R.C. § 6222(b),
relating to notification of inconsistent treatment with
respect to partnership items on Gaughf LP's 1999
return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

    D.    The names, addresses, and TINs of the Gaughfs, as
partners in Gaughf LP, were not "furnished to the
Secretary" within the meaning of I.R.C. § 6229(e)
before May 10, 2005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Certificate of compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

Certificate of service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Addendum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

10109128.1

- v -

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*Badaracco v. Commissioner,*
    464 U.S. 386 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Bemont Investments, LLC v. United States,*
    679 F.3d 339 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 70

*Callaway v. Commissioner,*
    231 F.3d 106 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Cemco Investors, LLC v. United States,*
    515 F.3d 749 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 53

* *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,*
    467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 33, 47, 62

* *Costello v. United States,*
    765 F. Supp. 1003 (C.D. Cal. 1991) . . . . . . . . . . . . . . . . 46, 66

*Dionne v. Commissioner,*
    T.C. Memo. 1993-117, 1993 WL 87719 (1993) . . . . . . . . . 46

*E.I. Du Pont de Nemours & Co. v. Davis,*
    264 U.S. 456 (1924) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Household Credit Services, Inc. v. Pfennig,*
    541 U.S. 232 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*International Strategic Partners, LLC v. Commissioner,*
    455 Fed. Appx. 91, 2102 WL 147890
    (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66, 71, 73

*Jade Trading, LLC v. United States,*
    598 F.3d 1372 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 5

*Jaffe v. Commissioner,*
    T.C. Memo. 2004-112, 2004 WL 1118299 (2004) . . . . . . . . 66

*Jombo v. Commissioner,*
    398 F.3d 661 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 37

*Kearney Partners Fund, LLC v. United States,*
    2013 WL 1232612 (M.D. Fla. Mar. 27, 2013) . . . . . . . . 66, 71

* Authorities upon which we chiefly rely are marked with asterisks.

10109128.1

- vi -

**Cases (cont'd):**                                               **Page(s)**

*Kornman & Associates, Inc. v. United States,*
    527 F.3d 443 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lucia v. United States,*
    474 F.2d 565 (5th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . 45

*Maguire Partners-Master Investments, LLC v. United States,*
    2009 WL 4907033 (C.D. Cal. 2009) . . . . . . . . . . . . . . . . . . . . 53

*Mayo Foundation for Medical Education and Research*
*v. United States,*
    131 S. Ct. 704 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Napoliello v. Commissioner,*
    655 F.3d 1060 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 5

*Petaluma FX Partners, LLC v. Commissioner,*
    591 F.3d 649 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . 5, 56

*Sente Inv. Club Partnership of Utah v. Commissioner,*
    95 T.C. 243 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Triangle Investors Ltd. Partnership v. Commissioner,*
    95 T.C. 610 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*United States v. Basye,*
    410 U.S. 441 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Home Concrete & Supply, LLC,*
    132 S. Ct. 1836 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Van Smith,*
    530 F.3d 967 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 8

*Utah Bioresearch 1984, Ltd., v. Commissioner,*
    1989 WL 135403 (1989) . . . . . . . . . . . . . . . . . . . . . . . . 68, 73

* *Walthall v. United States,*
    131 F.3d 1289 (9th Cir. 1997) . . . . . . . . . . . . . 46, 61, 66, 71

*Walthall v. United States,*
    911 F. Supp. 1275 (D. Alaska 1995) . . . . . . . . . . . . . . . . . 46

\* Authorities upon which we chiefly rely are marked with asterisks.

- vii -

**Statutes:**                                                    **Page(s)**

Internal Revenue Code (26 U.S.C.):

§ 701-704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
§ 722 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
§ 723 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55, 57
§ 732(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
§ 1363 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
§ 1366 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
§ 6031 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
§ 6222(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
* § 6222(b) . . . . . . . . . . . . . . . . 4, 30, 31, 33, 39, 43, 50, 55, 59
§ 6223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
§ 6223(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 40, 65
§ 6223(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 40, 68
§ 6225(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
§ 6226(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6226(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 6229 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7, 28, 41
§ 6229(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
§ 6229(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
§ 6229(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
* § 6229(e) . . . 4, 7-8, 29-35, 42-50, 55, 60-61, 64-65, 68-69, 72
§ 6229(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47-48, 68
§ 6229(e)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
§ 6230(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64, 72
§ 6231(a)(2)(B) . . . . . . . . . . . . . . . . . . . 34, 38-39, 42, 46-48
§ 6501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 41, 70
§ 6700 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
§ 7482(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 7482(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
§ 7482(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

* Authorities upon which we chiefly rely are marked with asterisks.

10109128.1

- viii -

**Statutes (cont'd):**                                                    **Page(s)**

§ 7503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 7701(a)(11)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
§ 7701(a)(12)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62-63
§ 7805(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

**Miscellaneous**:

52 Fed. Reg. 6789 (Mar. 5, 1987) . . . . . . . . . . . . . 31-32, 39, 41, 46
H.R. Conf. Rep. No. 97-760, at 599-600 (1982) . . . . . . . . . . . . . . 38
Merriam-Webster's Collegiate Dictionary . . . . . . . . . . . . . . . 61, 63
Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"),
Pub. L. No. 97-248, 96 Stat. 324 . . . . . . . . . . . . . . . . . . . . . . . . . 38

**Treasury Regulations**:

§ 1.6031-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 48
§ 1.6037-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 59
§ 1.701-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
§ 1.752-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53-54
§ 301.6109-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68
§ 301.6222(b)-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
§ 301.6223(c)-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
* § 301.6223(c)-1T . . . . . . . . . . . . . . . . . . . . . . . 41, 60, 63, 68-73
* § 301.6229(e)-1T . . . . . . . . . . . . . . . . . . . . . . . 46-48, 60, 62-63
§ 301.6231(a)(3)-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . 38, 56-57
§ 301.7701-3(b)(1)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

* Authorities upon which we chiefly rely are marked with asterisks.

10109128.1

- ix -

# GLOSSARY

| | |
|---|---|
| Amicus Br. | Brief of West Ventures, L.P. as amicus curiae |
| Br. | Appellant's opening brief |
| Doc. | Document under the indicated Tax Court docket number, as numbered by the Clerk of the Tax Court |
| FPAA | Notice of Final Partnership Administrative Adjustment |
| I.R.C. or Code | Internal Revenue Code of 1986 (26 U.S.C.) |
| I.R.M. | Internal Revenue Manual |
| IRS | Internal Revenue Service |
| JA | Joint Appendix |
| J&G | Jenkens & Gilchrist |
| Op. | Tax Court's slip opinion, reported at 139 T.C. No. 7. |
| Quanta | Quanta Services, Inc. |
| TEFRA | Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, 96 Stat. 324 |
| TIN | Taxpayer Identification Number |
| TMP | Tax Matters Partner |
| Treas. Reg. | Treasury Regulations (26 C.F.R.) |

10109128.1

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 13-1026

GAUGHF PROPERTIES, L.P., BALAZS VENTURES, LLC,
a partner other than the Tax Matters Partner,

Appellant

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,

Appellee

_____

ON APPEAL FROM THE ORDER
OF THE UNITED STATES TAX COURT

_____

BRIEF FOR THE APPELLEE

_____

## JURISDICTIONAL STATEMENT

On March 30, 2007, the Commissioner of Internal Revenue issued
a Notice of Final Partnership Administrative Adjustment ("FPAA")
(JA1289, 1300),[1] making adjustments to partnership items with respect
to the return of Gaughf Properties, L.P. ("Gaughf LP") for the taxable

---

[1] "JA" references are to pages of the joint appendix, filed on April
17, 2013.

- 2 -

year ending on December 27, 1999. Gaughf LP's Tax Matters Partner ("TMP"), Gaughf Enterprises, LLC (JA0002, JA0021), did not file a readjustment petition within 90 days of the mailing of the FPAA. Balazs Ventures, LLC, in its capacity as a notice partner (JA0010; *see* I.R.C. § 6223(a)) other than the TMP, filed a petition for readjustment of partnership items with the Tax Court on August 15, 2007 (JA0001). The petition was timely, *see* I.R.C. § 6226(b)(1), and the Tax Court had jurisdiction pursuant to I.R.C. §§ 6226(a) and (f).

The Tax Court held a trial on whether the statutory period for assessing tax attributable to partnership items of Gaughf LP remained open with respect to the ultimate owners of Gaughf LP, Andrew and Nan Gaughf, while deferring consideration of the merits of the adjustments contained in the FPAA to a later date. (JA0418, JA0450-51, JA1598.) On September 10, 2012, the Tax Court entered an opinion (JA1596) and order (JA1658) holding that the statutory period for assessing tax attributable to partnership items of Gaughf LP remained open, under I.R.C. § 6229, with respect to the Gaughfs. On November 8, 2012, the Tax Court revised its order, on petitioner's motion (JA1660), to

10109128.1

- 3 -

include a statement that the case involves a controlling question of law with respect to which there is a substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of this litigation (Doc. 115).[2]  *See* I.R.C. § 7482(a)(2).  On November 19, 2012, petitioner timely applied to this Court for leave to appeal the Tax Court's order.[3]  On February 1, 2013, this Court, in its discretion, granted the application for interlocutory appeal.  This Court has jurisdiction under I.R.C. § 7482(a).

## STATEMENT OF THE ISSUE

Whether the Tax Court correctly held that the period for assessing a tax attributable to any partnership item (or affected item) of Gaughf

---

[2] "Doc." references are to the entries on the docket of the Tax Court (Docket No. 18298-07), as numbered by the Clerk of the Tax Court and transmitted to this Court.

[3] I.R.C. § 7482(a)(2) requires that an application to appeal an order of the Tax Court that has been certified for interloctory appeal be made within 10 days of the entry of said order.  Although the tenth day after entry of the order certifying the Tax Court's interlocutory order for immediate appeal fell on Sunday, November 18, 2012, the petitioner's application filed the following day was nonetheless timely pursuant to I.R.C. § 7503.

10109128.1

- 4 -

LP for the taxable year ending on December 27, 1999, has not expired

pursuant to I.R.C. §§ 6229(e), and in particular:

1.    Whether the name, address, or taxpayer identification

number (TIN) of a partner was not furnished on Gaughf LP's 1999

return;

2.    Whether a partner not identified on Gaughf LP's 1999 return

failed to comply with I.R.C. § 6222(b), relating to notification of

inconsistent treatment with respect to any partnership item on Gaughf

LP's 1999 return; and

3.    Whether the name, address, and TIN of such partner were

"furnished to the Secretary," under applicable law, before May 10, 2005,

the date which is one year prior to the date on which the Gaughfs and

the IRS agreed to extend the time for assessing the Gaughfs' 1999

income tax until after the issuance of the FPAA with respect to

partnership items of Gaughf LP.

## STATUTES AND REGULATIONS

Pertinent statutes and regulations are contained in the addendum

bound with this brief.

10109128.1

- 5 -

## STATEMENT OF THE CASE

This dispute arises from Andrew and Nan Gaughf's participation in a transaction of the type described in IRS Notice 2000-44, 2000 WL 1138430 (August 13, 2000), sometimes referred to as a "Son-of-BOSS" tax shelter, *see Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649, 650 (D.C. Cir. 2010); *Napoliello v. Commissioner*, 655 F.3d 1060, 1062 (9th Cir. 2011), in order to avoid capital gains tax on the sale of Mr. Gaughf's stock in Quanta Services, Inc. in late 1999 (JA1197, JA1897). In a manner "reminiscent of an alchemist's attempt to transmute lead into gold," *Kornman & Associates, Inc. v. United States*, 527 F.3d 443, 456 (5th Cir. 2008), the Son-of-BOSS currency-options variant chosen by the Gaughfs (JA0876) attempts to use offsetting "long" and "short" currency options, which are economically a wash, to create large, artificial losses for tax purposes to offset other gains, *see Jade Trading, LLC v. United States*, 598 F.3d 1372, 1374-75 (Fed. Cir. 2010).  In such a transaction, the partner generally contributes both the "long" and "short" options to a partnership (JA1011-13, JA1154), which then reports both as contributions (or, in the case of Gaughf LP, reports only

- 6 -

the offsetting net value of the options as contributions) (JA0615-16), while the partner reports only the "long" currency option as a contribution on his individual return (JA0582, JA0878).[4]

In March, 2007, the IRS issued an FPAA to Gaughf LP determining, *inter alia*, (1) that Gaughf LP was not a *bona fide* partnership, (2) that it was formed principally for the purpose of tax avoidance, was a sham, and lacked economic substance, (3) that the transactions in which it engaged were not done with a motive for profit, and (4) that, in any event, the amount treated as contributed by the partners from the "long" option is reduced by the amounts received by the contributing partners from the contemporaneous offsetting "short" option, and that the basis of the options in the hands of Gaughf LP and its partners is accordingly reduced.  (JA1297-98.)  Balazs Ventures, LLC, a notice partner of Gaughf LP (JA0010), filed a timely petition for

_____

[4] In other words, the partner treats the purported cost of acquiring from a bank the option to purchase foreign currency at a particular price on a particular date as a contribution to the partnership, but does not report the fact that the partnership simultaneously assumed the cost of an offsetting option to the same bank to purchase the same currency on the same date at a virtually identical price.  *See* IRS Notice 2000-44, 2000 WL 1138430.

- 7 -

readjustment of these partnership items (JA0001), contending, *inter alia*, that the FPAA was issued after the expiration of the statutory period for assessing tax attributable to partnership items of Gaughf LP (JA0002). The IRS answered by claiming that the assessment period remained open under I.R.C. § 6229, and alleging the factual basis for that claim. (JA0033-36.) The IRS later amended its answer to state, specifically, that the assessment period remained open under I.R.C. § 6229(e), because Gaughf LP did not identify the Gaughfs as indirect partners, and because the Gaughfs and Gaughf LP treated partnership items inconsistently without notifying the Secretary of the inconsistent treatment. (JA0301-04.)

Following the IRS's amended answer, petitioner was granted leave to take additional discovery with respect to the I.R.C. § 6229(e) issue (JA0316), and the matter was bifurcated for trial. (JA0418, JA0450-51, JA1598.) Nearly three months after the amended answer was lodged, on May 17 and 18, 2010, the Tax Court held a trial on whether the statutory period for assessing tax attributable to partnership items of Gaughf LP remained open with respect to the Gaughfs (and whether

10109128.1

- 8 -

the IRS should be estopped from asserting that the assessment period

remained open), while deferring consideration of the merits of the

adjustments contained in the FPAA to a later date.  (JA0418, JA0450-

51, JA1598.)  On September 10, 2012, the court entered an opinion

(JA1596) and order (JA1658) holding that the statutory period for

assessing tax attributable to partnership items of Gaughf LP remained

open, under I.R.C. § 6229(e), and that the IRS was not estopped from so

asserting.  Petitioner then filed the instant interlocutory appeal to

challenge the Tax Court's conclusions with respect to I.R.C. § 6229(e),

but not to challenge its conclusions with respect to estoppel.[5]

---

[5] Because the appellant has not, in its opening brief, challenged
the Tax Court's conclusion that the IRS was not precluded, under
estoppel principles, from asserting that the assessment period remained
open, that argument has been waived.  *United States v. Van Smith*, 530
F.3d 967, 973 (D.C. Cir. 2008).

- 9 -

## STATEMENT OF THE FACTS

### 1.    Andrew Gaughf hires Jenkens & Gilchrist "to set up a tax advantage" on the sale of his stock

Andrew Gaughf was the owner of 150,283 shares of stock in Quanta Services, Inc. ("Quanta").  (JA1482-83, JA1905.)  In April, 1999, Mr. Gaughf had an accident that forced him into early retirement. (JA1886-87.)  In late 1999, Mr. Gaughf transferred his Quanta stock from his brokerage account at Smith Barney to a brokerage account at Edward Jones, and authorized Edward Jones to sell his Quanta stock. (JA1895, JA1906.)  Had Edward Jones simply sold the stock on Mr. Gaughf's behalf, without more, Mr. Gaughf would have realized a taxable gain of somewhere between $3.88 and $4.44 million, less commissions, because the stock price of Quanta traded at between $27.75 and $31.13 per share during that period (JA1129, JA1482-83, JA1490, JA1492, JA1495), and Mr. Gaughf had a basis in the stock of between $245,185 and $290,185 (JA0467).

Instead of selling the stock outright, however, Mr. Gaughf paid a $180,000 fee to Jenkens & Gilchrist ("J&G") "to set up a tax advantage on the selling of Quanta stock."  (JA1897.)  His agreement with J&G

- 10 -

provided that he "and J&G are acting solely as independent contracting parties, and neither party shall be deemed to be the agent or fiduciary of the other." (JA0723.) J&G prepared an investor profile which advised that Mr. Gaughf "has gain in Quanta stock that has not yet been sold so it is likely that we will be doing the Section 754 step up in the partnership." (JA1197.) Donna Guerin was the attorney at J&G who dealt most directly with the Gaughfs.[6] (JA0454.) The transactions designed to give Mr. Gaughf a "tax advantage" on the sale of his stock (JA1897) are described in the following sections.

### 2. The formation of Gaughf LP and three other shell entities

The Gaughfs' attorney, Maurice Holloway, formed four entities under South Carolina law – Gaughf LP, Gaughf Enterprises, LLC,

---

[6] Donna Guerin is presently serving an eight-year prison term in connection with her work in the design, marketing, and implementation of these and similar "tax advantaged" transactions. *See* Department of Justice, *Former Jenkens & Gilchrist Attorney Sentenced In Manhattan Federal Court To Eight Years In Prison For Promoting Illegal Tax Shelters That Generated Billions Of Dollars In Fraudulent Tax Losses* (Mar. 1, 2013), available at http://www.justice.gov/usao/nys/pressreleases/ (last accessed May 29, 2013).

10109128.1

- 11 -

Balazs Ventures, LLC, and Bodacious, Inc. – and forwarded the entity formation documents to Ms. Guerin at J&G.  (JA0727-0872, JA1800.) Gaughf Enterprises, LLC was formed on September 22, 1999, as a single-member LLC of which Mr. Gaughf was the sole owner/member. (JA0002, JA0022, JA0451.)  Balazs Ventures, LLC was formed on September 22, 1999, as a single-member LLC of which Mrs. Gaughf was the sole owner/member.  (JA0002, JA0022, JA0452.)  Gaughf Enterprises, LLC and Balazs Ventures, LLC then signed a limited partnership agreement, dated September 29, 1999, identifying them as the only partners in Gaughf LP.  (JA0789.)  A certificate of limited partnership for Gaughf LP was filed with the South Carolina Secretary of State on the same date.  (JA0452-53, JA0788.)  Bodacious, Inc., was formed as a South Carolina corporation on September 30, 1999, and Mr. Gaughf was its president and sole shareholder.  (JA0453, JA0833.)  The Gaughfs each testified that they did not know what business, if any, these entities were set up to conduct.  (JA1874-75, JA1900-01, JA1909-10.)

- 12 -

On September 27 and 30, 1999, Holloway called the IRS to get the employer identification numbers for the four entities over the phone and, on September 27 and October 1, 1999, faxed IRS Forms SS-4 to confirm receipt.  (JA0520-31, JA1787, JA1796.)  Form SS-4 is an application for employer identification number; its filing was a standard part of entity formation services provided by Holloway.  (JA1787-88.) The SS-4 application for Gaughf Enterprises, LLC identified Mr. Gaughf by name and social security number as a principal officer, general partner, grantor, owner, or trustor of the LLC.  (JA0522.)  So, too, did the SS-4 application for Balazs Ventures, LLC, identify Mrs. Gaughf as a principal officer, general partner, grantor, owner, or trustor.  (JA0526.)  But the SS-4 application for Gaughf LP did not identify Gaughf Enterprises, LLC, Balazs Ventures, LLC, or Mrs. Gaughf as partners.  (JA0529.)

The SS-4s for Gaughf Enterprises, LLC and Balazs Ventures, LLC identify them as a "disregarded entity."[7]  (JA0522, JA0526, JA1820.)

---

[7] A single-member LLC may elect to be treated as a separate corporation for tax purposes, or be disregarded entirely as an entity

(continued...)

10109128.1

- 13 -

The SS-4 applications on behalf of the four entities were faxed to "Entity

Control" at the IRS's Atlanta, Georgia office (JA0520-31), and were the

only documents that Holloway filed with the IRS (JA1818-19).  Once

filed, copies were delivered to Ms. Guerin at J&G in connection with the

"tax advantaged" transaction.  (JA1813-14.)

### 3.    The currency option transaction and the sale of Quanta stock

During November of 1999, Mr. Gaughf, on behalf of Gaughf LP,

Gaughf Enterprises, LLC, and Bodacious, Inc., opened accounts at BT

Alex Brown.  (JA1047-73.)  On November 24, 1999, $90,000 was

deposited into the Alex Brown account held by Gaughf Enterprises,

LLC.  (JA1158-59.)  On November 29, 1999, Gaughf Enterprises, LLC,

entered into two simultaneous currency option transactions with

---

[7](...continued)
separate from its owner.  26 C.F.R. §§ 301.7701-3(a), 301.7701-2(b)(2).
If it elects to be treated is a separate corporation, the company may, if it
so qualifies, be treated as a so-called "S" corporation.  An S corporation
is not subject to income tax.  *See* I.R.C. § 1363(a).  Instead, the
corporation computes its taxable income in the usual manner, *see* I.R.C.
§ 1363(b), but the income is "passed through" to its shareholder, who
then must pay tax on the taxable income of the S corporation, I.R.C.
§ 1366(a)(1).

- 14 -

Deutsche Bank.  (JA1116-18.)  Under the "long" option, Gaughf

Enterprises, LLC, was to pay $4,500,000 to Deutsche Bank on

December 1, 1999 and, in exchange, Deutsche Bank was to pay Mr.

Gaughf $9 million on December 22, 1999, if the Japanese yen were

trading at 10:00 a.m. Eastern time on such date at more than 105.76

yen to the dollar.  (JA1116.)  Under the "short" option, Deutsche Bank

was to pay Gaughf Enterprises, LLC $4,455,000 on December 1, 1999

and, in exchange, Mr. Gaughf was to pay Deutsche Bank $8.91 million

on December 22, 1999, if the Japanese yen were trading at 10:00 a.m.

Eastern time on such date at more than 105.78 yen to the dollar.

(JA1117.)  On November 30, 1999, Mr. Gaughf signed an assignment

agreement purporting to assign, transfer, and convey from Gaughf

Enterprises, LLC to Gaughf LP the financial positions contemplated in

the Deutsche Bank currency option transaction.  (JA1119-20.)

The payments contemplated by the agreement with Deutsche

Bank never took place.  Instead, on December 9, 1999, $45,000 was

wired from the Alex Brown account of Gaughf Enterprises, LLC to

Deutsche Bank.  (JA1163.)  That amount represented the net of Gaughf

- 15 -

Enterprises' purchase price for the "long" currency option ($4.5 million) and Deutsche Bank's purchase price for the "short" currency option ($4,455,000). On the same date, $45,000 was wired from the Alex Brown account of Gaughf Enterprises, LLC to the Alex Brown account of Gaughf LP. (JA1153, 1163.) In addition, before the $90,000 was divided between Gaughf LP and Deutsche Bank, Gaughf Enterprises, LLC earned $93.86 in dividends on its Alex Brown account. (JA1162-63.)

The currency options expired at 10:00 a.m. on December 20, 1999, in accordance with their terms, with no payout to either Gaughf Enterprises, LLC, Gaughf LLP, or Deutsche Bank. (JA0876, JA1154.)

Meanwhile, on November 19, 1999, Mr. Gaughf transferred 142,783 shares of Quanta stock, with an estimated value of $4.4 million, out of his brokerage account at Edward Jones. (JA1492.) These shares

10109128.1

- 16 -

ended up in an Edward Jones account for Bodacious, Inc., and were sold in three separate transactions (JA1483, JA1589-91):

| Trade Date | Shares | Proceeds (less commission of $0.06/share and fees) |
|---|---|---|
| 12/9/99 | 133,783 shares of Quanta stock @ $31.00/share | $4,139,105.67 |
| 12/9/99 | 7,000 shares of Quanta stock @ $31.0625/share | $217,009.83 |
| 12/9/99 | 2,000 shares of Quanta stock @ $31.125/share | $62,127.50 |

On December 14, 1999, Mr. Gaughf transferred an additional 2,575 shares of Quanta stock to the Edward Jones account for Bodacious, Inc.  (JA1483, JA1506.)  On December 20, 1999, at 12:11 p.m., Mr. Gaughf faxed Ms. Guerin to advise that "[a]ll remaining Quanta stock is being placed" in Gaughf LP and that he would fax her the confirmations when completed.  (JA1132)  Bodacious, Inc. then transferred its 2,575 shares of Quanta stock to the Edward Jones account for Gaughf LP (JA1474, JA1483.), and Mr. Gaughf transferred another 4,925 shares of Quanta stock from his Edward Jones account to the Edward Jones account for Gaughf LP (JA1474, JA1506).

10109128.1

- 17 -

On December 27, 1999, Balazs Ventures, LLC and Gaughf Enterprises, LLC purported to assign all of their partnership interests in Gaughf LP to Bodacious, Inc.  (JA1021, JA1023.)  The same day, Mr. Gaughf wrote to Alex Brown to advise that, as a result of the transfer of interests in Gaughf LP to Bodacious, Inc., Gaughf LP had been liquidated as a matter of law.  (JA1025.)  On December 29, 1999 and January 26, 2000, cash amounts of $45,066.46 and $9.40, respectively, were transferred from Gaughf LP's Alex Brown account to the Alex Brown account held by Bodacious, Inc.  (JA1142, 1148.)  On December 30, 1999, Gaughf LP transferred the 7,500 shares of Quanta stock that it had previously received from Bodacious, Inc. and Mr. Gaughf back to the Bodacious, Inc. account at Edward Jones.  (JA0467, JA1474, JA1483.)  Those shares were sold on December 31, 1999, to a third party, and Bodacious, Inc. received proceeds of $207,002.92, after commissions and fees.  (JA1131.)

10109128.1

- 18 -

### 4.    The reporting of the currency-option and stock-sale transactions on the 1999 tax returns of the Gaughfs and their entities

The Gaughfs and their entities filed a total of three different returns relating to the 1999 sale of Quanta stock and the offsetting currency option transactions.  (JA0532-640.)  The tax return of Gaughf LP for the tax year ending December 27, 1999, was filed on or about April 16, 2000.  (JA0610).  The return stated that Gaughf LP had two partners – Gaughf Enterprises, LLC and Balazs Ventures, LLC – and identified each of those entities as S corporations (JA0617, JA0621, JA0625).  Gaughf Enterprises, LLC and Balazs Ventures, LLC, however, did not file tax returns, as S corporations are generally required to do, *see* 26 C.F.R. § 1.6037-1.  And the Gaughfs did not, in their 1999 individual income tax return (JA0532-609), identify, or report receiving any income from, Gaughf Enterprises, LLC or Balazs Ventures, LLC.  Instead, the Gaughfs reported dividends received by Gaughf Enterprises, LLC on its Alex Brown account (JA1162-63), as having been received by the Gaughfs directly from Alex Brown (JA0583).

10109128.1

- 19 -

The Gaughf LP return stated that Gaughf LP's business started

on November 29, 1999.  (JA0610.)  It claimed that its partners – Gaughf

Enterprises, LLC and Balazs Ventures, LLC – contributed $300,000 to

the partnership during the taxable year, in proportion to the partners'

ownership interests.  (JA0615-16.)  Although the Gaughf LP return did

not separately identify these contributions, the $300,000 of

contributions identified in the return (JA0615) is the sum of:

(1) $210,000, representing the value of the 7,500 shares of Quanta

stock transferred by Mr. Gaughf and Bodacious, Inc. to the Edward

Jones account for Gaughf LP on December 20, 1999 (JA1474, JA1483,

JA1506);

(2) the $45,000 that was wired from the Alex Brown account of

Gaughf Enterprises, LLC to the Alex Brown account of Gaughf LP on

December 9, 1999 (JA1153, 1163); and

(3) $45,000, which is the difference between the stated purchase

price ($4.5 million) for Gaughf Enterprises, LLC to acquire the "long"

currency option and the stated purchase price ($4,455,000) for Deutsche

Bank to acquire the "short" currency option (JA1113-18), the rights

10109128.1

- 20 -

under which Mr. Gaughf purported to assign from Gaughf Enterprises, LLC to Gaughf LP on November 30, 1999, although without the apparent agreement of the counter-party, Deutsche Bank (JA1119-20).

The Gaughf LP return also reported "cash distributions" in 1999 of $255,066. (JA0615.) It did not report any other type of distribution. Although reported as a cash distribution, this $255,066 was calculated by adding the value ($210,000) of 7,500 shares of Quanta stock that were transferred back to the Bodacious, Inc. account at Edward Jones on December 30, 1999 (JA0467, JA1474, JA1483), to the $45,066.46 in cash transferred from Gaughf LP's Alex Brown account to the Alex Brown account held by Bodacious, Inc. on December 29, 1999 (JA1142, 1148).

The S-corporation return of Bodacious, Inc., however, filed on April 22, 2000, treated the entire 150,283 shares of Quanta stock as contributed to, and distributed by, Gaughf LP for purposes of reporting a basis in the Quanta stock. (JA0629, 0632, 0634, 0637.) Moreover, while the Gaughf LP return reported the the "long" and "short" currency options as a single integrated transaction, and hence only the difference

10109128.1

- 21 -

($45,000) between the purchase prices for the options as a contribution, the return of Bodacious, Inc. treated only the "long" currency option as having been contributed to Gaughf LP, while completely ignoring the short currency option, for the purpose of computing its basis in Quanta stock.  (JA0637.)

The Gaughfs, in their individual 1999 return, reported a flow-through capital loss on the sale of Quanta stock (JA0591, JA0594) according to the treatment of the contributions and distributions described in the Bodacious return (JA0637), and not according to the treatment of contributions and distributions described in the Gaughf LP return (JA0615).  The Gaughfs' 1999 return also claimed that Mr. Gaughf had a "tax basis" in Gaughf LP of $4,513,528 (JA0582), even though Gaughf LP did not report the contribution of the currency option used to determine this inflated basis (JA0615).  The Gaughfs never filed a Form 8082, notice of inconsistency in tax treatment, with respect to these transactions.  (JA1822-23, 1861-64, 1919, 2018-19; *see* JA 1466-69, JA 1580-82.)

- 22 -

**5.     The IRS investigation of Jenkens & Gilchrist**

The first person at the IRS to begin an investigation into J&G in connection with the structuring of "tax advantaged" transactions was James Johnson, an IRS Revenue Agent with the Large and Midsize Business Division.  (JA1926, JA1956.).  Johnson was assigned the primary responsibility of determining whether J&G would be subject to a tax shelter promoter penalty and/or a registration penalty (JA1930-31), penalties that are calculated based on the number of clients, the duration of the period within which the promoter failed to register the transactions, or the amount of fees received by the promoter on account of the transactions, *see* I.R.C. §§ 6700, 6707, 6708.  Johnson was not assigned to investigate the individual returns of J&G clients.  (JA1931.)  His investigation began on March 25, 2002.  (*Id*.)  At all times pertinent, Johnson worked at IRS offices in the Chicago area, and did not work at an IRS Service Center.  (JA1956.)

On May 21, 2002, as part of the examination into J&G's compliance with tax shelter registration requirements and its potential liability for penalties, Johnson issued 22 summonses to J&G, seeking

- 23 -

documents related to transactions like those engaged in by the Gaughfs. (JA0689-90, JA1513.)  Representatives from J&G initially failed to respond (JA1514), and in August, 2002, Johnson was advised that no information from J&G's client files would be provided in response to the summonses on account of the attorney-client privilege (JA1516, JA1926). On June 19, 2003, Johnson recommended enforcement of the summons to the Department of Justice, and obtained court approval to serve a so-called "John Doe" summons on J&G's Chicago office.  (JA1522-23, JA1957.)  On July 1, 2003, J&G representatives faxed to Johnson written responses claiming that they could not disclose client identities due to the attorney-client privilege.  (JA 1523.)

On August 15, 2003, the Department of Justice filed a petition with the United States District Court in Chicago, Illinois, seeking to enforce five of the promoter summonses and the "John Doe" summons issued to J&G.  (JA0685, JA1522-23.)  J&G, in turn, moved to dismiss the summons enforcement suit and to quash the summonses.  (JA0700.) On May 14, 2004, the District Court ordered, over J&G's objection, the production of documents responsive to the summonses.  (JA0701-04.)

- 24 -

Copies of the order were sent, at the District Court's direction, to all

former J&G clients affected by the summonses, to give such clients the

opportunity to intervene and assert any attorney-client privilege they

may have with respect to the documents produced.  (JA0702-03.)  Mrs.

Gaughf became aware in 2004 that the IRS was investigating J&G in

connection with their "tax advantaged" transactions (JA1847), but did

not intervene in the summons enforcement proceeding.

Revenue Agent Johnson received a list of J&G clients on May 18,

2004.  (JA1549, JA1936.)  Throughout 2004, Johnson received

appoximately 1,300 compact discs from J&G, each pertaining to an

individual J&G client.  (JA1940.)  In order to handle the volume of

information contained in the CDs, Johnson requested an additional

computer with sufficient storage capacity.  (JA1940.)   The first group of

CDs arrived on July 8, 2004.  Included in that first production were 250

CDs, one of which (unbeknownst to Johnson at the time) contained a

digital file of 480 pages relating to the Gaughfs' transactions with J&G.

(JA1554, JA1939-40.)   If an IRS agent assigned to the audit of an

- 25 -

individual J&G client wanted the information on the CDs, the agent had

to locate and contact Johnson directly.  (JA1941.)

J&G ceased providing legal services, and permanently dissolved as

a law firm, on March 31, 2007.  (JA0462.)

### 6. The IRS investigation of the Gaughfs and their entities, and the issuance of the FPAA for Gaughf LP

Revenue Agent William Maier was assigned to audit the Gaughfs'

1999 return on January 10, 2006.  (JA0460, JA1969, JA1973, JA1998.)

Upon receiving the Gaughfs' 1999 return, Maier cross-referenced their

address against other entities, because the previous entities he had seen

participating in Notice 2000-44 transactions had used the same address

in each case.  (JA2000-01.)  Maier never spoke with Revenue Agent

Johnson until just before trial in this case.   (JA1942.)  But on January

19, 2006, Maier traveled to San Francisco, California, to obtain a copy of

the J&G CD pertaining to the Gaughfs.  (JA1974. JA2002-03.)

On January 31, 2006, Maier requested various information from

the Gaughfs, including the names, addresses, and taxpayer

identification numbers (TINs) of all participants in the Notice 2000-44

- 26 -

transaction.  (JA1202, JA1208.)  The Gaughfs did not respond (JA2005),

but on February 1, 2006, the Gaughfs appointed Porter Thompkins, Jr.,

to represent them regarding their 1999 tax liability (JA0460).

In February, 2006, Maier expanded the scope of his examination to

include Gaughf LP (JA1984-85, JA2006), and on February 23, 2006,

Maier sent a letter to Gaughf Enterprises, LLC, the TMP of Gaughf LP,

advising that its 1999 return had been selected for examination

(JA1238).  Also on February 23, 2006, Maier requested various pieces of

information from the TMP of Gaughf LP, including the names,

addresses, and TINs of all participants in the Notice 2000-44

transaction.  (JA1240, JA1247.)  Neither Gaughf LP nor its TMP

responded.  (JA2007.)

Maier also procured the 1999 return of Bodacious, Inc. on or about

February 23, 2006.  (JA2023, JA2047.)  Maier thought it was unusual

that the sale of Quanta stock, which occurred in four separate

transactions, was reported in the aggregate on Bodacious, Inc.'s return.

(JA2026.)  Because the sales were reported in the aggregate (JA0637),

instead of reported individually as they ought to have been (JA2033-34),

- 27 -

Maier was unable to identify, initially, that Bodacious was claiming a very high basis (about $4.5 million) in its sale of 7,500 shares of Quanta stock (sold for net proceeds of $207,002.92) on December 31, 1999. (JA1131, JA2033-34.)[8]  In addition, because the Gaughf LP return identified its partners as Gaughf Enterprises, LLC, and Balazs Ventures, LLC, and because those entities were identified on the return as S corporations (JA0617, JA0621, JA0625), Maier was unable to determine that the Gaughfs themselves were partners in Gaughf LP (JA2040-41).

On April 12, 2006, the Gaughfs each signed an IRS Form 872-I, a consent to extend the time to assess their 1999 taxes, including taxes attributable to partnership items of Gaughf LP, until April 16, 2007. (JA1257-58.)  At the time, the Gaughfs had been advised that it was the IRS's position that the period for assessing their 1999 taxes, including taxes attributable to Gaughf LP, remained open.  (JA1848.)  The Form 872-I consent was countersigned by the IRS on May 10, 2006.  (JA1258.)

_____

[8] Had the sales been broken out individually, the artificially inflated basis would have been immediately apparent.  (*See* JA1594.)

- 28 -

In March, 2007, the IRS issued an FPAA to Gaughf LP for its 1999 partnership return, determining, *inter alia*, that Gaughf LP was not a bona fide partnership, that it was formed principally for the purpose of tax avoidance and was a sham, lacking economic substance, that the transactions in which it engaged were not done with a motive for profit, and that, in any event, the amount treated as contributed by the partners from the "long" option is reduced by the amounts received by the contributing partners from the contemporaneous offsetting "short" option, and that the basis of the options in the hands of Gaughf LP and its partners is accordingly reduced.  (JA1297-98.)  Because the IRS had not received any record that the Gaughfs were notice partners in Gaughf LP, *see* I.R.C. § 6223, the FPAA was issued to the partners identified in Gaughf LP's 1999 return – Gaughf Enterprises, LLC and Balazs Ventures, LLC.  (JA2115-16.)  Balazs Ventures, LLC then filed a petition for readjustment of partnership items identified in the FPAA. (JA0001.)

- 29 -

### 7.    The Tax Court proceedings

At issue in the Tax Court was whether the FPAA was issued after the expiration of the statutory period for assessing tax attributable to partnership items of Gaughf LP.  (JA0002.)  The IRS originally answered the petition by claiming that the assessment period remained open under I.R.C. § 6229 (JA0033-36), and later amended its answer to state, specifically, that the assessment period remained open under I.R.C. § 6229(e), because Gaughf LP did not identify the Gaughfs as partners, and because the Gaughfs and Gaughf LP treated partnership items inconsistently without notifying the Secretary of the inconsistent treatment.  (JA0301-04.)

Petitioner and the Gaughfs conceded, for the purpose of the assessment-period issue, that the currency-option transaction that they (or their entities) engaged in with J&G and Deutsche Bank was a single integrated transaction, that it was a sham, that it lacked the possibility of profit, and that it should be disregarded for tax purposes.  (JA0246-49.)  The parties further agreed that Bodacious, Inc. (and, hence, the

10109128.1

- 30 -

Gaughfs) overstated its basis in the 7,500 shares of Quanta stock that it

received on December 30, 1999, by at least $4,455,000.  (JA0467.)

On May 17 and 18, 2010, the Tax Court held a trial on whether the

statutory period for assessing tax attributable to partnership items of

Gaughf LP remained open with respect to the Gaughfs, while deferring

the merits of the adjustments contained in the FPAA to a later date.

(JA0418, JA0450-51, JA1598.)[9]  On September 10, 2012, the court

entered an opinion (JA1596) and order (JA1658), holding that the

---

[9] In addition to the IRS's contention that the assessment period
remained open under I.R.C. § 6229(e), the IRS also contended, at the
time of trial, that the assessment period remained open under I.R.C.
§ 6501(e)(1)(A), because the Gaughfs had omitted from gross income an
amount properly includible therein which exceeded 25 percent of the
gross income stated in their 1999 return.  The IRS's alternative
contention, however, was foreclosed by the time the Tax Court issued its
opinion, due to the Supreme Court's holding in *United States v. Home
Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012), that a taxpayer's
overstatement of its basis in sold property did not constitute an
omission from gross income for purposes of I.R.C. § 6501(e)(1)(A).

Petitioner also contended below that, notwithstanding I.R.C.
§ 6229(e), the IRS should be estopped from asserting that the
assessment period remained open.  The estoppel question, however, is
no longer at issue in this appeal.  (*See supra* note 5.)

10109128.1

- 31 -

statutory period for assessing tax attributable to partnership items of Gaughf LP remained open under I.R.C. § 6229(e).

Under I.R.C. § 6229(e), the period for assessing a tax attributable to a partnership items remains open if (1) the name, address and TIN of a partner are not furnished in the partnership's return, and (2) the partner has failed to comply with I.R.C. § 6222(b), relating to notification of inconsistent treatment with respect to partnership items. The Tax Court reasoned that under the then-applicable regulation, 26 C.F.R. § 6229(e)-1T, 52 Fed. Reg. 6789 (Mar. 5, 1987), I.R.C. 6229(e) applied to so-called "indirect" partners like the Gaughfs, such that Gaughf LP's failure to furnish in its 1999 return the Gaughfs' names, addresses and TINs meant that the first part of the IRS's assessment-period argument had been satisfied. (JA1620-22.)

The court also held that the second part the IRS's assessment-period argument had been satisfied, because the Gaughfs had failed to comply with I.R.C. § 6222(b). (JA1628.) Specifically, the court noted that "partnership items" include contributions to and distributions from the partnership (JA1624), and that the Gaughfs, by treating only the

10109128.1

- 32 -

"long" currency option as a contribution on their individual return, had treated a partnership item differently than Gaughf LP, which had netted the premiums for the "long" and "short" currency options for capital-contribution purposes. (JA1625-26.) The court found that the Gaughfs did not notify the IRS that they treated partnership items of Gaughf LP on their personal return in a manner which was inconsistent with their treatement on the Gaughf LP return. (JA1627-28.)

In addition, petitioner contended below that it had "furnished to the Secretary" the name, address, and TINs of the Gaughfs more than one year prior to the issuance of the FPAA, such that the exception to the otherwise unlimited assessment period of I.R.C. § 6229(e) applied. In this regard, the Tax Court noted that 26 C.F.R. § 6229(e)-1T and 26 C.F.R. § 6223(c)-1T, 52 Fed. Reg. 6784 (Mar. 5, 1987), required that, to "furnish" additional partner information to the IRS, a person must file a signed statement with the IRS Service Center where the partnership return is filed, that, *inter alia*: (i) identifies the partner(s) and the partnership by name, address, and TIN; (ii) explains that the statement is furnished to correct or supplement earlier information; and

10109128.1

- 33 -

(iii) specifies the taxable year to which the information relates.

(JA1629-31.)  The Tax Court found that the two sets of documents that

petitioner identified as "furnishing" the additional partner

information – the applications for employer identification numbers

faxed to the IRS on formation of the Gaughfs' entities and the

documents produced by J&G in response to the District Court's 2004

summons enforcement order – did not meet these regulatory

requirements.  (JA1632-34.)  Finally, the Tax Court rejected petitioner's

challenge to the applicable regulations under *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  (JA1641-

46.)

This appeal followed.

## SUMMARY OF THE ARGUMENT

Section 6229(e) of the Code provides that if (1) a partner's name,

address, and TIN are not furnished on a partnership return, and (2)  the

partner has failed to comply with § 6222(b) of the Code (relating to

notification of inconsistent treatment) with respect to any partnership

item for the relevant year, then (3) the period for assessing tax

- 34 -

attributable to any partnership item (or affected item) for such year "shall not expire" with respect to such partner until one year after the name, address, and TIN of such partner are "furnished to the Secretary." The only issue in this appeal is whether the elements of I.R.C. § 6229(e) have been met, and particularly, whether the name, address, and TIN of a partner of Gaughf LP were "furnished to the Secretary," under applicable law, before May 10, 2005.

With respect to the first element of I.R.C. § 6229(e), it is clear that Mr. and Mrs. Gaughf were "partners" in Gaughf LP for purposes of the Code, *see* I.R.C. § 6231(a)(2)(B), and that their names, addresses, and TINs were not included in Gaughf LP's 1999 return. Petitioner's argument that there is no space on the return for reporting the Gaughfs as partners is both wrong and beside the point. Petitioner was obligated to, and easily could, identify the Gaughfs as partners on the return. Petitioner's concern that failing to do so means that there is no "rational limitations period" for businesses that operate with indirect partners vastly overstates the limited reach of I.R.C. § 6229(e).

10109128.1

- 35 -

Regarding the second element of I.R.C. § 6229(e), the Gaughfs were required to file a statement with the IRS on IRS Form 8082 if their treatment of a partnership item on their return is (or may be) inconsistent with the treatment of the item on Gaughf LP's return. It was plainly inconsistent for Gaughf LP to report that it received $300,000 in contributions while the Gaughfs claimed a $4.5 million basis in the property contributed. So, too, was it inconsistent for Gaughf LP to claim a $45,000 basis in currency options while the Gaughfs claimed that the options cost them $4,500,000, for Gaughf LP to claim that it distributed $255,000 in cash at liquidation when the Gaughfs reported that it distributed stock worth over $4,500,000, and for Gaughf LP to identify its partner LLCs as S-corporations, when the Gaughfs completely disregarded these LLCs when filing their return. These inconsistencies are not simply matters of accounting, and they plainly relate to partnership items of Gaughf LP and the legal and factual determinations that underlie the the amount and characterization of those items.

10109128.1

- 36 -

Finally, information identifying the Gaughfs by name, address,

and TIN as partners in Gaughf LP was not "furnished to the Secretary,"

under the applicable regulations, before May 10, 2005.  The Gaughfs'

filing of applications for employer identification numbers long before

Gaughf LP's return was filed does not satisfy the regulations.  Nor did

the Gaughfs comply with the regulations when Jenkens & Gilchrist,

after refusing to do so and only under court order, sent to the Revenue

Agent investigating J&G's promoter liability 1,300 compact discs, only

one of which contained information pertaining to the Gaughfs, and from

which it was possible only upon careful scrutiny to determine the

Gaughfs' names, address, TINs, and identity as indirect partners in

Gaughf LP.   Although petitioner challenges these regulations as

invalid, it was plainly within Treasury's authority to determine how,

and to whom, partner identifying data should be delivered to the

Secretary for purposes of TEFRA administration.  The regulations have

been uniformly upheld as a reasonable interpretation of the Code, and

the courts have uniformly required compliance with the regulations,

- 37 -

even when the IRS otherwise has access to identifying partner

information.

## ARGUMENT

**THE TAX COURT CORRECTLY HELD THAT THE PERIOD FOR ASSESSING A TAX ATTRIBUTABLE TO PARTNERSHIP ITEMS OR AFFECTED ITEMS OF GAUGHF LP HAD NOT EXPIRED PURSUANT TO I.R.C. § 6229(e)**

### Standard of review

This Court reviews the Tax Court's decision in same manner as it

would a district court's decision in a non-jury case.  I.R.C. § 7482(a)(1).

As such, the Tax Court's legal conclusions are reviewed *de novo*, and its

factual findings for clear error.  *Jombo v. Commissioner*, 398 F.3d 661,

663 (D.C. Cir. 2005).

### A.  An overview of the relevant TEFRA concepts and procedures

Although partnerships do not pay federal income tax, they are

nevertheless required to file annual information returns reporting the

partners' distributive shares of income, gain, deductions or credits.

I.R.C. § 6031; Treas. Reg. §§ 1.701-1, 1.6031(a)-1(a)(1); *United States v.

Basye*, 410 U.S. 441, 448 (1973).  The individual partners then report

10109128.1

- 38 -

their distributive shares of the partnership's income or losses on their respective, individual federal income tax returns.  I.R.C. §§ 701-704.

To achieve consistent treatment of all partners in the same partnership and to remove the substantial burden occasioned by duplicative audits and litigation, as part of the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324 (codified in pertinent part at I.R.C. §§ 6221-6233), Congress enacted coordinated procedures for determining the treatment of "partnership items" in a single, unified audit and judicial proceeding.  *See* H.R. Conf. Rep. No. 97-760, at 599-600 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1190, 1371-72; *Callaway v. Commissioner,* 231 F.3d 106, 107-08 (2d Cir. 2000).  A partnership item is "any item required to be taken into account for the partnership's taxable year under any provision of subtitle A [Income Taxes]," and identified by the Secretary of the Treasury as "more appropriately determined at the partnership level than at the partner level."  I.R.C. § 6231(a)(3); Treas. Reg. § 301.6231(a)(3)-1(a).  That includes items of income, gain, loss, deduction, or credit of the partnership as well as "the legal and factual

10109128.1

- 39 -

determinations that underlie the determination of the amount, timing, and characterization of [such] items." Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i), (b).  It also includes items "relating to" contributions to the partnership and distributions from the partnership, "to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership." Treas. Reg. § 301.6231(a)(3)-1(a)(4).

Partners are obligated, on their individual returns, to treat partnership items consistently with the treatment of such items on the partnership return, I.R.C. § 6222(a), and to file a statement with the IRS, on IRS Form 8082 (JA1466-69; *see* Temp. Treas. Reg. § 301.6222(b)-1T, 52 Fed. Reg. 6789 (Mar. 5, 1987)),[10] whenever the partner's treatment is or may be inconsistent with the partnership's treatment of such items, I.R.C. § 6222(b).

---

[10] Unless otherwise indicated, citations to Temporary Treasury Regulations are to the regulations in effect for the period(s) pertinent to this case.

- 40 -

If the IRS disagrees with the partnership's reporting of any partnership item, it must issue an FPAA to the partnership's tax matters partner before making any assessments against the partners attributable to this item.  I.R.C. § 6225(a).  Section 6223, and the regulations issued pursuant thereto, establish the requirements for providing notice of the FPAA to partners of the partnership.  Section 6223 states that such notice must be mailed "to each partner whose name and address is furnished to the Secretary."  I.R.C. §§ 6223(a)(1), (2).

In this regard, the IRS is instructed to "use the names, addresses, and profits interests shown on the partnership return," I.R.C. § 6223(c)(1), or such "additional information furnished to him by the tax matters partner or any other person in accordance with regulations prescribed by the Secretary," I.R.C. § 6223(c)(2).  Those regulations, in turn, state that such additional partner information must be provided by written statement, filed with the service center in which the partnership return is filed (unless a notice of administrative proceeding has already been mailed to the TMP, in which case the statement is to

be filed with the IRS office that mailed the notice) at least 30 days

before notice of the FPAA is mailed to the TMP.  Temp. Treas. Reg.

§ 301.6223(c)-1T(b)(1), (2), 52 Fed. Reg. 6789 (Mar. 5, 1987).  To be

effective, such statement must be signed, and must, *inter alia*,

(i) identify the partnership, each partner for whom information is

supplied, and the person supplying the information by name, address,

and TIN, (ii) explain that the statement is furnished to correct or

supplement earlier information with respect to the partners in the

partnership, and (iii) specify the taxable year to which the information

relates.  Temp. Treas. Reg. § 301.6223(c)-1T(b)(3), 52 Fed. Reg. 6789

(Mar. 5, 1987).

The standard period for assessing tax, both generally and in the

specific context of a taxpayer who has an interest in a partnership, is

three years.  The Commissioner thus generally has three years after the

later of the due date for filing a tax return, or the date on which the

taxpayer actually files its return, to assess any additional tax due.

I.R.C. § 6501(a).  Additionally, I.R.C. § 6229 provides special rules that

extend the assessment period prescribed by I.R.C. § 6501 in the case of

- 42 -

partnership items or affected items.[11]  The period for assessing income

tax against the partners attributable to partnership items (or affected

items) "shall not expire before" three years after the date on which the

partnership return was filed, or the last day for filing such return

(determined without regard to extensions), whichever is later.  I.R.C.

§ 6229(a).  The mailing of an FPAA before the expiration of this period

suspends the period for assessing tax attributable to partnership items

(or affected items) for the period within which an action may be brought

challenging the IRS's adjustments contained in the FPAA (and if such

action is brought, until the court's decision becomes final), plus one

year.  I.R.C. § 6229(d).

The period for assessing tax attributable to partnership items (or

affected items) may also be extended by agreement between the IRS

and the affected partner(s), so long as the agreement is entered into

before the expiration of such period.  I.R.C. § 6229(b)(1).  In addition,

I.R.C. § 6229(e) provides for an exception to the three-year period for

---

[11] The term "affected item" means any item on the partner's return to the extent such item is affected by a partnership item.  I.R.C. § 6231(a)(5).

- 43 -

assessing tax (or extending the assessment period by agreement), in the case of an unidentified partner who fails to comply with the requirement in I.R.C. § 6222(b), *see* p. 38, *supra*, to notify the IRS when the partner's treatment of a partnership item is or may be inconsistent with the partnership's treatment of such item.  Section 6229(e) provides, in pertinent part, that if:

> (1) the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and

> (2) [* * *] (B) the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,

> the period for assessing any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for such taxable year shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary.

In this case, by May 10, 2006, the Gaughfs and the IRS had each signed an IRS Form 872-I, a consent to extend the time to assess the Gaughfs' 1999 taxes, including taxes attributable to partnership items of Gaughf LP, until April 16, 2007.  (JA1257-58.)  The FPAA with

10109128.1

- 44 -

respect to partnership items of Gaughf LP, the mailing of which

suspends the period for assessing tax attributable to partnership items

(or affected items) of Gaughf LP, was mailed before April 16, 2007.

(JA1297-98.)  Consequently, the FPAA was timely, and taxes

attributable to partnership items of Gaughf LP may still be assessed, so

long as the Form 872-I is effective, that is, if it was entered into before

the expiration of the period for assessing such taxes.  I.R.C.

§ 6229(b)(1).

Pursuant to I.R.C. § 6229(e), the period for assessing taxes

attributable to partnership items of Gaughf LP remained open on May

10, 2006, the date by which the Form 872-I was signed by all necessary

parties, so long as (1) the name, address and TIN of a partner of Gaughf

LP were not furnished in Gaughf LP's 1999 return, (2) the partner's

treatment of a partnership item of Gaughf LP is or may be inconsistent

with Gaughf LP's treatment of such item, and such partner failed to

notify the IRS of the inconsistency, and (3) the name, address and TIN

of such partner was not "furnished to the Secretary" more than one year

before the signing of Form 872-I.  The only issue in this appeal is

10109128.1

- 45 -

whether these elements of I.R.C. § 6229(e) have been met.  In this

regard, I.R.C. § 6229(e) "must receive a strict construction in favor of

the Government."  *Badaracco v. Commissioner*, 464 U.S. 386, 391 (1984)

(citing *E.I. Du Pont de Nemours & Co. v. Davis*, 264 U.S. 456, 462

(1924)).[12]

### B.    The Gaughfs were partners in Gaughf LP, and their names, addresses and TINs were not furnished in Gaughf LP's 1999 return

Gaughf LP's 1999 return stated that Gaughf LP had two

partners – Gaughf Enterprises, LLC and Balazs Ventures, LLC – and

identified each of those entities as S corporations (JA0617, JA0621,

JA0625).  Gaughf Enterprises, LLC and Balazs Ventures, LLC,

however, were not S corporations.  They were, instead, "disregarded

entities" – that is, entities to be disregarded as separate and apart from

their owners for federal tax purposes.  (JA0451-52.)  Their owners, Mr.

and Mrs. Gaughf, respectively, were thus the persons whose income tax

liabilities were "determined in whole or in part by taking into account

---

[12] This is because "'limitations statutes barring the collection of
taxes otherwise due and unpaid are strictly construed in favor of the
Government.'" *Badaracco*, 464 U.S. at 392 (quoting *Lucia v. United
States*, 474 F.2d 565, 570 (5th Cir. 1973)).

- 46 -

directly or indirectly partnership items" of Gaughf LP.  I.R.C.

§ 6231(a)(2)(B).  As such, Mr. and Mrs. Gaughf are "partners" of Gaughf

LP for purposes of I.R.C. § 6229(e).  *Costello v. United States*, 765

F. Supp. 1003, 1007-08 (C.D. Cal. 1991); *Walthall v. United States*, 911

F. Supp. 1275, 1285 & n.15 (D. Alaska 1995), *aff'd* 131 F.3d 1289 (9th

Cir. 1997); *Sente Inv. Club Partnership of Utah v. Commissioner*, 95

T.C. 243, 248-49 (1990); *see Dionne v. Commissioner*, T.C. Memo.

1993-117, 1993 WL 87719, at *2 (1993).

　　　　Gaughf LP's 1999 return does not, however, identify either Mr. or

Mrs. Gaughf as partners in Gaughf LP.  (JA0610-28.)  The pertinent

regulations provide that a "partner who is not properly identified on the

partnership return (*including an indirect partner*) remains an

unidentified partner for purposes of section 6229(e) until identifying

information is furnished" to the IRS.  Temp. Treas. Reg.

§ 301.6229(e)-1T, 52 Fed. Reg. 6789 (Mar. 5, 1987) (emphasis added).

Consequently, it is clear that the name, address and TIN of partners of

Gaughf LP were not furnished in Gaughf LP's 1999 return.

- 47 -

Petitioners do not dispute that the name, address and TIN of Mr. and Mrs. Gaughf were not furnished in Gaughf LP's 1999 return. Nor do they contest the rule that the term "partner" for purposes of I.R.C. § 6229(e) includes so-called "indirect partners" such as Mr. and Mrs. Gaughf.[13] Rather, they complain (Br. 46) that "[i]n 1999 and now, the U.S. Partnership Return (Form 1065)" and its schedules "provide no space for reporting indirect partners," and that the Commissioner's position in this regard "threatens to destroy any rational limitations period for businesses that operate with indirect partners."

Petitioner's argument is meritless. First, whether or not Form 1065 or Schedule K-1 provides a specific space for identifying partners, direct or indirect, nothing obviates the requirement, imposed by law, with knowledge of which petitioners are charged, that such partners be identified in the partnership return. I.R.C. §§ 6229(e)(1), 6231(a)(2)(B);

---

[13] To the extent that petitioners contend that Temp. Treas. Reg. § 301.6229(e)-1T is invalid under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we refute that contention in Part D, *infra*.

- 48 -

Temp. Treas. Reg. § 301.6229(e)-1T.[14]  Indeed, the 1999 returns for the

Gaughfs and Gaughf LP contain 44 pages of information for which

insufficient "space" was provided on the relevant return.  (JA0541-44,

JA0562-63, JA0565-66, JA0568-69, JA0575-76, JA0582-JA0608,

JA0614-15, JA0620, JA0624, JA0628.)  It would have imposed little

burden on the Gaughfs to append to Gaughf LP's 1999 return a

statement that included the Gaughfs' names, addresses and TINs and

identified them as partners, direct or indirect, in Gaughf LP.

Second, because Gaughf Enterprises, LLC and Balazs Ventures,

LLC, were entities to be disregarded for federal tax purposes (JA0451-

52), they should have been disregarded for purposes of reporting the

partners in Gaughf LP on its federal tax return.  That is, Gaughf LP's

1999 return should have listed Mr. and Mrs. Gaughf, alone, as partners.

---

[14] The Tax Court suggested (JA1621 at n.20) that a regulation
effective for 1999 returns, 26 C.F.R. § 1.6031-1 (removed, Nov. 12,
1999), "required that only immediate partners be listed on a
partnership return."  But that regulation is silent as to whether
"immediate" or "indirect" partners, or both, should be listed on a
partnership return.  The requirement that Mr. and Mrs. Gaughf be
listed on the partnership return of Gaughf LP was elsewhere required
by I.R.C. §§ 6229(e)(1) and 6231(a)(2)(B), as well as Temp. Treas. Reg.
§ 301.6229(e)-1T, all of which were effective with respect to the 1999 tax
year.

- 49 -

Although the instructions at the time for Form 1065 and its schedules
may have been ambiguous on this point (JA2143), the present-day
instructions to Form 1065 unambiguously instruct the preparer, if "the
LLC is treated as a disregarded entity for federal income tax purposes,"
to enter the name, address and TIN of the "owner" of the LLC in the
partner schedules.  2012 Instructions for Form 1065, p. 25, *available at*
www.irs.gov/pub/irs-pdf/i1065.pdf (last accessed June 10, 2013).

Third, requiring the true owners of a partnership to be identified
in the partnership's return does not, as petitioners claim, threaten to
"destroy any rational limitations period for businesses that operate with
indirect partners."  (Br. 46.)  The assessment period remains open
under I.R.C. § 6229(e) only if (1) the partnership return does not
identify the indirect partner, (2) the indirect partner does not itself
furnish the IRS with its identifying information under the applicable
regulation, (3) the indirect partner and the partnership treat
partnership items inconsistently, and (4) the indirect partner does not
notify the IRS of the inconsistency.  Had the Gaughfs taken any one of
these steps to shed light on their relationship with items on Gaughf

- 50 -

LP's return, they would not find themselves in the position they are in

now.  Thus, the suggestion that this case "impacts the limitations period

for almost every business over the past 30 years which was wisely

structured with a double layer of limited-liability protection" (Br. 45) is

hyperbole, to say the least.

In short, it is beyond dispute that Mr. and Mrs. Gaughf were

"partners" in Gaughf LP for TEFRA purposes, I.R.C. § 6231(a)(2)(B),

and that their names, addresses, and TINs were not included in Gaughf

LP's 1999 return (JA0610-28).  Petitioner's arguments in this regard

are irrelevant to the question presented by I.R.C. § 6229(e)(1).

**C.    The Gaughfs failed to comply with I.R.C. § 6222(b), relating to notification of inconsistent treatment with respect to partnership items on Gaughf LP's 1999 return**

1.  As discussed *supra* p. 38, partners are required to file a

statement with the IRS, on IRS Form 8082 (JA1466-69; *see* Temp.

Treas. Reg. § 301.6222(b)-1T, 52 Fed. Reg. 6789 (Mar. 5, 1987)),

whenever the "partner's treatment [of a partnership item] on his return

is (or may be) inconsistent with the treatment of the item on the

partnership return."  I.R.C. § 6222(b).  In this case, the Tax Court found

- 51 -

that the Gaughfs, on their individual 1999 return, treated partnership

items of Gaughf LP – specifically, contributions to, and distributions

from, the partnership – inconsistently with the treatment of such items

on the partnership return of Gaughf LP.  (JA1625.)  In this regard, the

court noted that Gaughf LP "netted the amount of the stated premiums"

for the "long" and "short" currency options in reporting the value of

capital contributions on its return, while the Gaughfs "treated only the

long option as a capital contribution" for purposes of determining their

basis in the 7,500 shares of Quanta stock that were sold on December

31, 1999.  (JA1625-26.)

The Tax Court's finding is correct.  The Gaughf LP return stated

that Gaughf Enterprises, LLC and Balazs Ventures, LLC contributed

$300,000 to the partnership during the taxable year (JA0615-16), which

represented (1) the value of 7,500 shares of Quanta stock transferred by

Mr. Gaughf and Bodacious, Inc. to Gaughf LP on December 20, 1999

(JA1474, JA1483, JA1506); (2) $45,000 in cash wired from Gaughf

Enterprises, LLC to Gaughf LP on December 9, 1999 (JA1153, 1163);

and (3) the difference between the price for Gaughf Enterprises, LLC to

10109128.1

- 52 -

acquire the "long" currency option and the price for Deutsche Bank to

acquire the "short" currency option (JA1113-18), the rights to which

were purportedly assigned to Gaughf LP on November 30, 1999

(JA1119-20). The S-corporation return of Bodacious, Inc., however (and

hence the Gaughfs on their individual return, JA0591-94), treated only

the "long" currency option as having been contributed to Gaughf LP,

while ignoring the short currency option, for the purpose of computing

its basis in Quanta stock (JA0637). Similarly, the Gaughfs' return also

claimed that Mr. Gaughf had a "tax basis" in Gaughf LP of $4,513,528

(JA0582), even though Gaughf LP only reported that $300,000 had ever

been contributed to the partnership (JA0615).

2. Petitioner (Br. 49-51) and amicus curiae (Amicus Br. 12-15)

contend that any inconsistency between Gaughf LP reporting that it

received $300,000 in contributions and the Gaughfs deriving a $4.5

million basis in property contributed to Gaughf LP is simply a matter of

differing accounting methods. Specifically, petitioners argue that

contributed property must be reflected on the partnership return at

"fair market value," but that accounting rules required that a partner's

- 53 -

basis in the partnership be calculated without regard to the

partnership's assumption of contingent obligations.  (Br. 51.)  Thus,

petitioner implies, the Gaughfs' claimed $4.5 million basis in property

contributed to Gaughf LP is not inconsistent, at least for accounting

purposes, with Gaughf LP valuing the same property at less than

$300,000 when reporting partnership contributions.  (*Id.*)  This

argument has several flaws.

First, as the amicus acknowledges (Amicus Br. at 10 n.4), Treas.

Reg. § 1.752-6 operates to "scupper the entire class of offsetting-option

tax shelters" by subtracting from basis the value of any corresponding

liability assumed by the partnership.  *Cemco Investors, LLC v. United

States*, 515 F.3d 749, 751-52 (7th Cir. 2008).  By its plain terms, Treas.

Reg. § 1.752-6 "applies to assumptions of liabilities occurring after

October 18, 1999, and before June 24, 2003."[15]  Treas. Reg. § 1.752-

---

[15] Although the amicus suggests that the retroactive applicability
of Treas. Reg. § 1.752-6 is "open to question" (Amicus Br. at 10 n.4), no
challenge to the regulation has been raised in this case, and the
regulation has been upheld on multiple occasions.  *Cemco*, 515 F.3d at
752; *Maguire Partners-Master Investments, LLC v. United States*,
2009 WL 4907033, at *19 (C.D. Cal. 2009).

- 54 -

6(d)(1). Consequently, the premise to petitioner's argument – that accounting rules obligate the Gaughfs or their entities to ignore, for the purpose of computing their basis in Quanta stock, the short currency option assumed by Gaughf LP on November 30, 1999 – is incorrectly stated.[16]

Second, petitioner's argument presumes that the "long" and "short" currency options were separate transactions that should be given independent weight for tax purposes.  But petitioner and the Gaughfs already conceded, for the purpose of the assessment-period issue, that the currency-option transactions were a single integrated transaction, were a sham, lacked the possibility of profit, and should be disregarded for tax purposes.  (JA0246-49.)  Thus, it is plainly inconsistent for the Gaughfs to have reported the currency options as separate transactions, entitled to independent weight, when Gaughf LP treated them as part of a single transaction.

---

[16] The example provided in the amicus brief (at 13-15) is not supported in the regulations cited.  In any event, the parties here stipulated that Bodacious, Inc. (and, hence, the Gaughfs) overstated the basis in the 7,500 shares of Quanta stock by at least $4,455,000. (JA0467.)

- 55 -

Third, Gaughf LP actually used the net premiums paid ($45,000) as its basis when calculating the loss on closing out the two options. (JA0612, JA0614.)  Gaughf LP's basis in the options should have been the same as Gaughf Enterprises, LLC's basis in the options.  *See* I.R.C. § 723.  But the Gaughfs claimed (through their entities) a $4,500,000 million basis in the options when they claimed a $4,500,000 basis in their interest in Gaughf Enterprises, LLC.  *See* I.R.C. § 722. Consequently, there can be no doubt that the Gaughfs treated this partnership item – basis in the currency options – inconsistently from the treatment of such item by Gaughf LP.

Fourth, and finally, Section 6229(e) applies if the partner fails to notify the IRS of his treatment of an item in a manner that is inconsistent "or may be" inconsistent with the partnership's treatment of the item.  I.R.C. §§  6222(b)(1)(A)(i), 6229(e)(2)(B) and 6222(b)(1)(A)(i). So the apparent inconsistency between the partnership's netting of the currency-option premiums and the Gaughfs' disregard of the "short" option premium is enough to trigger I.R.C. § 6229(e)(2)(B).

- 56 -

3. Alternatively, petitioner argues (Br. 48) that the Tax Court erroneously treated the Gaughs' "outside basis" in Gaughf LP as a "partnership item," and that such treatment is precluded under this Court's decision in *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649, 654 (D.C. Cir. 2010). The amicus phrases the argument somewhat differently, contending (Amicus Br. 4-8) that "outside basis" is computed "without regard" to the partnership's reporting of its capital accounts. These arguments, however, misapprehend the Tax Court's ruling, and ignore the Gaughfs' inconsistent treatment of other, undoubtedly "partnership items" of Gaughf LP.

"Partnership items" include items "relating to" contributions to the partnership and distributions from the partnership, "to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership." Treas. Reg. § 301.6231(a)(3)-1(a)(4). They include not only items of income, gain, loss, deduction, credit, etc., of the partnership itself, but also "the legal and factual determinations that underlie the

- 57 -

determination of the amount, timing, and characterization of [such] items." Treas. Reg. § 301.6231(a)(3)-1(a)(1)(i), (b).

The legal and factual premise which underlies the amount and characterization of the contributions (JA0637) and loss (JA0631, JA0634) that Gaughf LP reported is that the currency-option straddle that Gaughf Enterprises, LLC entered into with Deutsche Bank was a single transaction, the value of which at the time of contribution was identical to the cost ($45,000) paid to Deutsche Bank to acquire that financial position.  *See* I.R.C. § 723.  But a legal and factual premise that underlies the Gaughfs' reporting of a $4.5 million basis in 7,500 shares of Quanta stock is that there were two separate transactions – a "long" currency option that cost Gaughf Enterprises, LLC $4.5 million to acquire, and an unrelated "short" currency option for which Deutsche Bank paid $4.45 million.  Further premises are that the cost to Gaughf Enterprises acquire that financial position was $4.5 million, that Gaughf Enterprises's basis in Gaughf LP was therefore $4.5 million (without an adjustment for Gaughf LP's assumption of the "contingent" obligation under the "short" currency option), and, hence, that the Gaughfs had a

10109128.1

- 58 -

$4.5 million basis in stock distributed upon the liquidation of Gaughf

LP, *see* I.R.C. § 732(b).  Thus, the Gaughfs and Gaughf LP inconsistently

reported the cost of acquiring the financial position described in the

currency-option straddle when the Gaughfs reported a $4.5 million basis

in Quanta stock while Gaughf LP reported a $45,000 contribution and

loss.

Moreover, petitioner's argument ignores a number of other,

related inconsistencies between the Gaughs' and Gaughf LP's reporting

of what are indisputably partnership items.  For instance, Gaughf LP's

return only reported "cash distributions" in 1999 of $255,066.  (JA0615.)

But the Gaughfs (JA0582) and Bodacious, Inc. (JA0634, 0637) reported

that 150,283 shares of Quanta stock (worth $4.5 million) had been

contributed to, and distributed by, Gaughf LP.  Gaughf LP also reported

that its only two partners were Gaughf Enterprises, LLC and Balazs

Ventures, LLC, and identified each of those entities as S corporations.[17]

(JA0617, JA0621, JA0625).  But these partners did not file S-corporation

---

[17] The reporting of Gaughf Enterprises, LLC, and Balazs
Ventures, LLC, as S corporations on Schedules K-1 is a partnership
item.  Treas. Reg. § 301.6231(a)(3)-1(a)(4).

- 59 -

returns, *see* Treas. Reg. § 1.6037-1, and the Gaughfs disregarded them entirely in their individual return (JA0532-609), reporting dividends received by Gaughf Enterprises, LLC (JA1162-63), as having been received directly by the Gaughfs (JA0583). This inconsistent reporting of partnership items initially hampered the IRS's ability, on audit, to determine the partners and the correct treatments of partnership items of Gaughf LP. (JA2033-34, 2040-41.)

    4. Finally, the Tax Court found (JA1627-28), and the record reveals (JA1822-23, 1861-64, 1919, 2018-19; *see* JA 1466-69, JA 1580-82), that the Gaughfs never filed a Form 8082, notice of inconsistency in tax treatment, with respect to the 1999 tax returns. Petitioner does not dispute that finding on appeal. (*See* Br. 48-52.) Consequently, the Tax Court correctly held that the partners not identified in Gaughf LP's return also failed to comply with I.R.C. § 6222(b), relating to notification of inconsistent treatment with respect to partnership items of Gaughf LP.

- 60 -

**D.   The names, addresses, and TINs of the Gaughfs, as partners in Gaughf LP, were not "furnished to the Secretary" within the meaning of I.R.C. § 6229(e) before May 10, 2005**

1.  Section 6229(e) provides that, in the case of an unidentified partner who fails to comply with  I.R.C. § 6222(b), the assessment period for partnership items "shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary."  In its statement of issues (Br. 3), petitioner contends that the primary issue in this case is what is the "date on which the name, address, and [TIN] of the indirect partner(s) are furnished to the Secretary."  But this legal issue is entirely governed by regulations which spell out, in exacting detail, precisely how and when the name, address and TIN of a partner are "furnished to the Secretary" within the meaning of I.R.C. § 6229(e).  Temp. Treas. Reg. §§ 301.6229(e)-1T, 301.6223(c)-1T.[18]

_____

[18] Although originally promulgated as "temporary" Treasury regulations, the pertinent language of these provisions has since been adopted, in final form, at Treas. Reg. §§ 301.6223(c)-1 and 301.6229(e)-1.  The temporary regulations, however, are the ones in

(continued...)

- 61 -

Requiring the name, address and TIN of a partner be "furnished to the Secretary" implies that the information must be provided to particular Treasury employees in a manner which is useful to tax administration.  The dictionary defines "furnish" as meaning "1: to provide with what is needed . . . 2: [to] supply, give."  Merriam-Webster's Collegiate Dictionary 473 (10th ed. 2002).  Plainly, a taxpayer does not "provide" the Secretary "with what is needed" by delivering information to any one of the IRS's 90,000 employees, regardless of that employee's affiliation with the subject matter of the information.  Thus, as the Ninth Circuit held in *Walthall v. United States*, 131 F.3d 1289, 1296 (9th Cir. 1997), "the mere fact that the IRS possesses in its database the name and address of indirect partners does not mean that it has been 'furnished with' this information."  *Accord*, *Triangle Investors Ltd. Partnership v. Commissioner*, 95 T.C. 610, 616 (1990) (verbal exchanges with Revenue Agent insufficient to furnish updated partnership information to the Secretary).

---

[18](...continued)
effect with respect to 1999 partnership returns.

- 62 -

Moreover, the statute requires that such information be furnished to the "Secretary," a term which comprises "the Secretary of the Treasury or his delegate." I.R.C. § 7701(a)(11)(B). The term "delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context. I.R.C. § 7701(a)(12)(A). The statute thus gives the Secretary of the Treasury authority to charge, by way of regulation, specific persons or offices with responsibility for receiving such information. *See also* I.R.C. § 7805(a) ("[T]he Secretary shall prescribe all needful rules and regulations for the enforcement of this title.")

For these reasons, it is clear that Temp. Treas. Reg. §§ 301.6229(e)-1T and 301.6223(c)-1T pass muster under step one of *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Congress has not "directly spoken to the precise question at issue" here, *id*. at 842 – *i.e.*, how and to whom identifying partner information should be supplied to the Secretary. And it has provided the

10109128.1

- 63 -

Secretary with explicit authority to delegate to particular offices or agents responsibility for receiving such information, and implicitly provided the Secretary with authority to determine how taxpayers may "provide" him "with what is needed" (Merriam-Webster's Collegiate Dictionary 473), within this particular administrative context, *see* I.R.C. § 7701(a)(12)(A).

2.  Petitioner suggests (Br. 34), however, that Temp. Treas. Reg. §§ 301.6229(e)-1T and 301.6223(c)-1T are invalid under step two of *Chevron* because they require "filing a form . . . at a particular place, after . . . the filing of the partnership return," which must indicate that the information is provided to "correct or supplement" prior information, and would operate to "exclud[e] all actual notice" to the Secretary from the definition of "furnish."

Section 301.6223(c)-1T does provide that identifying partner information is "furnished" by (1) filing a signed, written statement, (2) with the service center with which the partnership return is filed, which (3) identifies the partnership, each partner for whom information is supplied, and the person supplying the information by name, address,

- 64 -

and TIN, (4) explains that the statement is furnished to correct or supplement earlier information with respect to the partners in the partnership, and (5) specifies the taxable year to which the information relates.  Where the partnership return omits the names, addresses and TINs of partners, however, it is hardly "'arbitrary or capricious in substance, or manifestly contrary to the statute,'"[19] to require a person who wants to identify additional partners with respect to that return to mail such information to a particular office at the IRS and indicate that such information is being provided to "correct" or "supplement" the partnership return.

It should be also noted that the phrase "furnished to the Secretary" is not unique to Section 6229(e).  *See*, *e.g.*, I.R.C. § 6230(e).  Whether a partner's identifying information has been "furnished to the Secretary" has implications beyond the context of the limitations period on assessment.  Importantly, under I.R.C. § 6223(a), if the name and address of a partner are "furnished to the Secretary," the Secretary is

---

[19] *Mayo Foundation for Medical Education and Research v. United States*, 131 S. Ct. 704, 711 (2011) (quoting *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, 242 (2004)).

- 65 -

also obligated to mail to such partner both the notice of the beginning of

an administrative proceeding at the partnership level with respect to a

partnership item and the FPAA resulting from any such proceeding.

Consequently, it is a reasonable interpretation of the phrase "furnished

to the Secretary" to require, as the regulation does, that updated

partner information be delivered in a manner that makes clear to the

appropriate IRS offices that additional notices must be sent to partners

who are not listed on the partnership return.

It stands to reason, moreover, that the phrase "furnished to the

Secretary" in  I.R.C. § 6229(e) and the phrase "furnished to the

Secretary" in I.R.C. § 6223(a) mean the same thing.  Quite reasonably,

then, the pertinent regulation, Temp. Treas. Reg. §§ 301.6229(e)-1T,

provides for a uniform definition for the phrase "furnished to the

Secretary" by tying its definition for the purposes of I.R.C. § 6229(e) to

the definition supplied in the context of I.R.C. § 6223(a):

> A partner who is not properly identified on the partnership
> return (including an indirect partner) remains an
> unidentified partner for purposes of section 6229(e) until
> identifying information is furnished as provided in
> § 301.6223(c)-1T.

- 66 -

The regulation requiring updated partner information to be

provided to the Secretary by "filing a form . . . at a particular place,

after . . . the filing of the partnership return" (Br. 34) has consistently

been upheld.  And the courts have uniformly held that a person has not

"furnished" additional partner information to the Secretary absent

compliance with the regulation, even where an IRS employee has

otherwise obtained, or even used, the additional partner information.

*See*, *e.g.*, *Walthall*, 131 F.3d at 1297; *International Strategic Partners,*

*LLC v. Commissioner*, 455 Fed. Appx. 91, 2102 WL 147890 (2d Cir.

2012); *Kearney Partners Fund, LLC v. United States*, 2013 WL 1232612,

at **5-6 (M.D. Fla. Mar. 27, 2013); *Jaffe v. Commissioner*, T.C. Memo.

2004-112, 2004 WL 1118299, at *3 (2004); *Costello*, 765 F. Supp. at

1008-10.[20]

_____

[20] Petitioner devotes an entire section of its brief (at 52-53) to an
argument that it was legal error for the Tax Court to rely on *Costello*.
But a trial court can rely on other trial court opinions as persuasive
authority, and in any event, there is ample other authority for the same
proposition, as we have shown.

- 67 -

3.  Petitioner contends (Br. 28) that information identifying the Gaughfs as partners in Gaughf LP by name, address, and TIN was "furnished to the Secretary" on one of three occasions prior to May 10, 2005, the date which is one year prior to the date on which the Gaughfs and the IRS agreed to extend the period for assessment of tax attributable to partnership items of Gaughf LP.  The first such occasion was November, 1999, when the Gaughfs' attorney, Maurice Holloway, faxed IRS Forms SS-4, applications for employer identification number, to the IRS Service Center in Atlanta, Georgia, as standard part of his entity formation services.  (JA0520-31, JA1787, JA1796.)  But the SS-4 application for Gaughf LP did not name Mrs. Gaughf as a partner in Gaughf LP or provide her address or TIN.  (JA0529.)  Nor do any of the Forms SS-4 explain that they were furnished to correct or supplement earlier information with respect to the partners in the partnership, or specify the taxable year to which the information relates.  (JA0520-31.)  Consequently, these forms do not provide the identifying information required by Treas. Reg. § 301.6223(c)-1T.[21]

---

[21] Nor could these forms provide such identifying information, as
(continued...)

10109128.1

- 68 -

The second occasion on which petitioner contends the identifying information required by Treas. Reg. § 301.6223(c)-1T was furnished to the Secretary was when the Gaughfs filed their 1999 individual income tax return on Form 1040. (JA0532.) Petitioner contends (Br. 38) that this form, "when coupled with their Forms SS-4," identifies Gaughf LP by name and TIN, and that the IRS could therefore "link" the Gaughfs with Gaughf LP through its master files. But this argument ignores that part of the regulation which states that "the Service is not obligated to search its records for information not expressly furnished" under Treas. Reg. § 301.6223(c)-1T. Treas. Reg. § 301.6223(c)-1T(f). It

---

[21](...continued)

they were filed several months before Gaughf LP filed its partnership return. Because different years may find a partnership with different partners, the Commissioner could not presume that partners listed on a Form SS-4 are partners on a subsequent tax return. *Accord, Utah Bioresearch 1984, Ltd. v. Commissioner*, T.C. Memo. 1989-612, 1989 WL 135403 (1989). Consequently, IRS personnel do not use Forms SS-4 for identifying partners with respect to a partnership return. (JA2115-16.)

Moreover, because Forms SS-4 must be filed to acquire a TIN for all partnerships and other entities required to file a return, Treas. Reg. § 301.6109-1(b), (d)(2), a determination that identifying partner information may be furnished to the Secretary in Form SS-4 effectively renders meaningless any requirement that partnerships or their TMP identify partners by name, address, and TIN in the partnership return or in an administrative proceeding, I.R.C. §§ 6229(e)(1), 6230(e).

- 69 -

also ignores that part of the regulation which states that
"[i]ncorporation by reference of information contained in another
document previously furnished to the Internal Revenue Service will not
be given effect for purposes of sections 6223(c) or 6229(e)."  Treas. Reg.
§ 301.6223(c)-1T(c).  The Secretary was thus not obligated to "link" the
Gaughfs' return to the Gaughf LP return by searching previously filed
SS-4s.  It was incumbent upon the Gaughfs to expressly state that their
name, address, and TIN was being provided because they were partners
in Gaughf LP and that they were supplementing the Gaughf LP return
in this regard.  Treas. Reg. § 301.6223(c)-1T(b)(3)(ii)-(iv).  This, they did
not do.

The third instance in which petitioner contends (Br. 39-43) that
the Gaughfs were properly identified as partners in Gaughf LP was
when Jenkens & Gilchrist furnished 480 pages of information in
response to a 2004 court order obligating the firm to do so.  Petitioner's
argument is that the names, addresses, and TINs of the partners in
Gaughf LP were furnished to the Secretary when J&G – under order of
the District Court (JA0701-04) and after initially refusing to do so

- 70 -

(JA1516, 1523, 1926) – sent to the Revenue Agent investigating J&G's liability for tax shelter promoter penalties 1,300 compact discs, only one of which contained information pertaining to the Gaughfs (JA1554, JA1939-40), and from which, if the files therein were closely examined, it was possible to determine that the Gaughfs were indirect partners in Gaughf LP and to determine their name, address, and TINs. But this document production does not comply with Treas. Reg. § 301.6223(c)-1T because it was not "filed with the service center with which the partnership return is filed," Temp. Treas. Reg. § 301.6223(c)-1T(b)(2), does not "[e]xplain that the statement is furnished to correct or supplement earlier information," *id*. § 301.6223(c)-1T(b)(3)(ii), and does not "set out the corrected or additional information," " *id*. § 301.6223(c)-1T(b)(3)(iv). *Cf. Bemont Investments, LLC v. United States*, 679 F.3d 339, 346 (5th Cir. 2012) (disclosures by Deutsche Bank in response to summons did not trigger one year limitations period of I.R.C. § 6501(c)(10) because they were not provided in a form that enabled the IRS to find information with respect to participants in listed tax shelter transactions without undue delay or difficulty).

- 71 -

Petitioner argues, however, (Br. 35-36) that because the IRS

possessed or "used" the Gaughfs' identifying information, the required

partner information has *a fortiori* been "furnished to the Secretary."

They rely upon Temp. Treas. Reg. § 301.6223(c)-1T(f), which states that

"the Service *may* use other information in its possession in

administering Subchapter C of chapter 63 of the Internal Revenue

Code." But, again, this argument ignores the very next sentence of the

regulation, which states "the Service is not obligated to search its

records" for such information. As such, the courts have repeatedly held

that taxpayers have not complied with Treas. Reg. § 301.6223(c)-1T

even where the IRS actually "uses" partner information from other

sources. *See*, *e.g.*, *Walthall*, 131 F.3d at 1297; *International Strategic

Partners,* 2102 WL 147890; *Kearney Partners Fund,* 2013 WL 1232612,

at **5-6.

Moreover, the IRS's "use" of such information for purposes of an

examination into the returns of the Gaughf and Gaughf LP occurred

within one year of the Gaughfs' consent to extend the assessment period

signed on May 10, 2006, because Revenue Agent Maier's examination

10109128.1

- 72 -

did not begin until January 10, 2006. (JA0460, JA1969, JA1973, JA1998.)[22] Thus, even if the IRS's "use" of partner information in connection with a partnership proceeding is sufficient to start the running of a one-year assessment period under I.R.C. § 6229(e), such "use" would not operate to bar the FPAA in this case.

4. Finally, petitioner argues (Br. 54-55) that the Tax Court committed error by "refusing to draw an adverse inference" from the fact that, at some time, the IRS issued a summons to the accounting firm KPMG, and that the IRS did not, at trial, introduce documents which, if possessed, would have been responsive to the summons. Petitioner argues, in essence, that the IRS had the burden of proving that the Gaughfs did not "furnish to the Secretary" additional partner information under Treas. Reg. § 301.6223(c)-1T, that KPMG, in theory, *might* have furnished such information in response to a summons, and

---

[22] The only other plausible "use" of the Gaughfs' information contained in the J&G production was a June 16, 2004 letter (JA0707) from the IRS's Office of Professional Responsibility requesting information as to whether J&G was operating under a conflict of interest in representing Mr. Gaughf. But this "use" reflects only that J&G identified Mr. Gaughf as a client (not a partner in Gaughf LP) (JA1549, JA1936) and pertains only to the IRS's oversight of J&G itself.

- 73 -

that therefore the Tax Court was required to infer from the fact that the

IRS did not introduce at trial documents allegedly obtained from KPMG

that such documents contained the additional partner information

under Treas. Reg. § 301.6223(c)-1T.  This argument is without merit.

First, the premise that the IRS has the burden of proving a

negative – that the Gaughfs did not furnish additional partner

information to the Secretary after the partnership return was filed – is

wrong.  The statute places the burden on the partnership itself of

providing updated partner information to the Secretary.  I.R.C.

§ 6230(e); *International Strategic Partners,* 2102 WL 147890, at *1;

*Utah Bioresearch 1984, Ltd.*, 1989 WL 135403.  *Anyone* might have, in

theory, provided information identifying the Gaughfs as partners in

Gaughf LP to the Secretary; the IRS is not obligated to introduce every

single file in its possession to prove the absence of such partner

information therein.

Second, the Tax Court's finding that updated partner information

was not "furnished to the Secretary" is adequately supported by the

testimony of the KMPG employee who worked with the Gaughfs, the

- 74 -

Gaughfs' attorney, and the Gaughfs' long-time return preparer, as well as by the testimony of the Gaughfs themselves.  (JA1864-68, JA1914, JA1916, JA2083-96, JA2103.)  Consequently, the Tax Court's finding that updated partnership information was not furnished to the Secretary in accordance with Temp. Treas. Reg. § 301.6223(c)-1T is not clearly erroneous, and it was not an abuse of discretion for the Tax Court to decline to draw a contrary inference.

- 75 -

## CONCLUSION

For the foregoing reasons, the Tax Court's order is correct and should be affirmed.

Respectfully submitted,

KATHRYN KENEALLY
   *Assistant Attorney General*

TAMARA W. ASHFORD
   *Principal Deputy Assistant Attorney General*

 /s/ Ivan C. Dale

| | |
|---|---|
| GILBERT S. ROTHENBERG | (202) 514-3361 |
| MICHAEL J. HAUNGS | (202) 514-4343 |
| IVAN C. DALE | (202) 307-6615 |

   *Attorneys*
   *Tax Division*
   *Department of Justice*
   *Post Office Box 502*
   *Washington, D.C. 20044*

JUNE 2013

10109128.1

- 76 -

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[x]    this brief contains  13,851  words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[x]    this brief has been prepared in a proportionally spaced typeface using WordPerfect X5 in 14-point Century Schoolbook, or

[ ]    this brief has been prepared in a monospaced typeface using WordPerfect 10.0 with [state number of characters per inch and name of type style].

 /s/ Ivan C. Dale
IVAN C. DALE
Counsel for the Commissioner

June 18, 2013

10109128.1

- 77 -

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2013, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

    /s/ Ivan C. Dale    

IVAN C. DALE

*Attorney*

10109128.1

- 78 -

# ADDENDUM

## TABLE OF CONTENTS

Internal Revenue Code of 1986 (26 U.S.C.):

Sec. 6222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

Sec. 6223 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78

Sec. 6229 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

Treasury Regulations (26 C.F.R.):

§ 301.6229(e)-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

§ 301.6223(c)-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82

§ 301.6222(b)-1T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

§ 301.6231(a)(3)-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 85

10109128.1

- 79 -

# ADDENDUM

Internal Revenue Code of 1986 (26 U.S.C.):

## § 6222. Partner's return must be consistent with partnership return or Secretary notified of inconsistency

(a) In general.– A partner shall, on the partner's return, treat a partnership item in a manner which is consistent with the treatment of such partnership item on the partnership return.

(b) Notification of inconsistent treatment.–

(1) In general.– In the case of any partnership item, if –

(A)(i) the partnership has filed a return but the partner's treatment on his return is (or may be) inconsistent with the treatment of the item on the partnership return, or

(ii) the partnership has not filed a return, and

(B) the partner files with the Secretary a statement identifying the inconsistency,

subsection (a) shall not apply to such item.

[* * *]

## § 6223. Notice to partners of proceedings

(a) Secretary must give partners notice of beginning and completion of administrative proceedings.– The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of–

10109128.1

- 80 -

(1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and

(2) the final partnership administrative adjustment resulting from any such proceeding.

A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

[* * *]

(c) Information base for Secretary's notices, etc.– For purposes of this subchapter–

(1) Information on partnership return.– Except as provided in paragraphs (2) and (3), the Secretary shall use the names, addresses, and profits interests shown on the partnership return.

(2) Use of additional information.– The Secretary shall use additional information furnished to him by the tax matters partner or any other person in accordance with regulations prescribed by the Secretary.

(3) Special rule with respect to indirect partners.– If any information furnished to the Secretary under paragraph (1) or (2)–

(A) shows that a person has a profits interest in the partnership by reason of ownership of an interest through 1 or more pass-thru partners, and

(B) contains the name, address, and profits interest of such person,

10109128.1

- 81 -

then the Secretary shall use the name, address, and profits interest of such person with respect to such partnership interest (in lieu of the names, addresses, and profits interests of the pass-thru partners).

[* * *]

## § 6229. Period of limitations for making assessments

(a) General rule.– Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of–

(1) the date on which the partnership return for such taxable year was filed, or

(2) the last day for filing such return for such year (determined without regard to extensions).

(b) Extension by agreement.–

(1) In general.– The period described in subsection (a) (including an extension period under this subsection) may be extended–

(A) with respect to any partner, by an agreement entered into by the Secretary and such partner, and

(B) with respect to all partners, by an agreement entered into by the Secretary and the tax matters partner (or any other person authorized by the partnership in writing to enter into such an agreement),

before the expiration of such period.

10109128.1

- 82 -

[* * *]

(e) Unidentified partner.– If–

(1) the name, address, and taxpayer identification number of a partner are not furnished on the partnership return for a partnership taxable year, and

(2)(A) the Secretary, before the expiration of the period otherwise provided under this section with respect to such partner, mails to the tax matters partner the notice specified in paragraph (2) of section 6223(a) with respect to such taxable year, or

(B) the partner has failed to comply with subsection (b) of section 6222 (relating to notification of inconsistent treatment) with respect to any partnership item for such taxable year,

the period for assessing any tax imposed by subtitle A which is attributable to any partnership item (or affected item) for such taxable year shall not expire with respect to such partner before the date which is 1 year after the date on which the name, address, and taxpayer identification number of such partner are furnished to the Secretary.

- 83 -

Treasury Regulations (26 C.F.R.):

## § 301.6229(e)-1T – Information with respect to unidentified partner.  (Temporary)

A partner who is not properly identified on the partnership return (including an indirect partner) remains an unidentified partner for purposes of section 6229(e) until identifying information is furnished as provided in § 301.6223(c)-1T.

## § 301.6223 (c)-1T – Additional information regarding partners furnished to the Service.  (Temporary)

(a) In general. In addition to the names, addresses, and profits interests as shown on the partnership return, the Service will use additional information as provided in this section for purposes of administering subchapter C of chapter 63 of the Code.

(b) Procedure for furnishing additional information—

(1) In general. Any person may furnish additional information at any time by filing a written statement with the Service. However, the information contained in the statement will be considered for purposes of determining whether a partner is entitled to a notice described in section 6223(a) only if the Service receives the statement at least 30 days before the date on which the Service mails the notice to the tax matters partner. Similarly, information contained in the statement generally will not be taken into account for other purposes by the Service until 30 days after the statement is received.

(2) Where statement must be filed. A statement furnished under this section shall generally be filed with the service center with which the partnership return is filed. However, if the person filing the statement knows that the notice described in section 6223(a)(1) (beginning of an administrative proceeding) has already

10109128.1

- 84 -

been mailed to the tax matters partner, the statement shall be filed with the Internal Revenue Service office that mailed such notice.

(3) Contents of statement. The statement shall—

(i) Identify the partnership, each partner for whom information is supplied, and the person supplying the information by name, address, and taxpayer identification number;

(ii) Explain that the statement is furnished to correct or supplement earlier information with respect to the partners in the partnership;

(iii) Specify the taxable year to which the information relates;

(iv) Set out the corrected or additional information, and

(v) Be signed by the person supplying the information.

(c) No incorporation by reference to previously furnished documents. Incorporation by reference of information contained in another document previously furnished to the Internal Revenue Service will not be given effect for purposes of sections 6223(c) or 6229(e). For example, reference to a return filed by a pass-thru partner which contains identifying information with respect to the indirect partners of that pass-through partner is not sufficient to identify the indirect partners unless a copy of the document referred to is attached to the statement.

(d) Information supplied by a person other than the tax matters partner. The Service may require appropriate verification in the case of information furnished by a person other than the tax matters partner. The 30-day period referred to in paragraph (b)(1) of this section shall not begin until that verification is supplied.

10109128.1

- 85 -

(e) Power of attorney—

(1) In general. This paragraph (e) applies to powers of attorney with respect to proceedings under subchapter C of chapter 63 of the Code ("chapter 63C") that begin on or after the date which is 90 days after the date final regulations under this section are published in the Federal Register.

(2) Specifically for purposes of chapter 63C. A power of attorney specifically for purposes of chapter 63C shall be furnished in accordance with paragraph (b)(2) of this section.

(3) Existing power of attorney. A power of attorney granted to another person by a partner for other tax purposes shall not be given effect for purposes of chapter 63C unless the partner specifically requests that the power be given such effect in a statement furnished to the Service in accordance with paragraph (b) of this section.

(f) Service may use other information. In addition to the information on the partnership return and that supplied on statements filed under this section, the Service may use other information in its possession (for example, a change in address reflected on a partner's return) in administering subchapter C of chapter 63 of the Code. However, the Service is not obligated to search its records for information not expressly furnished under this section.

## § 301.6222(b)-1T – Notification to Service when partnership items are treated inconsistently.  (Temporary)

The statement identifying an inconsistency described in section 6222(b)(1)(B) shall be filed by filing the form prescribed for that purpose in accordance with the instructions accompanying that form.

- 86 -

## § 301.6231(a)(3)–1 Partnership items.

(a) In general. For purposes of subtitle F of the Internal Revenue Code of 1954, the following items which are required to be taken into account for the taxable year of a partnership under subtitle A of the Code are more appropriately determined at the partnership level than at the partner level and, therefore, are partnership items:

   (1) The partnership aggregate and each partner's share of each of the following:

      (i) Items of income, gain, loss, deduction, or credit of the partnership;

      [* * *]

      (v) Partnership liabilities (including determinations with respect to the amount of the liabilities, whether the liabilities are nonrecourse, and changes from the preceding taxable year);

   [* * *]

   (3) Optional adjustments to the basis of partnership property pursuant to an election under section 754 (including necessary preliminary determinations, such as the determination of a transferee partner's basis in a partnership interest); and

   (4) Items relating to the following transactions, to the extent that a determination of such items can be made from determinations that the partnership is required to make with respect to an amount, the character of an amount, or the percentage interest of a partner in the partnership, for purposes of the partnership books and records or for purposes of furnishing information to a partner:

      (i) Contributions to the partnership;

10109128.1

- 87 -

(ii) Distributions from the partnership; and

(iii) Transactions to which section 707(a) applies (including the application of section 707(b)).

(b) Factors that affect the determination of partnership items.  The term "partnership item" includes the accounting practices and the legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc.  Examples of these determinations are: The partnership's method of accounting, taxable year, and inventory method; whether an election was made by the partnership; whether partnership property is a capital asset, section 1231 property, or inventory; whether an item is currently deductible or must be capitalized; whether partnership activities have been engaged in with the intent to make a profit for purposes of section 183; and whether the partnership qualifies for the research and development credit under section 30.